RECEIPT # _55093_
AMOUNT $ _150⁻_
SUMMONS ISSUED___
LOCAL RULE 4.1_____
WAIVER FORM _____
MCF ISSUED_____
BY DPTY. CLK._____
DATE___4-8-04___

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DENNIS E. SMITH, On Behalf of Himself and All Others Similarly Situated,, ) ) ) Plaintiff, ) ) vs. ) ) VASO ACTIVE PHARMACEUTICALS, ) INC., STEPHEN G. CARTER and JOHN J. ) MASIZ, ) ) Defendants. ) ) ) | No. **04-10708 RCL** <br><br> CLASS ACTION <br><br> COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS <br><br> MAGISTRATE JUDGE _Collings_ <br><br><br> DEMAND FOR JURY TRIAL |

## SUMMARY AND OVERVIEW

1.      This is a securities class action on behalf of all purchasers of the common stock of

Vaso Active Pharmaceuticals, Inc. ("Vaso" or the "Company") between December 11, 2003 and

March 31, 2004 (the "Class Period"), against Vaso and certain of its officers and directors for

violations of the Securities Exchange Act of 1934 (the "1934 Act").

2.      Vaso's principal activity is to develop, manufacture and market pharmaceutical

products. The Company focuses on vaso active lipid encapsulated, or VALE, transdermal delivery

technology drugs. Currently, Vaso markets Athlete's Relief and Osteon in the United States. The

Company's products include analgesics, toenail fungal treatment, acne, first aid, hand and body

lotion and psoriasis treatment. The Company is planning to rebrand the deFEET athlete's foot anti-

fungal medication product as Termin8 and Xtinguish.

3.      On April 1, 2004, *Reuters* issued a release entitled "UPDATE - SEC suspends trading

in Vaso Active stock." The release stated in part:

> U.S. securities regulators on Thursday halted trading of Vaso Active Pharmaceuticals
> Inc., a marketer of over-the-counter pharmaceuticals, through April 15.
>
> The Securities and Exchange Commission questioned assertions made by the
> Danvers, Massachusetts-based company of an FDA approval of certain key products
> and regulatory consequences of the future application of their primary product,
> among others.
>
> Vaso Active was not immediately available for comment.
>
> The SEC said it questioned the accuracy of assertions made in the company's
> press releases, annual report, registration statement and public statements to
> investors.
>
> Vaso shares closed at $7.59 Wednesday on Nasdaq.

4.      The true facts, which were known by each of the defendants but actively concealed

from the investing public during the Class Period, were as follows:

- 1 -

(a)     The Company's claims that its "clinical trial" was "supervised by independent physicians and analyzed by the New England Medical Center in Boston" Massachusetts was grossly misleading in that:

(i)     the New England Medical Center had nothing to do with the study associated with the "clinical trial";

(ii)     the New England Medical Center was unable to draw any conclusions concerning the effectiveness of the product and played no role in selecting the patients and gathering evidence; and

(iii)     the trial was *not* supervised by "*independent* physicians" – it was overseen by *one* podiatrist who was not independent but actually "handpicked" by the Company's majority shareholder and handsomely compensated.

(b)     The Company's so-called "clinical trial" was not new or revolutionary but rather more than half a decade old.

(c)     The American Association of Medical Foot Specialists and its so-called "endorsement" of deFEET was of little, if any, value. In fact, the "association" is not widely known of or respected in the medical community. It was headquartered in a hotel until it was moved to the President's medical office. Moreover, in exchange for the questionable endorsement of the President of the Association, Vaso was asked to make a donation to an association scholarship program.

(d)     Contrary to defendant Masiz's claim that there was significant demand for the Company's stock at an "institutional level" – so much so that the Company, in response to this demand, consummated a three-for-one stock split – there was *de minimus*, if any, institutional demand for the Company's shares. Moreover, there are no institutional or retail analysts who even follow the Company.

## JURISDICTION AND VENUE

5.     Jurisdiction is conferred by §27 of the 1934 Act. The claims asserted herein arise under §§10(b) and 20(a) of the 1934 Act and Rule 10b-5.

6.     (a)    Venue is proper in this District pursuant to §27 of the 1934 Act. Many of the false and misleading statements were made in or issued from this District.

(b)    The Company's principal executive offices are in Danvers, Massachusetts, where the day-to-day operations of the Company are directed and managed.

## THE PARTIES

7.     Plaintiff Dennis E. Smith purchased Vaso common stock as described in the attached certification and was damaged thereby.

8.     Vaso's principal activity is to develop, manufacture and market pharmaceutical products. The Company focuses on VALE transdermal delivery technology drugs. Currently, Vaso markets Athlete's Relief and Osteon in the United States. The Company's products include analgesics, toenail fungal treatment, acne, first aid, hand and body lotion and psoriasis treatment. The Company is planning to rebrand the deFEET athlete's foot anti-fungal medication product as Termin8 and Xtinguish.

9.     Defendant John J. Masiz ("Masiz") was the President and CEO of Vaso. He is also the CEO and Chairman of BioChemics, the Company's controlling shareholder.

10.    Defendant Stephen G. Carter ("Carter") was the Chief Scientific Officer ("CSO") of Vaso. He is also the CSO of BioChemics, the Company's controlling shareholder.

11.    The individuals named as defendants in ¶¶9-10 are referred to herein as the "Individual Defendants." The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Vaso's Registration Statement, press releases and presentations to securities analysts, money and portfolio managers and institutional

- 3 -

investors, *i.e.*, the market. Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them but not to the public, each of these defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations which were being made were then materially false and misleading. The Individual Defendants are liable for the false statements pleaded herein at ¶¶19-21, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

## SCIENTER

12.    In addition to the above-described involvement, each Individual Defendant had knowledge of Vaso's problems and was motivated to conceal such problems. Masiz and Carter, as CEO and CSO, respectively, were responsible for reporting to and communications with the market. Each Individual Defendant sought to demonstrate that he could lead the Company successfully and generate the growth expected by the market.

13.    Defendants were motivated to engage in the fraudulent practices alleged herein in order to obtain financing via the Company's IPO and subsequent private placement for the Company and create a market for their shares and options as well as protect BioChemics' financial interest in the Company.

## FRAUDULENT SCHEME AND COURSE OF BUSINESS

14.    Each defendant is liable for (i) making false statements, or (ii) failing to disclose adverse facts known to him about Vaso. Defendants' fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Vaso common stock was a success, as it (i) deceived the investing public regarding Vaso's prospects and business; (ii) artificially inflated the prices of

Vaso's common stock; (iii) allowed defendants to arrange to sell and actually sell $15 million worth of Vaso shares at artificially inflated prices; and (iv) caused plaintiff and other members of the Class to purchase Vaso common stock at inflated prices.

## BACKGROUND

15.     Vaso's principal activity is to develop, manufacture and market pharmaceutical products. The Company focuses on VALE transdermal delivery technology drugs. Currently, the Company markets Athlete's Relief and Osteon in the United States. The Company's products include analgesics, toenail fungal treatment, acne, first aid, hand and body lotion and psoriasis treatment. The Company, at the time of the IPO, was planning to rebrand the deFEET athlete's foot anti-fungal medication product as Termin8 and Xtinguish.

16.     Vaso is essentially an early stage company focused on commercializing, marketing and selling over-the-counter, or OTC, pharmaceutical products. It began its operations as a division of BioChemics, Inc. in January 2001, and has only operated as an entity independent of BioChemics since January 2003. The Company's operating history was extremely limited. The deFEET, Athlete's Relief and Osteon products were in the early stages of commercialization as the Company prepared to go public. With the exception of the introduction of deFEET to the marketplace by BioChemics while the Company was still a division of BioChemics (a company also controlled by the Individual Defendants), it had not yet commercialized, marketed or sold any products or recognized significant revenue from product sales.

17.     The Company claimed it needed to complete its IPO in order to:

        (a)     fund the continued development, commercialization and sale of its products and product candidates, which the Company estimated would require approximately $1.1 million (19.4% of net proceeds);

- 5 -

(b)    to implement its strategic marketing and commercialization plan, which the Company estimated would require approximately $1.9 million (33.5% of net proceeds), of which approximately $1.2 million was allocated to fund its radio advertising campaign;

(c)    to recruit and hire individuals for key senior management positions, which the Company estimated would require approximately $200,000 (3.5% of net proceeds);

(d)    to cover the cost of providing sales incentives, products samples and discounts, which the Company estimated would require approximately $350,000 (6.2% of net proceeds);

(e)    to repay BioChemics approximately $99,000 (1.7% of net proceeds) for management fees charged back to the Company since it became a stand-alone entity upon its incorporation for centralized accounting, data processing, utilities, office space rental, supplies, telephone and other BioChemics corporate services and infrastructure costs, **and** approximately $347,000 (6.1% of net proceeds) for other operational charges paid by BioChemics to third parties on its behalf since that time; and

(f)    to provide working capital and for general corporate purposes, which the Company estimated would require approximately $1.68 million (29.6% of net proceeds).

18.    By infusing capital in Vaso, BioChemics (also controlled by defendants) would blossom. BioChemics' balance sheet and prospectus improved dramatically upon the offering and further improved the Individual Defendants' own net worth.

## DEFENDANTS' FALSE AND MISLEADING REGISTRATION STATEMENT

19.    The Company filed its Registration Statement on December 11, 2003. According to the Company's Registration Statement, the Company's plans for its key product were as follows:

> Osteon and Athlete's Relief will now be marketed, distributed, commercialized and sold by us in the United States. During the course of the 12 month period immediately following this offering, all deFEET branded product

currently in circulation will either be sold or removed from circulation and replaced with an identical product which will be commercialized, marketed and sold by us under the name Termin8 and/or Xtinguish. The formulation and functionality of Termin8 and Xtinguish will be identical to that of deFEET.

All three of these products have been through the research and development, pre-clinical study and clinical trial stages and have received FDA approval. They are either currently being marketed and commercialized or will enter the marketing and commercialization phase upon the consummation of this offering.

deFEET is a topically-applied, transdermal athlete's foot anti-fungal medication designed to eliminate athlete's foot infection in less than 10 days. It employs the VALE drug delivery system to effectively and efficiently deliver a mild antifungal agent called Tolnaftate into the skin surrounding the affected area. *In a pilot clinical trial, supervised by independent physicians and analyzed by the New England Medical Center in Boston, MA, 20 severely infected athlete's foot patients were treated and studied over a 42-day period.* There were two groups in the study, one treated with deFEET and the other with Schering-Plough's Tinactin®. In this study, deFEET eliminated the infection in 90% of the test group in 7 days and 100% of its patient population in 10 days. Tinactin®, which also uses Tolnaftate in the same concentration as deFEET, required 42 days to cure its first patient. These results demonstrate the ability of the VALE technology to deliver Tolnaftate much more effectively than a product not utilizing VALE technology ....

## POST IPO STATEMENTS

20.    On February 19, 2004, the Company issued a release entitled "Vaso Active Pharmaceuticals Declares 3 for 1 Stock Split." The release stated in part:

Vaso Active Pharmaceuticals, Inc. (Vaso Active) of Danvers, Massachusetts, announced today that the Board of Directors has declared a 3 for 1 stock split effective in the form of a 200 percent stock dividend payable on or about March 5, 2004 to holders of record of both Class A and Class B common stock as of February 23, 2004. Under the terms of this stock split, holders of the Company's Class A and Class B common stock will receive a dividend of two shares of Class A and Class B common stock for every one share of Class A and Class B common stock held on that record date. The dividend will be paid in authorized but unissued shares of Class A and Class B common stock of the Company.

The Company anticipates that the combined amount of issued and outstanding shares of both the Class A and Class B common stock after the split will be increased from 3,428,000 shares to 10,284,000 shares.

*John Masiz, Chief Executive Officer and Chairman of Vaso Active stated[:] "One of the ways many institutions measure investment appeal is through the liquidity of a security. Recently, there has been significant demand for our*

- 7 -

> *common stock at the institutional level. However liquidity has proved to be an*
> *obstacle. To help resolve this, the Board of Directors has declared this 3-for-1*
> *stock split to increase our liquidity to the public market place, thus enhancing our*
> *securities' appeal to both retail and institutional investors."*

21.    On March 17, 2004, the Company issued a press release entitled "Vaso Active

Pharmaceuticals Completes Financing at a Premium." The press release stated in part:

> Vaso Active Pharmaceuticals, (Vaso Active) of Danvers, Massachusetts, is pleased
> to announce that it has entered into a private placement transaction in the amount of
> $7,500,000 with an institutional investor. The investment which is in the form of an
> 18 month 2% Convertible Note, is convertible into shares of Class A common stock
> at a conversion rate of $9 per share, at the option of the investor. Both principal and
> interest are payable in cash or in shares of Class A common stock, at the option of
> Vaso Active. The purchase agreement includes anti-hedging provisions and the
> maturity date may be extended for up to two years at the option of the investor. In
> addition, Vaso Active issued to the investor warrants to purchase 166,667 shares of
> Class A common stock at an exercise price of $8.75 per share.
>
> Mr. John J. Masiz, President and Chief Executive Officer of Vaso Active was
> very pleased that Vaso Active was successful in consummating this institutional
> private placement at what Mr. Masiz considered favorable terms. "The ability to
> secure additional funds through the completion of this private placement gives Vaso
> Active significant new working capital to augment the working capital derived from
> its IPO. This will enhance Vaso Active's capital base with which to operate and will
> permit the Company to take advantage of strategic opportunities that arise in the
> course of growing our business. In addition, the execution of this agreement at a
> premium to the current market price of our common stock underscores the value of
> our technology to a material investor."

22.    On April 1, 2004, *Reuters* issued a release entitled "UPDATE - SEC suspends trading

in Vaso Active stock." The release stated in part:

> U.S. securities regulators on Thursday halted trading of Vaso Active Pharmaceuticals
> Inc., a marketer of over-the-counter pharmaceuticals, through April 15.
>
> The Securities and Exchange Commission questioned assertions made by the
> Danvers, Massachusetts-based company of an FDA approval of certain key products
> and regulatory consequences of the future application of their primary product,
> among others.
>
> Vaso Active was not immediately available for comment.

The SEC said it questioned the accuracy of assertions made in the company's press releases, annual report, registration statement and public statements to investors.

Vaso shares closed at $7.59 Wednesday on Nasdaq.

23.    The true facts which were known by each of the defendants, but actively concealed from the investing public during the Class Period, were as follows:

(a)    The Company's claims that its "clinical trial" was "supervised by independent physicians and analyzed by the New England Medical Center in Boston" Massachusetts was grossly misleading in that:

(i)    the New England Medical Center had nothing to do with the study associated with the "clinical trial";

(ii)    the New England Medical Center was unable to draw any conclusions concerning the effectiveness of the product and played no role in selecting the patients and gathering evidence; and

(iii)    the trial was *not* supervised by "*independent* physicians" – it was overseen by *one* podiatrist who was not independent but actually "handpicked" by the Company's majority shareholder and handsomely compensated.

(b)    The Company's so-called "clinical trial" was not new or revolutionary but rather more than half a decade old.

(c)    The American Association of Medical Foot Specialists and its so-called "endorsement" of deFEET was of little, if any, value. In fact, the "association" is not widely known or respected in the medical community. It was headquartered in a hotel until it was moved to the President's medical office. Moreover, in exchange for the questionable endorsement of the President of the Association, Vaso was asked to make a donation to an association scholarship program.

(d)     Contrary to defendant Masiz's claim that there was significant demand for the Company's stock at an "institutional level" – so much so that the Company, in response to this demand, consummated a three for one stock split – there was *de minimus*, if any, institutional demand for the Company's shares. Moreover, there are no institutional or retail analysts who even follow the Company.

## FIRST CLAIM FOR RELIEF

### For Violation of §10(b) of the 1934 Act and Rule 10b 5
### Against All Defendants

24.     Plaintiff incorporates ¶¶1-23 by reference.

25.     During the Class Period, defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

26.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

(a)     Employed devices, schemes, and artifices to defraud;

(b)     Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)     Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Vaso common stock during the Class Period.

27.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Vaso common stock. Plaintiff and the Class would not have purchased Vaso common stock at the prices they paid, or at all, if they had been

- 10 -

aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.

28.    As a direct and proximate result of these defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their purchases of Vaso common stock during the Class Period.

## SECOND CLAIM FOR RELIEF

### For Violation of §20(a) of the 1934 Act
### Against All Defendants

29.    Plaintiff incorporates ¶¶1-28 by reference.

30.    The Individual Defendants acted as controlling persons of Vaso within the meaning of §20(a) of the 1934 Act. By reason of their positions as officers and/or directors of Vaso, and their ownership of Vaso stock, the Individual Defendants had the power and authority to cause Vaso to engage in the wrongful conduct complained of herein. Vaso controlled each of the Individual Defendants and all of its employees. By reason of such conduct, the Individual Defendants and Vaso are liable pursuant to §20(a) of the 1934 Act.

## CLASS ACTION ALLEGATIONS

31.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased Vaso common stock (the "Class") on the open market during the Class Period. Excluded from the Class are defendants.

32.    The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. Vaso had more than 9 million shares of stock outstanding, owned by hundreds if not thousands of persons.

- 11 -

33.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a)     Whether the 1934 Act was violated by defendants;

(b)     Whether defendants omitted and/or misrepresented material facts;

(c)     Whether defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     Whether defendants knew or deliberately disregarded that their statements were false and misleading;

(e)     Whether the price of Vaso's common stock was artificially inflated; and

(f)     The extent of damage sustained by Class members and the appropriate measure of damages.

34.     Plaintiff's claims are typical of those of the Class because plaintiff and the Class sustained damages from defendants' wrongful conduct.

35.     Plaintiff will adequately protect the interests of the Class and has retained counsel, who are experienced in class action securities litigation. Plaintiff has no interests which conflict with those of the Class.

36.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment as follows:

A.     Declaring this action to be a proper class action pursuant to FRCP 23;

B.     Awarding plaintiff and the members of the Class damages, interest and costs;

C.     Awarding reasonable costs and attorneys' fees; and

D.     Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

DATED:  April ⨍, 2004

MOULTON & GANS, P.C.

NANCY FREEMAN GANS, BBO #184540

33 Broad Street, Suite 1100
Boston, MA  02109
Telephone:  617/369-7979
617/369-7980 (fax)

MILBERG WEISS BERSHAD
  HYNES & LERACH LLP
WILLIAM S. LERACH
DARREN J. ROBBINS
401 B Street, Suite 1700
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Attorneys for Plaintiff

S:\CptDraft\Securities\Cpt Vaso.doc

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

DENNIS SMITH ("Plaintiff") declares:

1.     Plaintiff has reviewed a complaint and authorized its filing.

2.     Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.     Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.     Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

**Acquisitions:**

| Date Acquired | Number of Shares Acquired | Acquisition Price Per Share |
|---|---|---|
| 03/31/04 | 2,500 shares | $7.90 |
| | | |
| | | |

**Sales:**

| Date Sold | Number of Shares Sold | Selling Price Per Share |
|---|---|---|
| | | |
| | | |
| | | |

5.     During the three years prior to the date of this Certificate, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except as detailed below:

6.     The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery,

except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this __7__ day of __April__, 2004.

_____
DENNIS SMITH

S:\Case Startup\Vass\Certs\smith.doc

VASO

TOTAL P.03

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

DENNIS E. SMITH, On Behalf of Himself and
All Others Similarly Situated

## DEFENDANTS

VASO ACTIVE PHARMACEUTICALS, INC.,
STEPHEN G. CARTER and JOHN J. MASIZ

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Denton County, TX
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

See Attachment "A"

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government
  Plaintiff

☒ 3 Federal Question
  (U.S. Government Not a Party)

☐ 2 U.S. Government
  Defendant

☐ 4 Diversity
  (Indicate Citizenship of Parties
  in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF
(For Diversity Cases Only)                     AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
another district
(specify)

☐ 6 Multidistrict
Litigation

Appeal to District
Judge from
☐ 7 Magistrate
Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC 881 | 28 USC 157 | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product Liability | ☐ 650 Airline Regs. | ☐ 820 Copyrights | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | | ☐ 660 Occupational | ☐ 830 Patent | ☐ 810 Selective Service |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | Exchange |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | | ☐ 875 Customer Challenge |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | **SOCIAL SECURITY** | 12 USC 3410 |
| ☒ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | | | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | & Disclosure Act | | Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **HABEAS CORPUS:** | | ☐ 870 Taxes (U.S. Plaintiff | Under Equal Access to Justice |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | or Defendant) | ☐ 950 Constitutionality of |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS — Third Party | State Statutes |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. | 26 USC 7609 | ☐ 890 Other Statutory Actions |
| | | ☐ 550 Civil Rights | Security Act | | |
| | | ☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE.
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

Securities Fraud; violation of Sec. 10(b) of the Securities Exchange Act of 1934, 15 USC Sec.
78J(b) and Rule 10b-5 promulgated thereunder, and Sec. 20(a) of the Securities Exchange Act
of 1934, 15 USC Sec. 78T(a).

## VII. REQUESTED IN
COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ YES   ☐ NO

## VIII. RELATED CASE(S) (See instructions):
IF ANY

JUDGE _____

DOCKET NUMBER _____

DATE
April 8, 2004

SIGNATURE OF ATTORNEY OF RECORD
Nancy Freeman Gans

FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1.  TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY) <u>DENNIS E. SMITH, etc. v. VASO ACTIVE</u>
    <u>PHARMACEUTICALS, INC., et als.</u>

2.  CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL
    COVER SHEET.   (SEE LOCAL RULE 40.1(A)(1)).

    <u>XX</u>   I.     160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

    ___   II.    195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,     *Also complete AO 120 or AO 121
                 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.        for patent, trademark or copyright cases

    ___   III.   110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
                 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
                 380, 385, 450, 891.

    ___   IV.    220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
                 690, 810, 861-865, 870, 871, 875, 900.

    ___   V.     150, 152, 153.

# 04-10708 RCL

3.  TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(G)). IF MORE THAN ONE PRIOR RELATED CASE
    HAS BEEN FILED IN THIS DISTRICT PLEASE INDICATE THE TITLE AND NUMBER OF THE FIRST FILED CASE IN THIS COURT.

4.  HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS
    COURT?
                                                    YES          (NO)

5.  DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE
    PUBLIC INTEREST?   (SEE 28 USC §2403)
                                                    YES          (NO)
    IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?
                                                    YES          NO

6.  IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE
    28 USC §2284?
                                                    YES          (NO)

7.  DO <u>ALL</u> OF THE PARTIES IN THIS ACTION, EXCLUDING GOVERNMENTAL AGENCIES OF THE UNITED STATES AND THE
    COMMONWEALTH OF MASSACHUSETTS ("GOVERNMENTAL AGENCIES"), RESIDING IN MASSACHUSETTS RESIDE IN THE
    SAME DIVISION? - (SEE LOCAL RULE 40.1(D)).
                                                    (YES)         NO

    A.    IF YES, IN WHICH DIVISION DO <u>ALL</u> OF THE NON-GOVERNMENTAL PARTIES RESIDE?

          (EASTERN DIVISION)          CENTRAL DIVISION          WESTERN DIVISION

    B.    IF NO, IN WHICH DIVISION DO THE MAJORITY OF THE PLAINTIFFS OR THE ONLY PARTIES, EXCLUDING
          GOVERNMENTAL AGENCIES, RESIDING IN MASSACHUSETTS RESIDE?

          EASTERN DIVISION          CENTRAL DIVISION          WESTERN DIVISION

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME   Nancy Freeman Gans
ADDRESS   Moulton & Gans, P.C., 33 Broad St., Suite 1100, Boston, MA 02109-4216
TELEPHONE NO.   617-369-7979

(Cover sheet local.wpd - 11/27/00)