UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In Re Vaso Active Pharmaceuticals Securities Litigation | ) ) ) ) ) Civil Action No. 04-10708-RCL |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF VASO ACTIVE PLAINTIFF GROUP FOR APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF SELECTION OF LEAD COUNSEL**

**I.   INTRODUCTION**

Modhi Gude, Arji Gauthami, Scott Brook, Shel T. Diamond and Joyendu Mukherjee ("Vaso Active Plaintiff Group" or "Movants"), who collectively suffered in excess of $247,000 in damages as a result of acquiring Vaso Active Pharmaceuticals Inc. ("Vaso" or the "Company") common stock during the period between December 11, 2003 and March 31, 2004, inclusive (the "Class Period"), submit this Memorandum of Law in support of their motion, filed pursuant to §21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), as amended by the Private Litigation Securities Reform Act of 1995 ("PSLRA"), requesting their appointment as Lead Plaintiffs and approval of their selection of lead counsel.

Section 21D(a)(3)(B) of the Exchange Act sets forth the procedure to select Lead Plaintiffs to oversee class actions brought under the federal securities laws. Specifically §21D(a)(3)(A)(i) provides that within 20 days after the date on which a class action is filed under the PSLRA:

> [T]he plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a *notice* advising members of the purported plaintiff class:

{00002684.DOC ; 1}

>   (I) of the pendency of the action, the claims asserted therein, and the purported class period; and
>
>   (II) that, not later than 60 days after the date on which the notice is published, *any member of the purported class may move the court to serve as lead plaintiff of the purported class.*

15 U.S.C. §78u-4(a)(3)(A)(i) (emphasis added).

Further, §21D(a)(3)(B)(i) of the Exchange Act directs this Court to consider any motions to appoint Lead Plaintiffs, filed in response to the required notice, no later than 90 days after the date of publication. Under this provision, the Court "shall" appoint the "most adequate plaintiff" to serve as Lead Plaintiff and shall presume that the most adequate plaintiff is the person or group of persons that:

>   (aa) has either filed the complaint or made a motion in response to a notice ... ;
>
>   (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
>   (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

Movants lost more than $247,000 as a result of acquiring Vaso stock during the Class Period and believe they have the "largest financial interest in the relief sought by the class." *Id.* *See* Pastor Declaration, Ex. B.[1] Additionally, Movants satisfy the requirements of Rule 23. Movants' claims are typical of the claims of the class, and Movants will fairly and adequately represent the interests of the class since their interests are closely aligned with those of the members of the class. Additionally, they have selected and retained counsel with substantial experience in prosecuting securities class actions and who have already undertaken a thorough

---

[1] Citation to "Pastor Declaration, Ex. __" refers to the Declaration of David Pastor, In Support of Motion of Vaso Active Plaintiff Group For Appointment As Lead Plaintiff And Approval Of Selection Of Lead Counsel filed herewith.

investigation of this case. Consequently, Movants are the "most adequate plaintiff" and accordingly, seek approval as Lead Plaintiffs, as well as approval of their selection of counsel, as provided by the PSLRA.

## II.   SUMMARY OF ACTIONS

These related class actions, brought on behalf of a class of persons or entities who acquired Vaso's stock during the Class Period, are against Vaso and certain of its officers for violations of the Exchange Act. Vaso's principal activity is to develop, manufacture and market pharmaceutical products. ¶¶2, 15.[2] The Company's products include analgesics, toenail fungal treatment, acne, first aid, hand and body lotion and psoriasis treatment. *Id.* Currently, Vaso markets Athlete's Relief and Osteon in the United States. *Id.* The Company, at the time of its initial public offering ("IPO") in December, 2003, was planning to rebrand its deFEET athlete's foot anti-fungal medication product as Termin8 and Xtinguish. *Id.* The deFEET, Athlete's Relief and Osteon products were in the early stages of commercialization as the Company prepared to go public. ¶16. With the exception of the introduction of deFEET to the marketplace by BioChemics while the Company was still a division of BioChemics (a company also controlled by the Individual Defendants), it had not yet commercialized, marketed or sold any products or recognized significant revenue from product sales. *Id.*

Prior to its IPO, Vaso touted deFEET, Termin8 and Xtinguish, saying: "All three of these products have been through the research and development, pre-clinical study and clinical trial stages and have received FDA approval. They are either currently being marketed and commercialized or will enter the marketing and commercialization phase upon the consummation of this offering." ¶19. Vaso further explained that deFEET, a topically-applied,

---

[2] Citation to "¶__" refers to the Complaint For Violation Of The Federal Securities Laws in *Gude, et al. v. Vaso, et al.*, C.A. No. 04-10789-RCL. The allegations in the *Gude* complaint are substantially similar to those in the other pending securities fraud class actions pending against Vaso. *See* Section III, *infra*.

transdermal athlete's foot anti-fungal medication designed to eliminate athlete's foot infection in less than 10 days employing the VALE drug delivery system to effectively and efficiently deliver a mild antifungal agent called Tolnaftate into the skin surrounding the affected area, was studied in a "pilot clinical trial, supervised by independent physicians and analyzed by the New England Medical Center in Boston, MA, 20 severely infected athlete's foot patients were treated and studied over a 42-day period. … In this study, deFEET eliminated the infection in 90% of the test group in 7 days and 100% of its patient population in 10 days, as compared with 42 days for a competitive brand." *Id.* After its IPO, Vaso proclaimed its shares were in high demand at the institutional level, so much so that the Company, in response to this demand, consummated a three for one stock split. ¶¶20-21.

On April 1, 2004, it was announced that the Securities and Exchange Commission ("SEC") "questioned assertions made by [Vaso] of an FDA approval of certain key products and regulatory consequences of the future application of their primary product, among others," and consequently halted trading in Vaso shares through April 15, 2004. ¶¶3, 22. The price of Vaso's shares plummeted. *Id.* The true facts, which were known by each Defendant but actively concealed from the investing public during the Class Period, were that, among others, the Company's claims that its "clinical trial" was "supervised by independent physicians and analyzed by the New England Medical Center in Boston," Massachusetts was grossly misleading in that: (i) the New England Medical Center had nothing to do with the study associated with the "clinical trial"; (ii) the New England Medical Center was unable to draw any conclusions concerning the effectiveness of the product and played no role in selecting the patients and gathering evidence; and (iii) the trial was not supervised by "independent physicians" – it was overseen by one podiatrist who was not independent but actually "handpicked" by the

Company's majority shareholder and handsomely compensated. ¶¶4, 23. In fact, the Company's so-called "clinical trial" was not new or revolutionary but rather more than half a decade old. The American Association of Medical Foot Specialists and its so-called "endorsement" of deFEET was of little, if any, value. *Id.* In fact, the "association" is not widely known of or respected in the medical community. *Id.* Moreover, in exchange for the questionable endorsement the President of the Association, Vaso was asked to make a donation to an association scholarship program. *Id.* In addition, contrary to the claim that there was significant demand for the Company's stock, in actuality there was little, if any, institutional demand for the Company's shares. *Id.*

As a result of Defendants' scheme, investors paid artificially high prices of Vaso stock and thereby have been damaged. Pastor Declaration, Ex. B.

### III.   PROCEDURAL BACKGROUND

Following Defendants' revelations on April 1, 2004, numerous securities Class Actions were filed in the District of Massachusetts against Defendants by purchasers of Vaso common stock. This Court consolidated four of these Class Actions on May 11, 2004 into *In Re Vaso Active Pharmaceuticals Securities Litigation*, C.A. No. 04-10708-RCL ("*In Re Vaso*").[3] Subsequently, according to the Court's docket, two additional cases have been consolidated in this action.[4] Accordingly, pursuant to the Court's May 11, 2004 order of consolidation, the following cases also will be consolidated into *In re Vaso*:

| | | |
|---|---|---|
| 1:04-cv-10720-NG | *Shapiro v. Vaso Active Pharmaceuticals, Inc. et al.* | 04/09/04 |
| 1:04-cv-10808-NG | *Benedetto et al v. Vaso Active Pharmaceuticals, Inc. et al.* | 04/23/04 |

---

[3] The following cases were consolidated as *In re Vaso*: *Smith v. Vaso, et al.*, C.A. No. 04-10708-RCL; *Pepin v. Vaso, et al.*, C.A. No. 04-10763-RCL; *Alipor v. Vaso, et al.*, C.A. No. 04-10877-RCL; and *Gude, et al. v. Vaso, et al.*, C.A. No. 04-10789-RCL.
[4] *Bostrom v. Vaso, et al.*, C.A. No. 04-10948 and *Ira A. Turret SEP-IRA Dated 01/24/02 v. Vaso, et al.*, C.A. No. 04-10980-RCL also were consolidated into *In Re Vaso*, according to the Court's docket.

| | | |
|---|---|---|
| 1:04-cv-10819-NG | *Dummer v. Vaso Active Pharmaceuticals, Inc. et al.* | 04/26/04 |
| 1:04-cv-10851-RCL | *Tovrea v. Vaso Active Pharmaceuticals, Inc. et al.* | 04/28/04 |
| 1:04-cv-10980-RCL | *IRA A. TURRET SEP-IRA DATED 01/24/02 v. Vaso Active Pharmaceuticals, Inc. et al.*\* | 05/17/04 |
| 1:04-cv-11100-RCL | *Pagona v. Vaso Active Pharmaceuticals, Inc. et al.* | 05/25/04 |
| 1:04-cv-11101-RCL | *Karanfilian v. Vaso Active Pharmaceuticals, Inc. et al.* | 05/25/04 |

## IV.   ARGUMENT

### A.   Movants Should Be Appointed As Lead Plaintiffs

#### 1.   Movants Have The Largest Financial Interest In The Relief Sought By The Class

No later than 60 days after notice of the pendency of a securities fraud class action is published, any member or members of the class may move the court to serve as Lead Plaintiffs of the class. 15 U.S.C. §78u-4(a)(3)(A)(ii). The PSLRA's "most adequate plaintiff" provision provides that this Court:

> [S]hall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members in accordance with this subparagraph.

15 U.S.C. §78u-4(a)(3)(B)(i); *accord In re Learnout & Hauspie Sec. Litig.*, 138 F. Supp. 2d 39, 42 (D. Mass. 2001). Moreover, the statute requires this Court to adopt a rebuttable presumption that:

> [T]he most adequate plaintiff in any private action arising under this title is the person or group of persons that –
>
> \* \* \*
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class.

15 U.S.C. §78u-4(a)(3)(B)(iii)(I); *accord In re Learnout*, 138 F. Supp. 2d at 42-43, 45-46; *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 64 (D. Mass. 1999).

Here, Movants now move, within 60 days from the date the notice was published, April 8, 2004, for appointment as Lead Plaintiffs. Pastor Declaration, Ex. A. During the Class Period, Movants acquired Vaso common stock at prices inflated by Defendants' materially false and misleading statements and as a result, suffered significant losses of more than $247,000. Pastor Declaration, Ex. B. Movants believe they have the largest financial interest in the relief sought by the class and therefore, are presumptively entitled to appointment as Lead Plaintiffs. 15 U.S.C. §78u-4(a)(3)(B)(iii)(bb).

### 2. Movants Are Qualified Under Rule 23

Section 21D(a)(3)(B)(iii)(I)(cc) of the Exchange Act provides that, in addition to possessing the largest financial interest in the relief sought by the class, the Lead Plaintiffs also must "otherwise satisfy[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc); *accord In re Learnout*, 138 F. Supp. 2d at 45-46. With respect to the qualifications of class representatives, Rule 23(a) requires generally that their claims be typical of the claims of the class and that the representatives will fairly and adequately protect the interests of the class. *See In re Learnout*, 138 F. Supp. 2d at 46 (only typicality and adequacy need to be satisfied for this inquiry). As detailed below, Movants satisfy the typicality and adequacy of requirements of Rule 23(a) and are qualified to be appointed as Lead Plaintiffs.

#### a. Movants' Claims Are Typical Of The Claims Of The Class

Rule 23(a)(3) provides that the claims or defenses of the representative party must be typical of the claims or defenses of the class, *see* Fed. R. Civ. P. 23(a)(3), and be based on the same legal theories as the claims of all the class members. *In re Learnout*, 138 F. Supp. 2d at 46.

Typicality does not require that there be no factual differences between the class representatives and the class members because it is the generalized nature of the claims asserted which determines whether the class representatives are typical. *See Priest v. Zayre Corp.*, 118 F.R.D. 552, 555 (D. Mass. 1988) ("With respect to typicality under Rule 23(a)(3), plaintiffs need not show substantial identity between their claims and those of absent class members, but need only show that their claims arise from the same course of conduct that gave rise to the claims of the absent [class] members") (citations omitted). The requirement that the proposed class representatives' claims be typical of the claims of the class does not mean, however, that the claims must be identical. *In re Learnout*, 138 F. Supp. 2d at 46.

Movants satisfy this requirement because, just like all other class members, they: (1) purchased Vaso shares during the Class Period; (2) purchased Vaso shares in reliance upon the allegedly materially false and misleading statements issued by defendants; and (3) suffered damages thereby. Thus, Movants' claims are typical of those of other class members since their claims and the claims of other class members arise out of the same course of events.

    b. **Movants Will Fairly And Adequately Represent The Interests Of the Class**

Under Rule 23(a)(4) the representative parties must also "fairly and adequately protect the interests of the class." The PSLRA directs this Court to limit its inquiry regarding the adequacy of Movants to represent the class to the existence of any conflicts between the interest of Movants and the members of the class. *In re Learnout*, 138 F. Supp. 2d at 46. The standard for adequacy of representation under Rule 23(a)(4) is met by: (1) the absence of potential conflict between the named plaintiffs and the class members and (2) the class representatives' choice of counsel who is qualified, experienced and able to vigorously conduct the proposed litigation. *Modell v. Eliot Sav. Bank*, 139 F.R.D. 17, 23 (D. Mass. 1991) (citing *Andrews v.*

*Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985)).

Here, Movants are adequate representatives of the class. As evidenced by the injury suffered by Movants, who purchased Vaso shares at prices allegedly artificially inflated by Defendants' materially false and misleading statements, the interests of Movants are clearly aligned with the members of the class, and there is no evidence of any antagonism between Movants' interests and those of the other members of the class. Further, Movants have taken significant steps that demonstrate they will protect the interests of the class: they have retained competent and experienced counsel to prosecute these claims. In addition, as shown below, the Movants' proposed Lead Counsel are highly qualified, experienced and able to conduct this complex litigation in a professional manner. Thus, Movants prima facie satisfy the typicality and adequacy requirements of Rule 23 for the purposes of this motion.

### B. This Court Should Approve Movants' Choice Of Counsel

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), Lead Plaintiffs shall, subject to Court approval, select and retain counsel to represent the class. *In re Learnout*, 138 F. Supp. 2d at 46-47. In that regard, Movants, as the presumptively most adequate plaintiffs, selected Scott + Scott, LLC ("Scott + Scott") as Lead Counsel. Scott + Scott possesses extensive experience litigating complex and securities class actions and successfully has prosecuted numerous securities fraud class actions on behalf of injured investors. Scott + Scott has been appointed as lead or co-lead counsel in several complex derivative and securities class actions, as demonstrated by their firm resume, attached as Exhibit C, to the Pastor Declaration.

Movants' choice for Liaison Counsel, Gilman and Pastor, LLP ("Gilman and Pastor") also has successfully enforced the rights of investors who have been victimized by various forms of securities fraud or manipulation. As outlined in their firm resume, the firm has prosecuted a

wide range of class and derivative actions under federal securities and state corporate laws. Pastor Declaration, Ex. D.

## V.   CONCLUSION

WHEREFORE, for the foregoing reasons, Movants respectfully request that the Court: (1) appoint them Lead Plaintiffs pursuant to §21D(a)(3)(B) of the Exchange Act; and (2) approve their selection of Scott + Scott as Lead Counsel with Gilman and Pastor acting as Liaison Counsel for the class.

DATED: June 7, 2004

Respectfully submitted:

GILMAN AND PASTOR, LLP

/s/ David Pastor
DAVID PASTOR, BBO#: 391000
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, MA 01906
781-231-7850
Fax: 781-231-7840

David R. Scott
Erin Green Comite
Scott + Scott LLC
108 Norwich Avenue
P.O. Box 192
Colchester, CT
860-537-5537
Fax:  860-537-4432
  and
Arthur L. Shingler, III
Scott + Scott, LLC
401 B Street, Suite 307
San Diego, CA  92101
619-233-4565
Fax:  619-233-0508