UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN RE VASO ACTIVE PHARMACEUTICALS
SECURITIES LITIGATION

Civil Action No. 04-10708-RCL

MEMORANDUM OF LAW IN SUPPORT OF MOTION OF PLAINTIFF
DAVID B. BRODY, AS CO-TRUSTEE OF THE BRODY FAMILY
REVOCABLE TRUST, FOR APPOINTMENT OF LEAD
PLAINTIFF, LEAD COUNSEL AND LIAISON COUNSEL

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

I. PRELIMINARY STATEMENT ........................................................................................ 1

II. STATEMENT OF FACTS ................................................................................................. 3

III. OVERVIEW OF APPLICABLE LAW ............................................................................. 4

IV. THE PROPOSED LEAD PLAINTIFF SHOULD BE APPOINTED LEAD PLAINTIFF FOR THE CLASS ............................................................................................................. 6

    A. Brody's Motion to Serve as Lead Plaintiff is Timely ................................................. 6

    B. The Proposed Lead Plaintiff Is Believed To Have the Largest Financial Interest in the Relief Sought by the Class ................................................................................... 6

    C. The Proposed Lead Plaintiff Satisfies the Requirements of Rule 23 .......................... 8

        (1) The Proposed Lead Plaintiff's Claims Are Typical of the Claims of the Class ......... 9

        (2) The Proposed Lead Plaintiff Will Fairly and Adequately Represent the Interests of the Class ................................................................................................................. 9

    D. The Court Should Approve the Proposed Lead Plaintiff's Choice of Lead Counsel and Liaison Counsel ................................................................................................ 10

V. CONCLUSION ................................................................................................................ 11

## TABLE OF AUTHORITIES

*Fields v. Biomatrix, Inc.*,
　198 F.R.D. 451 (D.N.J. 2000).................................................................................9, 10

*Lax v. First Merchants Acceptance Corp.*,
　No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997)...........................................7

*In re Lernout & Hauspie Sec. Litig.*,
　138 F. Supp. 2d 39 (D. Mass. 2001) ..............................................................................9

*In re Lucent Tech., Inc. Sec. Litig.*,
　221 F. Supp. 2d 472 (D.N.J. 2001)................................................................................9

*In re Milestone Scientific Sec. Litig.*,
　183 F.R.D. 404 (D.N.J. 1998)...............................................................................7, 9, 10

*In re Party City Sec. Litig.*,
　189 F.R.D. 91 (D.N.J. 1999).....................................................................................8, 10

### FEDERAL STATUTES

15 U.S.C. § 78u-4(a)...........................................................................................*passim*
15 U.S.C. § 78u-4(e)......................................................................................................8

### RULES

FED. R. CIV. P. 23(a) .................................................................................................9, 10

### OTHER

H.R. REP. NO. 104-369 (1995),
　*reprinted in* 1995 U.S.C.C.A.N. 730 ............................................................................8

S. REP. NO. 104-98 (1995),
　*reprinted in* 1995 U.S.C.C.A.N. 679 ............................................................................8

Proposed lead plaintiff David B. Brody, as Co-Trustee of the Brody Family Revocable Trust ("Brody" or "Proposed Lead Plaintiff"), respectfully submits this memorandum of law in support of his motion for: (i) his appointment as Lead Plaintiff in the consolidated action, *In re Vaso Active Pharmaceuticals Securities Litigation*, CV-04-10708-RCL (the "Consolidated Action"),[1] and (ii) approval by this Court of his selection of Lead Counsel and Liaison Counsel for the putative class for the Consolidated Action.[2]

## I.   PRELIMINARY STATEMENT

During the Class Period, Brody purchased 8,200 shares of Vaso Active common stock and, after sales, still retains 6,300 shares of the Company's stock. Due to the Defendants' unlawful conduct (described below), Brody suffered losses of $46,736.16, and it is believed that he has the most significant financial stake in the Consolidated Action.[3] As such, Brody is the "most adequate plaintiff" pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4u(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). Moreover, Brody satisfies each and every requirement of the PSLRA for serving as lead plaintiff. Accordingly, Brody should be appointed

---

[1] By an Order dated May 11, 2004, this Court directed that all securities actions filed against Vaso Active Pharmaceuticals, Inc. ("Vaso Active" or the "Company") be consolidated with the Consolidated Action.

[2] Brody's proposed Lead Counsel, Zwerling, Schachter & Zwerling, LLP (defined *infra*), and proposed Liaison Counsel, Berman Devalerio Pease Tabacco Burt & Pucillo (defined *infra*) filed the action, *Ira A. Turret SEP-IRA dated 01/24/02 v. Vaso Active Pharmaceuticals, Inc., et al.*, 04-CV-10980-RCL (the "*Turret* Action"), on May 17, 2004. The action was brought on behalf of the plaintiff and a class consisting of all persons and entities who purchased the common stock of Vaso Active during the period from December 11, 2003 through March 31, 2004 (the "Class Period") and suffered damages caused by the defendants' unlawful conduct (the "Class"). The defendants in the *Turret* Action are Vaso Active Pharmaceuticals, Inc., John J. Masiz and Joseph Frattaroli (collectively, the "Defendants"). The Court consolidated the *Turret* Action with the Consolidated Action on May 21, 2004.

[3] *See* Affidavit of Richard A. Speirs in Support of Motion of Plaintiff David B. Brody, as Co-Trustee of the Brody Family Revocable Trust, for Appointment of Lead Plaintiff, Lead Counsel and Liaison Counsel (the "Speirs Aff." or "Speirs Affidavit") ¶ 3 and Ex. B1.

Lead Plaintiff in the Consolidated Action.

Vaso Active manufactures, markets and sells over-the-counter ("OTC") pharmaceutical products. The Company claims that the effectiveness of its products has been significantly enhanced through the incorporation of its proprietary Vaso Active lipid encapsulated ("VALE") transdermal delivery technology. (Compl. ¶ 2)[4] During the Class Period, the Defendants allegedly made material misrepresentations and omissions regarding the clinical trials, testing, endorsement, and effectiveness of a foot cream product that purportedly uses the VALE delivery system — Termin8, formerly called deFEET.

The Company made these purported misrepresentations and omissions in press releases, a registration statement (the "Registration Statement") filed with the Securities and Exchange Commission (the "SEC") in connection with its December 2003 initial public offering, an annual report filed with the SEC for the period ending December 31, 2003 (the "2003 Annual Report"),[5] and in public statements. (Compl. ¶¶ 20, 22, 26, 27, 28) On March 31, 2004, the SEC halted trading in Vaso Active's stock and issued a press release that questioned the accuracy of the Company's assertions regarding its key products. (Compl. ¶ 30) On April 16, 2004, the SEC permitted the stock to resume trading on the over-the-counter bulletin board exchange. (Compl. ¶ 34)

---

[4] The citation "Compl." refers to the complaint in the *Turret* Action, which is annexed as Exhibit A to the Speirs Affidavit.

[5] Defendants John J. Masiz ("Masiz") and Joseph Frattaroli ("Frattaroli") signed the Registration Statement and the 2003 Annual Report.

## II.    STATEMENT OF FACTS

Defendant Vaso Active describes itself as an early stage company that commercializes, markets and sells OTC pharmaceutical products, with a focus on drugs that incorporate the VALE transdermal delivery technology. (Compl. ¶ 11) The Company's principal executive offices are located at 99 Rosewood Drive, Suite 260, Danvers, MA 01923. (Compl. ¶ 11) Defendant Masiz was, at all relevant times, Chairman, President and Chief Executive Officer of the Company. Defendant Frattaroli was, at all relevant times, Chief Financial Officer of the Company. (Compl. ¶¶ 12, 13)

At the beginning of the Class Period, Defendants misrepresented in the Registration Statement that clinical studies conducted on deFEET were "supervised by independent physicians and analyzed by the New England Medical Center in Boston". (Compl. ¶ 22) The "independent physicians" was in fact a podiatrist selected by Vaso Active's parent company, BioChemics Inc. ("BioChemics"). (Compl. ¶¶ 3, 29) In addition, the New England Medical Center did nothing more than analyze the statistical information gathered by BioChemics – something the center does for paying customers. (Compl. ¶ 3) The medical center also confirmed in news articles that it was unable to draw any conclusions about the product's effectiveness. (Compl. ¶ 3)

Defendants made other statements during the Class Period that were misleading and/or lacking in a reasonable basis. For example, Vaso Active touted an endorsement it received from the American Association of Medical Foot Specialists (the "Association"). However, the Association is not widely recognized and the Company paid a fee for the "endorsement". (Compl. ¶¶ 3, 4) Vaso Active's 2003 Annual Report stated that the VALE delivery system in Termin8 "effectively and efficiently" delivers medicine to the skin. (Compl. ¶ 27) After a private placement, Masiz stated that the success of the placement illustrated "the value of our

3

technology to a material investor". (Compl. ¶ 26) Finally, during a conference regarding Vaso Active's 2003 financial results and 2004 outlook, the Company stated it expected sales to soar due to numerous marketing deals for Termin8 and other lotions that use Vaso Active's "revolutionary" transdermal delivery system. (Compl. ¶ 28)

On March 31, 2004, the SEC halted trading of the Company's stock through April 15, 2004. (Compl. ¶ 30) The SEC also issued a press release that questioned the accuracy of assertions made in Vaso Active's press releases, annual report, Registration Statement and public statements to the Company's investors. At that time, Vaso Active common stock shares were priced at $7.59 per share. (Compl. ¶ 30) On April 16, 2004, the SEC allowed the stock to resume trading on the over-the-counter bulleting board exchange at $1.99. (Compl. ¶ 31)

Due to the Defendants' fraudulent conduct, Brody sustained estimated losses in the amount of $46,736.16 (Speirs Aff. ¶ 3 and Ex. B1) Brody seeks appointment as Lead Plaintiff as well as the Court's approval of his choice of lead counsel, Zwerling, Schachter & Zwerling, LLP ("Zwerling Schachter" or "Proposed Lead Counsel"), and his choice of liaison counsel, Berman DeValerio Pease Tabacco Burt & Pucillo ("Berman DeValerio" or "Proposed Liaison Counsel").

## III. OVERVIEW OF APPLICABLE LAW

On December 22, 1995, Congress amended the Exchange Act through the PSLRA. The PSLRA, among other things, sets forth a procedure for providing putative class members with notice of the pendency of a class action, the claims asserted, the alleged class period and the requirements for selection of a lead plaintiff or plaintiffs to prosecute the class actions. 15 U.S.C. § 78u-4(a)(3). Specifically, the PSLRA provides that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class—

4

      (I)      of the pendency of the action, the claims asserted therein, and the purported class period; and

      (II)     that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported plaintiff class.

15 U.S.C. § 78u-4(a)(3)(A)(i). The first such notice of a securities class action lawsuit being brought against Vaso Active was issued on April 8, 1994. (Speirs Aff., Ex. C.)

The PSLRA directs the Court to consider any motions (brought within sixty days) by putative class members to serve as lead plaintiffs in response to any such notice: (i) no later than ninety days after the date of publication of the aforementioned notice; or (ii) if more than one action asserting substantially the same claim or claims has been filed and any party has sought to consolidate those actions for pretrial purposes or trial, as soon as practicable after the Court decides the pending motion(s) to consolidate. 15 U.S.C. § 78u-4(a)(3)(B)(i)-(ii).

The PSLRA creates a rebuttable presumption that the "most adequate plaintiff" to serve as lead plaintiff is the person who:

    (aa)    has either filed the complaint or made a motion in response to [the aforementioned] notice . . .;

    (bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and

    (cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). As set forth below, the Proposed Lead Plaintiff satisfies these statutory requirements.

The PSLRA contemplates a ninety-day period from the early notice publication to the selection of a lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). Because the selection of a lead

plaintiff and lead counsel is the first step to prosecute the Consolidated Action, the Proposed Lead Plaintiff respectfully requests that the Court grant his motion as soon as practicable.

## IV. THE PROPOSED LEAD PLAINTIFF SHOULD BE APPOINTED LEAD PLAINTIFF FOR THE CLASS

As amended by the PSLRA, the Exchange Act provides a structure for the appointment of lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure". 15 U.S.C. § 78u-4(a)(1). Because Brody meets the requirements of the "most adequate plaintiff", as defined by the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B)(iii), he should be appointed to serve as lead plaintiff of the Class.

### A. Brody's Motion to Serve as Lead Plaintiff is Timely

Brody has timely moved for appointment as lead plaintiff. In compliance with the PSLRA, the earliest notice informing Class members of the pendency of a class action against the Defendants, and of his right to file a motion for appointment as lead plaintiff, was published on April 8, 2004. Within sixty days after publication of the notice, any person who is a member of the proposed class may move the court to be appointed lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). Brody's motion to serve as lead plaintiff is filed in a timely fashion. Thus, the initial requirement is satisfied.

### B. The Proposed Lead Plaintiff Is Believed To Have the Largest Financial Interest in the Relief Sought by the Class

Pursuant to the PSLRA, the next consideration in determining the "most adequate plaintiff" to serve as lead plaintiff is, in the determination of the court, the plaintiff with the largest financial interest. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). As a result of the Defendants' conduct, the Proposed Lead Plaintiff sustained estimated losses in the amount of $46,736.16.

(Speirs Aff. ¶ 3 and Ex. B1) It is believed at this time that the Proposed Lead Plaintiff has the largest financial interest in the relief sought by the Class. (Speirs Aff. ¶ 3 and Ex. B1)

Although the PSLRA's amendments to the Exchange Act do not specifically indicate the manner in which the "largest financial interest" should be calculated, the statute provides that a plaintiff's damages in any securities fraud class action may be measured by:

> the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the security and the mean trading price of the security during the period beginning immediately after dissemination of information correcting the misstatement or omission and ending on the date on which the plaintiff sells or repurchases the security.

15 U.S.C. § 78u-4(e)(2).

Alternatively, where the plaintiff continues to hold the security that is the subject of the action, the PSLRA provides for damages to be measured by:

> the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market.

15 U.S.C. § 78u-4(e)(1).

Courts have held that four factors are relevant to the manner in which the "largest financial interest" is calculated: "(1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs." *Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997) (attached hereto as Ex. A); *see also In re Milestone Scientific Sec. Litig.*, 183 F.R.D. 404, 413 (D.N.J. 1998). The Brody Trust Transaction and Loss Chart (*see* Speirs Aff., Ex. B1) sets forth facts relevant to determine the Proposed Lead Plaintiff's financial interest in the relief sought by the Class.

Moreover, the PSLRA was intended to encourage investors like Brody to come forward

7

to serve as lead plaintiff. Congress sought to "protect[] investors who join class actions against lawyer-driven lawsuits by giving control of the litigation to lead plaintiffs with substantial holdings of the securities of the issuer". H.R. REP. NO. 104-369, at 32 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 731; *accord* S. REP. NO. 104-98, at 4 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 683 (Congress "intends…to empower investors so that they - not their lawyers - exercise primary control over private securities litigation…."); S. REP. 104-98, at 6, 1995 U.S.C.C.A.N. at 685 (The PSLRA seeks "to transfer primary control of private securities litigation from lawyers to investors."); S. REP. 104-98, at 10, 1995 U.S.C.C.A.N. at 689 ("The lead plaintiff should actively represent the class. The Committee believes that the lead plaintiff - not lawyers - should drive the litigation.").

Thus, the appointment of Brody as the Lead Plaintiff would comply with the sound policy instituted by the PSLRA that securities class actions be controlled by investors with substantial holdings.

### C.  The Proposed Lead Plaintiff Satisfies the Requirements of Rule 23

In addition to satisfying the specific requirements set forth above, the proposed lead plaintiff must also satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a).

For purposes of appointing a lead plaintiff, however, a wide-ranging analysis under Rule 23 is not appropriate. *In re Party City Sec. Litig.*, 189 F.R.D. 91, 106 (D.N.J. 1999); *see In re*

8

*Milestone*, 183 F.R.D. at 414 (same). Rather, the court's focus should rest on the requirements of typicality and adequacy of the proposed lead plaintiff. *See In re Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d 39, 46 (D. Mass. 2001); *Fields v. Biomatrix, Inc.*, 198 F.R.D. 451, 456 (D.N.J. 2000); *In re Party City*, 189 F.R.D. at 106. As discussed below, the Proposed Lead Plaintiff satisfies both the typicality and adequacy requirements of Rule 23(a), thereby supporting his appointment as Lead Plaintiff.

### (1) The Proposed Lead Plaintiff's Claims Are Typical of the Claims of the Class

Rule 23(a)(3) is satisfied when the proposed lead plaintiff's claims arise from the same series of events and are based upon the same legal theories as the claims of the class members. *See In re Lucent Tech, Inc. Sec. Litig.*, 221 F. Supp. 2d 472, 486-87 (D.N.J. 1998); *In re Milestone*, 183 F.R.D. at 415. However, the typicality requirement does not insist on identical claims, but rather that the claims share a common element of fact or law. *See Fields*, 198 F.R.D. at 456; *In re Party City*, 189 F.R.D. at 106.

The Proposed Lead Plaintiff's claims are typical of those of the Class. Like all Class members, Brody's claims arise out of allegations that the Defendants embarked upon a scheme and course of conduct in which they issued a series of material misrepresentations regarding Vaso Active's VALE transdermal delivery system, the clinical trials of Termin8, and the endorsement of that product. Like all Class members, Brody suffered damages when the SEC questioned the accuracy of Vaso Active's statements in its press releases, public statements, 2003 Annual Report and Registration Statement. Thus, Brody satisfies the typicality requirement.

### (2) The Proposed Lead Plaintiff Will Fairly and Adequately Represent the Interests of the Class

The PSLRA directs the Court, in evaluating the adequacy of a proposed lead plaintiff, to

9

limit its inquiry to the existence of any conflicts between the interests of the proposed lead plaintiff and the members of the class. The primary elements of adequate representation are: (i) the representative must have common interests with the unnamed members of the class; and (ii) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel. *See Fields,* 198 F.R.D. at 457; *In re Milestone,* 183 F.R.D. at 416.

Here, the Proposed Lead Plaintiff's interests are clearly aligned with those of the other Class members. As detailed above, the Proposed Lead Plaintiff's claims share common questions of law and fact with the Class, and his claims are typical of the other Class members. Further, by virtue of his financial interests and choice of lead counsel and liaison counsel, it is clear that Brody will vigorously prosecute the interests of the Class.

### D. The Court Should Approve the Proposed Lead Plaintiff's Choice of Lead Counsel and Liaison Counsel

Pursuant to the PSLRA, the lead plaintiff is permitted, subject to the Court's approval, to select and retain counsel to represent the class. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Proposed Lead Plaintiff has selected and retained Zwerling Schachter to represent him and the putative Class as Proposed Lead Counsel. He has also chosen Berman DeValerio to act as Proposed Liaison Counsel. As set forth in Exhibits D and E to the Speirs Affidavit, Proposed Lead Counsel and Proposed Liaison Counsel have extensive experience in securities litigation and other complex litigation, and have prosecuted many securities fraud class actions. Proposed Lead Counsel has obtained significant and successful results for injured investors in numerous securities class action lawsuits, and has been responsible for legal decisions that enable actions such as this to be successfully prosecuted. (Speirs Aff., Ex. D) Proposed Liaison Counsel has also obtained significant and successful results in class action lawsuits. (Speirs Aff., Ex. E)

## V.    CONCLUSION

For the foregoing reasons, the Proposed Lead Plaintiff respectfully requests that the Court: (1) grant his motion to appoint him Lead Plaintiff in the Consolidated Action; and (2) approve his choice of Zwerling Schachter as Lead Counsel and Berman DeValerio as Liaison Counsel for the putative Class.

Dated: June 7, 2004

                                      **BERMAN DEVALERIO PEASE TABACCO BURT & PUCILLO**

                                      Jeffrey C. Block, BBO#600747
                                      Michael T. Matraia, BBO#633049
                                      N. Nancy Ghabai, BBO#645050
                                      One Liberty Square, 8th Floor
                                      Boston, Massachusetts 02109
                                      Phone: (617) 542-8300
                                      Fax: (617) 542-1194

                                      *Proposed Liaison Counsel for the Class*

                                      **ZWERLING, SCHACHTER & ZWERLING LLP**
                                      Richard A. Speirs
                                      Stephen L. Brodsky
                                      Shaye J. Fuchs
                                      845 Third Avenue
                                      New York, NY 10022
                                      Phone: (212) 223-3900
                                      Fax: (212) 371-5969

                                      *Proposed Lead Counsel for the Class*