# EXHIBIT A



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

IN RE                              §
CARREKER CORPORATION               §    Civil Action No. 3:03-CV-0250-M
SECURITIES LITIGATION              §

### ORDER

Proper notice of the pendency of this action having been given under 15 U.S.C. § 78u-4(a)(3)(A)(i), the Court now has before it dueling Motions to Appoint Lead Plaintiffs, with each movant not surprisingly seeking to have different attorneys appointed by the Court. On June 16, 2003, the Court heard oral argument on the Motions. There are two issues presented: first, is John Wenturine, the movant with the largest claimed loss, an appropriate Lead Plaintiff when he bought and sold all of his Carreker stock during the class period; and second, should the Court consider seven individuals, including two married couples, a "group" under 15 U.S.C. § 78u-4 (a)(3)(B)(iii), when, if it so treats them, they would have larger losses than those claimed by John Wenturine?

The Private Securities Litigation Reform Act of 1995 ("PSLRA") provides that the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interest of class members. . . ." 15 U.S.C. § 78u-4(a)(3)(B)(I). The Act creates a rebuttable presumption that the most adequate plaintiff is the person or group of persons that: (a) has filed the complaint or brought a motion for appointment of lead plaintiff in response to the publication of notice; (2) "in the determination of the Court has the largest financial interest in the relief sought by the class," and (3) "otherwise satisfies the requirements of Federal Rule of Civil Procedure 23." 15 U.S.C. § 78u-

4(a)(3)(B)(iii)(I)(aa)-(cc). This presumption may be rebutted by proof that the presumptively most adequate plaintiff (1) "will not fairly and adequately protect the interests of the class;" or (2) "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)-(bb).

John Wenturine claims losses in excess of $80,000. The position asserted by the cross-movants is that because Wenturine bought and sold all of his Carreker stock during the class period, he suffered no recoverable damages, because throughout the class period the Carreker stock value was inflated by allegedly fraudulent accounting misstatements. In response, Wenturine submits an affidavit from an expert witness, Dr. Blaine Nye, who concludes that a class member who bought and sold Carreker stock during the class period could suffer losses, and recoverable damages, despite the inflation of the stock price caused by accounting misrepresentations. The expert also notes that 60% of the potential class members in this case were in and out traders; that is, they bought and sold Carreker stock during the class period.

The Court accepts the argument that an in and out trader could conceivably suffer recoverable damages, depending upon the extent to which, compared to the purchase price, the stock's value was inflated at the time of sale. As is confirmed by Exhibit 5 of the materials tendered by Wenturine's counsel at the June 16, 2003 hearing, some scenarios involving in and out traders would result in actual damages to them, and some would not. The examples discussed in Exhibit 5 demonstrate that in half of the hypotheticals, in and out traders were damaged, and in the other half they were not. The situation of in and out traders must be contrasted with those who held their Carreker stock at the end of the class period. Without addressing liability questions, they undoubtedly were damaged when the stock price dropped. In contrast, Mr. Wenturine may or may not have actually been

damaged, and a great deal of time, effort and expense will undoubtedly be incurred to determine if he is subject to a unique no damage defense that cannot be asserted against those who still held Carreker stock at the end of the class period. The Court concludes that such a scenario renders Wenturine, who moves to be appointed the sole Lead Plaintiff, an inadequate plaintiff under Rule 23, and the Court thus rejects his Motion to be appointed Lead Plaintiff. Several courts have reached similar conclusions in light of similar facts. *See In re Cable & Wireless, PLC*, Civ. No. 02-1860 at 14-16 (E.D. Va. 2003); *In re Comdisco Sec. Litig.*, 150 F. Supp. 2d 943, 945 (N.D. Ill. 2001); *In re McKesson HBOC, Inc. Sec. Litig.*, 97 F. Supp. 2d 993, 998 (N.D. Cal. 1998).

The second Motion for Appointment as Lead Plaintiffs is brought by seven individuals whose total alleged losses exceed Wenturine's, but whose individual claims, even when combining the claims of spouses, do not exceed Wenturine's. Their attorneys urge the Court to treat them as a "group" under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Their attorneys have recently assembled them as such and thereafter withdrew their conflicting motions to have their various clients appointed. Excluding the married couples, these persons had no relationship prior to this suit. They live in various cities across the United States. They have had a joint telephone conference only once, so close to the time of hearing that the Court (and opposing counsel) heard of it only at the hearing. Prior to that June 10 telephone call, only an undesignated four of the seven were able to arrange to participate in the single call conducted. Their lawyers proffered at the hearing their individual declarations, by which they make non-specific statements that they have "implemented procedures," have a "regular schedule" and will make decisions in this case on majority vote (of stock? per capita?). Two of the five, like Wenturine, were in and out traders. The seven ask the Court to select three law firms as co-lead counsel.

3

In the Court's view, these seven individuals are not a "group" as the PSLRA uses the term in 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). *See generally Casolari v. Van Wagoner Funds, Inc.*, No. 02-03383 SBA (N.D. Cal. 2003); *In re Enron Corp. Securities Litigation*, 206 F.R.D. 427, 455 (S.D. Tex. 2002); *In re Razorfish, Inc. Securities Litigation*, 143 F. Supp. 2d 304 (S.D.N.Y. 2001). The Court does not believe a group can be created merely by counsel's giving a common name to previously unrelated people, who present no detailed structure by which they will operate. The Court has in the past, and will in the future, consider whether an appointment of previously unrelated persons best serves the interest of the class and whether a sufficient governance structure is in place to assure that those individuals will actually manage the litigation, but in this case, the Court sees no advantage to combining these seven persons to act as Lead Plaintiffs. The married couple of Reed Gustow and Heather Winett, who previously selected the well-qualified firm of Berger & Montague to act as their counsel, and who in the aggregate suffered the greatest alleged loss ($47,450) of any persons before the Court other than Wenturine, are appropriate persons to act as Lead Plaintiffs. Clearly, a married couple can be considered a "group" under the PSLRA.

The Court preliminarily determines that Gustow and Winett meet the requirements of adequacy and typicality under FED.R.CIV.P. 23. *In re Waste Management, Inc.*, 128 F. Supp. 2d 401, 411 (S.D. Tex. 2000). Typicality exists if the named plaintiffs' claims "arise from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory." *Longden v. Sunderman*, 123 F.R.D. 547, 556 (N.D. Tex. 1988). The adequacy requirement is fulfilled if there are no conflicts of interests between the named plaintiffs and other class members, and the named parties must be prepared to prosecute the action vigorously. *Id.* at 557. Here, the alleged damages all arise out of the same alleged accounting frauds of Defendants

4

that the Plaintiffs contend artificially inflated the price of Carreker stock. Proof of injury and damages by Winett and Gustow would establish the claims of other class members as well.

The Court emphasizes that the inquiry into these factors at this stage is not as searching as will occur when the Court reviews a motion for class certification. However, for the purpose of appointing lead plaintiffs, the Court determines that Winett and Gustow are adequate representatives of the class and that their claims are typical of the claims of the class.

Finally, the Court must appoint counsel to represent the Lead Plaintiffs. The PSLRA vests authority with the Lead Plaintiff to select and retain lead counsel, subject to the Court's approval. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court finds that Berger & Montague is very experienced and well qualified to act as counsel for the Lead Plaintiffs. Susman Godfrey is also well qualified to assist as local counsel. The Court declines to appoint the other counsel initially selected by the persons who sought appointment as Lead Plaintiffs but who are not being appointed. In the Court's view, appointing two other law firms to act as co-lead counsel is not in the best interest of the putative class.

The Court appoints Reed Gustow and Heather Winett as Lead Plaintiffs, and Berger & Montague as Lead Counsel and Susman Godfrey as local counsel. The Court DENIES all other motions to appoint lead plaintiff and approve lead counsel.

SO ORDERED this 14 day of August, 2003.

BARBARA M.G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS

5