UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE VASO ACTIVE PHARMACEUTICALS SECURITIES LITIGATION | Civil Action No. 04-10708-RCL<br><br>Hon. Reginald. C. Lindsay |

**MEMORANDUM OF LAW IN OPPOSITION TO COMPETING MOTIONS
FOR APPOINTMENT OF LEAD PLAINTIFF, LEAD COUNSEL AND LIAISON COUNSEL
AND IN FURTHER SUPPORT OF THE MOTION OF DAVID B. BRODY,
AS CO-TRUSTEE OF THE BRODY FAMILY REVOCABLE TRUST,
TO APPOINT LEAD PLAINTIFF, LEAD COUNSEL AND LIAISON COUNSEL**

Plaintiff David B. Brody, as Co-Trustee of the Brody Family Revocable Trust ("Brody"), respectfully submits this Memorandum of Law in Opposition to the Competing Motions for Appointment of Lead Plaintiff, Lead Counsel and Liaison Counsel and in Further Support of his Motion for Appointment as Lead Plaintiff, Lead Counsel and Liaison Counsel.[1]

## INTRODUCTION

There are nine movants for Lead Plaintiff in this consolidated action against Vaso Active and certain of its officers and directors.[2] Of them, Brody is best suited to be appointed Lead Plaintiff in this litigation. His claims against the Defendants are typical of the Class as a whole. Like the other Class members, he purchased Vaso Active common stock during the Class Period at prices artificially inflated by the Defendants' misrepresentations; relied on those

---

[1] The capitalized terms used herein are defined in Brody's moving Memorandum of Law.

[2] These movants have also moved for the appointment of their selected Lead Counsel and Liaison Counsel.

misrepresentations; and was damaged as a result (in his case, suffering $46,736.16 in losses).[3] Brody also meets the adequacy requirements for a lead plaintiff better than any other movant. He has no conflicting interests with any of the other Class members and has certified that he will protect their interests. He has chosen qualified and experienced legal counsel. He has submitted clear and complete proof of his losses and financial interest in this litigation. Finally, with **6,300 shares** of the Company's common stock that he still presently holds, he has a continuing, vested interest in prosecuting this action vigorously.

Unlike Brody, each of the other movants[4] suffers from one or more defects which render them ineligible to be appointed Lead Plaintiff. Specifically, the other movants: (1) are groups of unrelated individuals arranged by counsel simply to aggregate losses; (2) fail to provide clear and complete information regarding their alleged losses; (3) are atypical and subject to unique defenses; (4) no longer possess any Vaso Active stock; and/or (5) rely on skewed damages analyses. That certain of these competing movants claim losses that are higher than Brody's is irrelevant — their defects render them inadequate, regardless of the amount of their alleged losses. Brody has *none* of the other movants' defects, and in fact, is the "most adequate plaintiff" to serve as Lead Plaintiff and represent the Class.

Accordingly, Brody respectfully requests that this Court deny in their entirety the competing motions of the other movants, grant his motion in its entirety and appoint Brody as

---

[3] Brody is apparently the only lead plaintiff movant who employed a weighted mean trading price of Vaso Active stock when computing his losses. Of those movants who indicate their use of a mean trading price of the stock, each of those movants use an unduly low figure. *See infra* at p. 10.

[4] Of the eight other movants, six of the them are "groups" of individuals put together by their attorneys, and two of them are individuals, Michael Berteletti ("Berteletti") and Eduard Slinin ("Slinin").

Lead Plaintiff, approve his selection of Zwerling, Schachter & Zwerling, LLP as Lead Counsel and approve his selection of Berman DeValerio Pease Tabacco Burt & Pucillo as Liaison Counsel.

## ARGUMENT

I.   **Brody Should Be Appointed Lead Plaintiff Based On The PSLRA's Requirements**

The PSLRA requires a court to appoint a class lead plaintiff who is "most capable of adequately representing the interests of class members." 15 U.S.C. §78u-4(a)(3)(B)(i). The statute creates a rebuttable presumption that the "most adequate plaintiff" to serve as lead plaintiff is the person who: (1) has either filed the complaint or made a motion in response to a notice; (2) in the determination of the court, has the largest financial interest in the relief sought by the class; and otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)-(cc).[5] However, this presumption is rebutted if the lead plaintiff applicant (1) will not fairly and adequately protect the interests of the class or (2) is subject to unique defenses that render the plaintiff incapable of adequately representing the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As discussed below, each of the other movants has defects that render them ineligible, atypical, and/or inadequate to be Lead Plaintiff. Brody has none of the other movants' deficiencies, and meets the PSLRA's requisites better than each of them.

II.  **The Group Movants Are Attorney-Arranged Collections Of Unrelated Individuals Which Flout The PSLRA's Purposes**

Six of the other movants consist of "groups" of individuals (the "Group Movants"). They are: (1) the "Alipour Group"; (2) the "Chae Group"; (3) the "Choi Group"; (4) the "Merturi

---

[5] As noted in Brody's moving papers, a lead plaintiff must satisfy only the typicality and adequacy requirements of Fed. R. Civ. Pro. 23; the other requirements are not considered. *See, e.g., Fields v. Biomatrix, Inc.,* 198 F.R.D. 451, 456 (D.N.J. 2000).

Group"; (5) the "Yungman Group"[6]; and (6) the "Vaso Active Group". None of the Group Movants should be appointed Lead Plaintiff. Courts have repeatedly held that a group of unrelated individuals which attorneys have put together simply to aggregate losses under the PSLRA is not an adequate lead plaintiff. *See, e.g., Howard Gunty Profit Sharing Plan v. Carematrix Corp.*, No. C.A. 99-12318-MLW, 2000 WL 33348124, at *5 (D. Mass. Aug. 15, 2000) (a lead plaintiff "cannot be a mere assemblage of unrelated persons who share nothing in common other than the twin fortuities that (1) they suffered losses and (2) entered into retainer agreements with the same attorney.") (citation omitted); *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 455 (S.D. Tex. 2002) (a group must be "cohesive" and present a "clear persuasive reason" why it its members have joined); *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304 (S.D.N.Y. 2001) (denying group's application for lead plaintiff where it was an "artifice cobbled together by . . . . counsel" for the purpose of aggregating losses); *In re Network Assoc. Sec. Litig.*, 76 F. Supp. 2d 1017, 1026-27 (N.D. Cal. 1999) (an "[a]rtificial aggregation of [a group of unrelated investors] should never be allowed for any purpose."). None of the Group Movants describes any meaningful relationship — or any relationship at all — among its members to justify its existence.

In fact, none of the Group Movants even attempts to explain how it came to be formed and how its members would work together and with counsel – a ***minimum*** requisite for a group to be considered for lead plaintiff status. *See Howard Gunty,* 2000 WL 33348124, at *5 (noting that proposed lead plaintiff group must at least "explain its members association, how they came to form a group, and how they would work together"); *Switzenbaum v. Orbital Sciences Corp.,*

---

[6] Brody's counsel, Berman DeValerio *et al,*, received a copy by mail of the motion by Bruce A. Yungman and Ronnie Young (the "Yungman Group") to be appointed Lead Plaintiff on June 14, 2004, only five days before opposition papers to other plaintiffs' lead plaintiff motions were due.

4

187 F.R.D. 246, 250 (E.D. Va. 1999) (concluding that lead plaintiff applicant failed to demonstrate adequacy where it failed to provide any "meaningful information about the identity of its seven members other than to offer their names, a summary of the transactions by which they purchased [the company's] securities, and the 'simple mathematical' conclusion that they have the largest financial interest in the case."). Notably, even if a court is provided with such information by a group, it may nonetheless disregard it and deny the group lead plaintiff status if the group still remains merely a "creation" of the counsel it is supposed to control. *See Miller v. Ventro Corp.*, 01-CV-1287, 2001 WL 34497752 (N.D. Cal. Nov. 28, 2001) at *9.

The Group Movants provide no such information regarding their members. They never explain how their members would function in the litigation, how the group would be structured or how their members would communicate with each other and counsel to coordinate the prosecution of this action.[7] Having failed to offer any evidence of their proposed interaction and ability to work jointly in prosecuting this action, each of these groups has failed to meets its burden to demonstrate it should be named Lead Plaintiff. The certifications they submit provide only the names and stock transaction information[8] of their members — nothing more.

The Group Movants are apparently nothing more than collections of unrelated individuals that their attorneys created solely to aggregate losses and thereby gain an unfair (but illusory) numerical advantage over other lead plaintiff movants. In truth, the "groups" exist only by dint of their association with counsel and manifest a danger which the PSLRA precisely sought to

---

[7] The Choi Group's single statement that its members have "agreed to work together" (Choi Group Br., p. 6 fn. 5) is nothing more than a conclusory and vague assertion, lacking any specifics or meaningful import. The Choi Group never describes (in either the certifications of its members or its supporting memorandum) the structure of the group, how the group came to be formed, the relationship among the members, how they will work together, how decisions will be made among them, or how they will communicate and coordinate with counsel. Its statement is a thinly veiled attempt to cover the fact it is an artificial "creation" by counsel. *See Miller*, 2001 WL 34497752 at *9.

[8] As discussed below, several of these Group Movants even fail to set forth sufficient information regarding their members' sales of Vaso Active stock or any damage analysis whatsoever. *See* Point IV *infra* at pp. 9-11.

5

eliminate: attorney-driven litigation. *See, e.g., In re Enron,* 206 F.R.D. at 455 (rejecting application of group lead plaintiff, stating that "they have not shown that their grouping is not a manipulated effort to aggregate larger losses that other proposed Lead Plaintiffs"); *In re DonnKenny Inc. Sec. Litig.,* 171 F.R.D. 156, 157-158 (S.D.N.Y. 1997) (noting that "[o]ne of the principal legislative purposes of the PSLRA was to prevent lawyer-driven litigation"). This Court should therefore deny the Group Movants' motions in accordance with the PSLRA's goal of ensuring that the clients – and not the lawyers — control the litigation.[9]

### III. Certain Group Movants Also Contain Members Who Will Subject Them To Unique Defenses

#### A. The Merturi And Choi Groups Have Atypical Traders

The Merturi and Choi Groups are inadequate lead plaintiffs not only because they are merely artificial groups of unrelated investors, but also because they include active traders who may be vulnerable to unique defenses by the Defendants. A lead plaintiff who is an active day trader may be considered not typical of the other class members and subject to unique defenses based on his or her trading strategies. *See Weintraub v. Texasgulf, Inc.,* 564 F. Supp. 1466, 1471 (S.D.N.Y. 1983) (class certification denied where proposed class representative was a sophisticated, active trader whose particular trading activities would give rise to a unique defense "that may have the ultimate effect of prejudicing members of the proposed class"); *Kline v. Wolf,* 88 F.R.D. 696, 699-700 (S.D.N.Y. 1981); *aff'd,* 703 F.2d 400 (2d Cir. 1983) (class certification denied where proposed representative was an active trader who did not rely on the market, subjecting him to "unique defenses" as to reliance which vitiates the typicality of his claims).

---

[9] The Yungman Group is a deficient lead plaintiff not only for these reasons. It also claims ***total*** losses of $30,408.65, which are ***less*** than Brody's individual losses of $46,736.16. Under the PSLRA, the Yungman Group has less of a financial interest in this litigation than Brody does.

The submissions of the Merturi Group and Choi Group make clear that each group contains such traders: (1) Derek Bauer ("Bauer"), a member of the Merturi Group, among other trades, purchased and sold 12 lots of Vaso Active shares at varying prices within 3 days (February 24 to February 25, 2004), purchased 28 lots of shares at varying prices on the same day, March 26, 2004, and *divested himself* of all of his stock holdings in the Company 4 days later (before the end of the Class Period), selling shares at varying prices; (2) Edwin Choi ("Choi"), a member of the Choi Group, purchased and sold Vaso Active shares 10 times on the same day, March 29, 2004, at varying prices; and (3) Richard Ching ("Ching"), another member of the Choi Group, purchased Vaso Active shares 11 times at varying prices on the same day, March 11, 2004.

As a result, appointing either of these Group Movants as Lead Plaintiff would seriously prejudice the Class. If either were appointed Lead Plaintiff, the Defendants may assert a specific defense in response to the active trading strategies of these groups' members; attack the groups or their members as not typical of the Class; or argue that conflicting interests exist between these groups and other Class members. This Court should not risk the interests of the Class with expensive and time consuming practice over issues that Brody does not raise.

### B.  The Merturi Group Contains An "In-And-Out" Trader

The Merturi Group is inadequate for the additional reason that Bauer sold all of his stock in Vaso Active before the end of the Class Period, when the alleged fraud was disclosed. Such an investor, called by courts as an "in-and-out trader", has been held as atypical and subject to unique defenses on the grounds that he or she suffered no harm due to the alleged fraud.[10] For

---

[10] While plaintiff Brody does not necessarily agree that in-and-out traders may not be damaged, a lead plaintiff having these attributes may create numerous additional complex issues of conflicting interests and adequacy in regard to class certification.

7

example, the court in *In re Carreker Corp. Sec. Litig.*, 03-CV-0250, slip op. at p. 2-3 (N.D. Tex. Aug. 14, 2003) denied a lead plaintiff motion of an in-and-out trader because he:

> may or may not have actually been damaged, and a great deal of time effort and expense will undoubtedly be incurred to determine if he is subject to a unique no damage defense that cannot be asserted against those who still held Carreker stock at the end of the class period.

*See* opinion attached hereto as Exhibit A. Similarly, the court in *In re Cable & Wireless, P.C. Sec. Litig.*, 217 F.R.D. 372, 379 (E.D. Va. April. 21, 2003), rejected the lead plaintiff application of an institutional investor that sold all of its shares before the alleged fraud was revealed because it "could not have suffered any loss as a result of the alleged fraud". *See also In re Aduini/Messina P'ship v. Nat'l Med. Fin. Servs. Corp.*, 74 F. Supp. 2d 352, 361-362 (S.D.N.Y. 1999) (holding that a movant's losses that occurred prior to disclosure of defendant's fraud are not, as a matter of law, recoverable.); *In re McKesson HBOC, Inc. Sec. Litig.*, 97 F. Supp. 2d 993, 998 (N.D. Cal. 1998) (concluding it is inappropriate to consider losses by "in and out traders" . . . when determining the plaintiff with the greatest financial interest in the litigation."). *Accord In re Comdisco Sec. Litig.*, 150 F. Supp. 2d 943, 945 (N.D. Ill. 2001).

For this third reason, the Merturi Group is vulnerable to unique defenses (*e.g.*, standing, loss causation or that the movant benefited from the fraud by selling into an inflated market). Appointing the Merturi Group as Lead Plaintiff would put the Class in jeopardy for a number of reasons. Denying its lead plaintiff motion is in the best interests of the Class.

IV.  **The Other Movants Fail To Provide Clear, Accurate And Complete Information Regarding Their Alleged Losses**

To enable a court to analyze and accurately determine a movant's "financial interest" in a litigation, the PSLRA requires a lead plaintiff applicant to submit a certification that "sets forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint." 15 U.S.C. § 78u-4(a)(2)(iv). Consistent with the PSLRA's requirements, courts routinely deny motions for lead plaintiff or representative status if the movant provides incomplete or ambiguous proof of his or her transactions in the security at issue. *See In re Eaton Vance Corp. Sec Litig.*, 219 F.R.D. 38, 42 (D. Mass. 2003) (denying motion for class representative on the ground that the movant failed to file a certification with his complaint); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998) (denying lead plaintiff motions of two movants who failed to provide sufficient information regarding their financial interest in the litigation); *In re Williams Sec. Litig.*, 02-CV-72-H(M), 2002 WL 32153476 (N.D. Ok. Jul. 8, 2002) at *5 (denying motion of a movant that had not adequately demonstrated its financial interest in the action, stating: "Market Street's original certification and loss calculation, unlike those of other lead plaintiff movants, failed to provide sufficient information for the Court to analyze the basis for its claimed financial interest.").

Like the movants in *Olsten* and *Williams*, the other movants submit incomplete and ambiguous information regarding their claimed losses:

- The Alipour Group provides no information regarding its members' sales, if any, of Vaso Active stock (*e.g.*, date, amount, price, loss or gain); the number of shares, if any, that its members presently hold; explain how the losses of its members was computed or indicate if it employed a 90 day mean trading price to arrive at its alleged losses.

- Berteletti[11] never states whether the $0.60 price used to calculate his losses after the Class Period is the sale price of Vaso Active stock that day, a daily average sale price, or a 90 day mean weighted trading price required by the PSLRA.

- The Chae Group does not state how any of its members' losses were computed; explain the discrepancy between the number and purchase price of the shares purchased by Joseph Salmassi, as listed in Salmassi's certification and in the group's loss chart; or indicate the number of shares retained by its members.

- The Merturi Group fails to use the 90 day mean trading price of Vaso Active shares for a post-class sale by Luz Merturi, as required by the PSLRA.

- The Yungman Group fails to indicate whether it uses a 90 day mean trading price for calculating the value of Vaso Active stock.

- The Vaso Active Group submits information regarding its members' transactions that is extremely ambiguous and in fact, unintelligible at parts. It fails to identify the member or members that purportedly engaged in two pages of stock transactions. The group also fails to provide any information regarding the calculation of its alleged losses.

Due to these deficiencies, it is impossible for either Brody or this Court to examine and test the validity of these movants' loss calculations and the amount of their alleged "financial interests" in this litigation.

In addition, each of other movants that indicate their use of a mean trading price for Vaso Active stock when calculating their losses employ a price that is too low. The movants and their figures are as follows: the Chae Group ($0.73); the Choi Group ($0.73); the Merturi Group ($0.74); Slinin ($0.50). These movants use a price that is roughly the average of the daily trading price of Vaso Active stock without considering the stock's fluctuating daily trading volume. Brody is apparently the only movant who correctly weighted the "90 day mean trading

---

[11] Berteletti is the *only* individual movant who claims greater losses than Brody. Notably, Berteletti does not only provide ambiguous information regarding his losses. As discussed below, Berteletti completely *divested* himself of Vaso Active stock, while Brody retains more than three quarters of the stock he purchased. Slinin, the only other competing individual movant, claims less losses than Brody.

10

price"[12] by the daily trading volume of the Company's stock to arrive at a price of $1.23. As a result, only Brody's loss calculations are accurate and reliable.

Whether based on the PSLRA, applicable case law or simple fairness, the motions of each of the other movants should be denied on the grounds that the movants are inadequate and have not demonstrated the largest financial interest in this action.[13]

V.   **Brody Is A More Adequate Lead Plaintiff Than The Two Other Individual Movants**

As noted above, six of the other lead plaintiff movants are artificial groups which clearly raise the specter of attorney-driven litigation. The multiple deficiencies of these Group Movants have already been discussed in detail. Only two of the movants competing with Brody are individuals: Berteletti and Slinin. Brody should be appointed Lead Plaintiff over each of them.

Brody is presumptively a more "adequate" lead plaintiff than Slinin because Brody has a larger financial interest in this litigation. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)-(cc). Slinin claims only $31,331.00 in losses, while Brody claims $46,736.16 in losses. Notably, Brody's losses are greater than Slinin's even though Slinin relies on an inexplicably low mean trading price of $0.50 (the lowest of the movants).[14] This presumption cannot be rebutted since Brody will fairly and adequately protect the interests of the Class, and he is not subject to unique

---

[12] The mean trading price may not necessarily be required to be calculated over a 90 day period, however. Brody calculated the mean trading price over roughly a 60-day period due to the date of publication of the first class action notice and the resulting deadline for filing a lead plaintiff motion in this action.

[13] That certain of the individuals within the Group Movants claim losses greater than Brody's is of no moment. Chae, of the Chae Group, is presently completely divested of his Vaso Active shares, while Brody retains 77% of his original holdings. Choi and Ching, of the Choi Group, are ineligible as active, day traders subject to unique defenses. Joe Huback, also of the Choi Group, is also currently divested of all of his Vaso Active shares. Finally, Luz Merturi, of the Merturi Group is currently divested of all of her Vaso Active shares as well. The loss calculations and individual losses of the members of the Vaso Active Group are impossible to determine from the group's submissions. The other individuals within the Group Movants are ineligible as members of lead plaintiff movants suffering from all of the defects and risks set forth in detail above.

[14] When one uses the same mean trading price for each of them, the disparity between Brody's and Slinin's losses is even greater. If Brody uses Slinin's mean trading price of $0.50, Brody's losses increase to $51,308.16. If Slinin uses Brody's mean price of $1.23, his losses drop to $29,141.00.

defenses that render him incapable of adequately representing the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

While Berteletti claims to have greater losses than Brody, Brody should be appointed Lead Plaintiff. First, Berteletti **completely divested** himself of all of his Vaso Active stock while Brody still holds 6,300 shares of the 8,200 Vaso Active shares that he purchased (or 77% of his original holdings). Since Brody still holds a significant amount of Vaso Active stock, he has a greater continuing interest in prosecuting this action. *See* H.R. REP. NO. 104-369, at 32 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 731 (Congress sought to "increase the likelihood that parties with significant holdings in issuers . . . will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel."). Second, Brody is better suited to represent all of the Class members. He can represent shareholders who sold all of their Vaso Active shares and suffered a loss like him, and those who still have a significant stake in the Company. In contrast, issues may possibly arise regarding the ability of Berteletti to represent those plaintiffs who have not completely divested themselves of all of their stock. Third, in contravention of the PSLRA, Berteletti apparently fails to use a mean trading price when calculating the proceeds of his April 30, 2004 sale of Vaso Active stock. Instead, the price he uses, $0.60, approximates the closing price of Vaso Active shares on that day, $0.66.[15]

## VI. Brody's Selection Of Lead Counsel And Liaison Counsel Should Be Approved

Brody has selected and retained Zwerling, Schachter & Zwerling, LLP to represent him and the putative Class as Proposed Lead Counsel and Berman DeValerio Pease Tabacco Burt & Pucillo to act as Proposed Liaison Counsel. Each of these firms has extensive experience in

---

[15] If Berteletti were to employ Brody's mean trading price of $1.23, Berteletti's losses drop to $65,500.00 compared to Brody's losses of $46,736.16.

securities litigation and other complex litigation, prosecuted many securities fraud class actions, and obtained significant and successful results for injured investors in numerous securities class action lawsuits. *See* Affidavit of Richard A. Speirs, sworn to on June 1, 2004, Exs. D and E. None of the other movants take issue with these firms.

## CONCLUSION

For the reasons set forth above, Brody is the "most adequate" Lead Plaintiff. He retains a significant amount of Vaso Active stock, is most representative of the other Class members, and does not possess any of the many serious defects and risks that the other movants possess. Accordingly, Brody respectfully requests that the Court: (1) appoint him as Lead Plaintiff for the Class; and (2) approve his selection of Zwerling, Schachter & Zwerling, LLP as Lead Counsel for the Class and Berman DeValerio Pease Tabacco Burt & Pucillo as Liaison Counsel.

Dated: June 21, 2004                     Respectfully submitted,

**BERMAN DEVALERIO PEASE TABACCO BURT & PUCILLO**

/s/ N. Nancy Ghabai
Jeffrey C. Block, BBO#600747
Michael T. Matraia, BBO#633049
N. Nancy Ghabai, BBO#645050
One Liberty Square, 8th Floor
Boston, Massachusetts 02109
Phone: (617) 542-8300
Fax: (617) 542-1194

*Counsel for David B. Brody, as Co-Trustee of the Brody Family Revocable Trust, and Proposed Liaison Counsel for the Class*

**ZWERLING, SCHACHTER & ZWERLING, LLP**
Richard A. Speirs
Stephen L. Brodsky
Shaye J. Fuchs
845 Third Avenue
New York, NY 10022
Phone: (212) 223-3900
Fax: (212) 371-5969

*Counsel for David B. Brody, as Co-Trustee of the Brody Family Revocable Trust, and Proposed Lead Counsel for the Class*

14