UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE VASO ACTIVE PHARMACEUTICALS SECURITIES LITIGATION | Consolidated Case No.: 04-10708 (RCL) |

**MERTURI GROUP'S MEMORANDUM OF LAW IN OPPOSITION TO COMPETING MOTIONS, AND IN FURTHER SUPPORT OF ITS MOTION FOR CONSOLIDATION, APPOINTMENT AS CO-LEAD PLAINTIFF, AND APPROVAL OF ITS SELECTION <u>OF CO-LEAD COUNSEL AND LIAISON COUNSEL</u>**

## **PRELIMINARY STATEMENT**

Presently before the Court are eight motions for consolidation, appointment as lead plaintiff and for approval of selection of lead counsel, pursuant to the Private Securities Litigation Reform Act (the "PSLRA"). The movants and their reported losses are as follows:

| MOVANT | REPORTED LOSSES |
| --- | --- |
| Choi Group | $339,239 |
| Chae Group | $325,000 |
| Vaso Active Plaintiff Group | $247,000 |
| Merturi Group | $196,323 |
| Michael Berteletti | $71,800 |
| Alipour Group | $69,064 |
| Eduard Slinin | $31,331 |
| Bruce A. Yungman and Ronnie Young | $30,400 |

Although the Choi Group, Chae Group, and Vaso Active Plaintiff Group report larger losses than the Merturi Group, they each fail to meet the PSLRA's adequacy and typicality requirements. Therefore, the Merturi Group submits that this Court should, in accordance with the PSLRA, exercise its discretion to select as co-lead plaintiffs one member from each of the movant groups who have demonstrated a significant financial interest in the action *and* otherwise meet the PSLRA's requirements. *See, e.g. Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. LaBranche & Co., Inc.*, 2004 U.S. Dist. LEXIS 9571, at *18, *88 (S.D.N.Y. May 27, 2004) (appointing group of previously unrelated movants to "ensure that adequate resources and experience are available to the prospective class in the prosecution of this action"); *In re Oxford Health Plans, Inc. Sec. Litig.,* 182 F.R.D. 42, 45 (S.D.N.Y. 1998) (court exercised discretion in appointing co-lead plaintiffs where "neither movant, standing alone, is a particularly ideal plaintiff"). Thus, the Merturi Group proposes as proposed lead plaintiffs Richard Ching (of the Choi Group), Ki Chang Chae (of the Chae Group), and Luz Merturi (of the Merturi Group) who

reported losses of $141,116, $192,780, and $98,737, respectively.[1] The Merturi Group further submits that the Court should appoint as lead counsel Milberg Weiss and the lead counsel proposed by each of the Choi Group and Chae Group as determined by the members of those groups.

## ARGUMENT

## POINT I

### THIS COURT SHOULD APPOINT AS CO-LEAD PLAINTIFFS ONE MEMBER FROM EACH OF THE MERTURI GROUP, CHOI GROUP, AND CHAE GROUP

The appointment of Co-Lead Plaintiffs consisting of a member of each of the three movant groups with large financial stakes in the action is consistent with the PSLRA, which expressly provides for appointment of multiple lead plaintiffs, 15 U.S.C. § 78u-4(a)(3)(B)(i) (the court "shall appoint as lead plaintiff the *member or members* of the purported plaintiff class that the court determined to be most capable of adequately representing the interests of class members") (emphasis added), and with the SEC recommendation that lead plaintiff groups be no larger than "three to five members." *In re Baan Co. Sec. Litig*., 186 F.R.D. 214, 216-17 (D.D.C.

---

[1] It is impossible to determine whether **both** Ki Chang Chae and Young Hee Chae authorized the filing of the Chae Group motion and are willing to serve as lead plaintiff. Although the certification of Ki Chang Chae appears to be signed by the both Ki and Young Hee Chae, it states, as follows, that only Ki Chang Chae is wiling to serve as a representative party:

> *Ki Chae ("Plaintiff")*, declares as to the claims asserted, or to be asserted, under the federal securities laws, that:
> 1. *Plaintiff* has reviewed the Vaso Active Pharmaceuticals, Inc. complaint.
> 2. *Plaintiff* did not purchase any common stock/securities that are the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action under the federal securities laws.
> 3. *Plaintiff* is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary. . .

Exhibit A of the Affidavit of John E. Dewick In Support Of The Chae Group's Motion For Appointment As Lead Plaintiff And Approval Of Lead Plaintiff's Selection of Lead Counsel ("Dewick Aff."), dated June 7, 2004.

In addition, the Chae certification was not dated. In these circumstances, unless and until the Chae Group provides evidence that both Ki Chang Chae and Young Hee Chae authorized the filing of the Chae Group motion and are willing to serve as lead plaintiff, only Ki Chang Chae should be considered a proper movant herein.

1999) (quoting amicus curiae brief submitted by SEC).[2] Moreover appointment of a small and cohesive group of three lead plaintiffs "will allow for pooling, not only of the knowledge and experience, but also of the resources of the plaintiffs' counsel in order to support what could prove to be a costly and time-consuming litigation." *In re Oxford Health Plans*, 182 F.R.D. at 46, 49; *see also Pirelli,* 2004 U.S. Dist. LEXIS 9571, at *82 (appointing group of two previously unrelated movants to "ensure that adequate resources and experience are available to the prospective class in the prosecution of this action"). Courts have the authority to combine movants and counsel, that filed separate motions, to ensure that the class receives the best representation even if the selected lead plaintiffs/lead counsel filed separate motions. For example, in *In re Oxford Health Plans*, the court appointed an institutional investor and a group of individuals as lead plaintiffs and approved the selection of each movants' choice of lead counsel, even though the two sets of movants had filed separate motions, because doing so was in the best interest of the class:

> It should also be noted that the lead plaintiff movants are not in fact competing with each other. Each is seeking the same result-- the greatest recovery for the class consistent with the merits of the claims raised, the defenses asserted and the burdens and risks of litigation. ***The rebuttable presumption created by the PSLRA which favors the plaintiff with the largest financial interest was not intended to obviate the principle of providing the class with the most adequate representation and in general the Act must be viewed against established principles regarding Rule 23 class actions.*** Allowing for diverse representation, including in this case a state pension fund, significant individual investors and a large institutional investor, ensures that the interests of all class members will be adequately represented in the prosecution of the action and in the negotiation and approval of a fair settlement, and that the settlement process will not be distorted by the differing aims of differently situated claimants.

---

[2] Although the Vaso Active Plaintiff Group reports losses larger than the Merturi Group, for the reasons set forth herein in Point IA4 *infra*, the Vaso Active Plaintiff Group is inadequate and atypical, and therefore, should not be appointed as Co-Lead Plaintiff.

3

182 F.R.D. at 49 (emphasis added).  Similarly, in *Pirelli,* the court appointed two competing movants as co-lead plaintiff, reasoning that a co-lead structure would provide the best representation of the class:

> In light of the novel circumstances of these consolidated actions and the Court's acknowledged discretion in the lead plaintiff appointment process, a co-lead plaintiff structure is appropriate here. Such a structure, as noted above, will help to ensure that adequate resources and experience are available to the prospective class in the prosecution of this action. Employing a co-lead plaintiff structure here will also provide the proposed class with "the substantial benefits of joint decision-making," *In re Oxford Health Plans,* 182 F.R.D. at 45, a significant advantage if not outright imperative in this consolidated action, given the divergent views expressed in the movants' papers as to the subject of the litigation and what types of transactions were allegedly affected by Defendants' purported conduct. Particularly in light of the novelty of this type of action, it is anticipated that the different perspectives that CalPERS and Empire each brings "will materially add to the overall quality of lead representation in this case." *EZRA Charitable Trust*, 136 F. Supp. 2d at 444. Furthermore, creating a co-lead structure here will have the salutary effect of providing greater stability in the prosecution of these consolidation actions, should a decision be reached at some later stage in the litigation that either co-lead plaintiff will not adequately represent the class or that the financial interest of one of the co-lead plaintiffs demonstrably eclipses that of the other co-lead plaintiff.

2004 U.S. Dist. LEXIS 9571, at *82; *In re Cable & Wireless, PLC*, 217 F.R.D. 372, 379 (E.D. Va. 2003) (court exercised discretion in appointing co-lead plaintiffs where "neither movant, standing alone, is a particularly ideal plaintiff"); *Laborers Local 1298 Pension Fund v. Campbell Soup Co.*, 2000 WL 486956, at *3 (D.N.J. Apr. 24, 2000) (appointing two competing movants as co-lead plaintiffs "since each may bring a unique perspective to the litigation").

This Court therefore should appoint one member from each of the movant groups which have demonstrated a significant financial stake in this litigation to serve as Co-Lead Plaintiffs. Each Co-Lead Plaintiff should be free from unique defenses or other attacks on his or her adequacy to represent the purported Class. Mr. Chae, Mr. Ching, and Mr. Merturi have each reported substantial losses in their transactions in Vaso stock and expressed their commitment to

undertake their responsibilities as Co-Lead Plaintiffs. This co-leadership structure is especially appropriate here, where, as set forth herein, certain members of the Chae Group and Choi Group, and all members of the Vaso Active Plaintiff Group, are facially inadequate and atypical despite their reported large losses and, therefore, ineligible for appointment as lead plaintiff.[3] Appointing three movants as lead plaintiff, each whom meets the PSLRA's typicality and adequacy requirements, is also desirable to make certain at the class certification stage, at least one of the lead plaintiffs will be certified to represent the class. Accordingly, this Court should appoint as Co-Lead Plaintiffs Merturi, Ching, and Ki Chae, each of whom has one of the largest financial interests in the litigation *and* satisfies the PSLRA's adequacy and typicality requirements.

> **A.     All Members of the Vaso Active Plaintiff Group and Certain Members of The Choi Group and Chae Group Are Inadequate, Atypical And, Therefore, Ineligible For Appointment As Lead Plaintiff**
>
> > **1.     Edwin Choi of the Choi Group Is a Day Trader, And, Therefore, Is Arguably Subject To Unique Defenses**

Edwin Choi of the Choi Group is a day trader in Vaso stock because he engaged in *20 transactions* over the course of 16 days during the Class Period---*10 of these transactions occurred in one day* (March 29, 2004).[4] Courts have held that day traders such as Choi do not satisfy the requirements of Fed. R. Civ. P. Rule 23 because they are subject to the unique defense that they are not entitled to the presumption of reliance. *See In re Bank One Shareholders Class*

---

[3] If only one entity is appointed as lead plaintiff and it is not certified as a class representative, the adverse impact upon the class could potentially be catastrophic. At a minimum, the Court could be faced with going back to square one and finding another lead plaintiff - one that has not been previously involved in the litigation. *See In re Oxford Health Plans*, 182 F.R.D. at 50 ("it is far less likely that any potential defenses would successfully rebut a finding of typicality where more than one investor ... is appointed as class representative").

[4] *See* Exhibit B of the Declaration of Darren J. Check In Support of Motion of The Choi Group To Be Appointed Lead Plaintiffs And For Approval of Lead Plaintiffs' Selection of Lead Counsel and Liaison Counsel ("Check Decl."), dated June 7, 2004.

*Actions,* 96 F. Supp. 2d 780, 784 (N.D. Ill. 2000) (when compared to another group, entity that **"*engaged in extensive day trading*"** was not qualified to serve as lead plaintiff) (emphasis added); *Modell v. Eliot Sav. Bank*, 139 F.R.D. 17, 22 (D. Mass. 1991) (Harrington, J.) (typicality may be absent when a proposed representative is "subject to unique defenses that would divert attention from the common claims of the class."). Because Edwin Choi may be subject to unique defenses, he cannot satisfy the basic Rule 23 requirements under the PSLRA.

### 2. The Certification of Joe Huback Is Defective And He Failed To Properly Demonstrate His Financial Interest

Joe Huback of the Chae Group failed to submit a certification which properly documented his transactions in Vaso securities during the Class Period as required by the PSLRA. The PSLRA expressly provides that:

> Each plaintiff seeking to serve as a representative party on behalf of a class shall provide a sworn certification, which shall be personally signed by such plaintiff and filed with the complaint [. . .]

Section 78u-4 (a)(2)(A).

The legislative history of the [Reform Act] reveals that Congress intended all prospective lead plaintiffs to provide the information contained in the certifications:

> The Committee recognizes that certain basic information about the lead plaintiff should be provided at the outset of litigation. Accordingly, the Committee requires that the lead plaintiff file a sworn certified statement with the complaint. The plaintiff must certify that he or she: (a) reviewed and authorized the filing of the complaint; (b) did not purchase the securities at the direction of counsel or to participate in a lawsuit; (c) is willing to serve on behalf of the class. To further deter professional plaintiffs, the plaintiff must also identify any transactions in the securities covered by the class period, and the other lawsuits in which the plaintiff has sought to serve as lead plaintiff in the last three years.

Senate Report No. 104-98, at 689. In this case, Joe Huback failed to accurately set forth his Class Period transactions in Vaso stock, as required by the PSLRA; instead, Huback listed on his certification two purported sales transactions on April 24, 2004-- *a Saturday,* which, obviously, were impossible. This error casts doubts on the accuracy of all of Huback's reported transactions

6

and Huback's adequacy to serve as lead plaintiff. Under similar circumstances, where movants have submitted inaccurate and/or incomplete evidence of their transactions, or failed to adequately certify their transactions, courts have rejected lead plaintiff applications and motions for class certification. *See In re Eaton Vance Corp. Sec. Litig.*, 219 F.R.D. 38 (D. Mass. 2003) (Harrington, J.) (denying proposed class representative application for failure to file certification with complaint); *In re Olsten Corp. Sec. Litig.,* 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998) (rejecting proposed lead plaintiff for failure to provide information to support his purported loss); *In re Williams Sec. Litig.*, 02-CV-72-H(M) (N.D. Okla. Jul. 8, 2002), at p. 10 (rejecting the motion of a movant who had not demonstrated its financial interest in the litigation and explaining that "***Market Street's original certification and loss calculation, unlike those of other lead plaintiff movants, failed to provide sufficient information for the Court to analyze the basis for its claimed financial interest***") (emphasis added) (attached as Exhibit A hereto); *In re Microstrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 436 (E.D. Va. 2000) (court denied motion of a lead plaintiff movant because, among other reasons, movant could not demonstrate how it arrived at its loss computation); *Burke v. Ruttenberg*, 102 F. Supp. 2d 1280, 1320 (D. Ala. 2000) ("Certification requires a plaintiff seeking to serve in a representative capacity to put forward with his, her, or its motion such information from which the district court can evaluate the adequacy of that plaintiff against competitors under subsection 21D(a)(3)(B)(iii)(I). In *In re Olsten Corp. Sec. Litig.,* the court rejected lead plaintiff motions of two movants who had not provided adequate information with respect to their financial interest in the action, reasoning as follows:

> Weichman, while she moves to be appointed as lead plaintiff of the consolidated action, offers no information with respect to the magnitude of her financial interest, other than stating that she obtained her 116 Olsten shares in exchange for her 200 Quantum shares. ***Even though Cannold argues that he has the largest financial interest in the outcome of the litigation, he does not present any facts to support this assertion***.

7

3 F. Supp. 2d at 295 (emphasis added). Like the lead plaintiffs proposed in *Olsten* and *Williams,* Huback has failed to demonstrate his financial interest in this case and therefore, is inadequate.

> **3.     Joseph Salmassi and Norman Brodeur of the Chae Group Submitted "Online Certifications" Which Do Not Satisfy the PSLRA Certification Requirements And Are Therefore Inadequate**

Joseph Salmassi and Norman Brodeur of the Chae Group have also failed to satisfy the PSLRA certification requirements and are therefore inadequate. As discussed herein, the PSLRA requires that each proposed lead plaintiff provide a sworn certification which shall be "***personally signed.***" 15 U.S.C. § 78u-4(a)(2)(A). In complete disregard of these express statutory requirements and the signature requirements of this state, Salmassi and Brodeur submitted what seems to be merely a printout from the Chae Group's counsel's website without a personal handwritten signature thereon, which states, in relevant part, as follows:

> **Certification and Authorization of Named Plaintiff Pursuant to Federal Securities Laws**
>
> The individual or institution listed below (the "Plaintiff") authorizes and, upon execution of the accompanying retainer agreement by LCSR, retains Lerach Coughlin Stoia & Robbins LLP ("LCSR") to file an action under the federal securities laws to recover damages and to seek other relief against Vaso Active Pharmaceuticals, Inc. ("Vaso Active"). LCSR will prosecute the action on a contingent fee basis and will advance all costs and expenses. The Vaso Active Pharmaceuticals, Inc. Retention Agreement provided to the Plaintiff is incorporated by reference, upon execution by LCSR.
>
> * * *
>
> 7. During the three years prior to the ***date of this Certification***, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except if detailed below:
>
> | | |
> |---|---|
> | **I declare under penalty of perjury, under the laws of the United States, that the information entered is accurate:** | Yes |

8

| | |
|---|---|
| **By clicking on the button below, I intend to sign and execute this agreement.** | Yes |

Clicked to Participate in the Vaso Active Action

Signed pursuant to California Civil Code Section 1633.1, et seq. – Uniform Electronic Transactions Act

*See* Dewick Aff. Exh. A.  Clearly, Salmassi and Brodeur's "online certifications" are *prima facie* defective because 1) Salmassi and Brodeur failed to date their respective certification, which renders their representations in paragraph 7 therein concerning their service as representative parties in the in the three years ***prior to the date of the certification*** meaningless, and 2) Salmassi and Brodeur failed to provide a handwritten signature on their certification as contemplated by the PSLRA.  The click of a button can hardly be considered satisfactory.  All other movants, including Chae Group member Ki Chang Chae, apparently concur with this construction of the PSLRA as they each submitted a certification containing a handwritten signature.  Apparently, in an effort to cobble together the largest financial interest, counsel for the Chae Group most likely downloaded all "online certifications" from its website, selected the ones demonstrating the largest loss---that is, Salmassi and Brodeur's certification, and filed a motion on Salmassi and Brodeur's behalf, possibly even without their knowledge or consent.  Why else would the Chae Group submit one personally signed certification (Ki Chang Chae) and two online certifications (Salmassi and Brodeur)?  Courts have denied applications for lead plaintiff or class certification in cases where the basic certification requirements of the PSLRA have not been satisfied.  *See In re Eaton Vance Corp. Sec. Litig.*, 219 F.R.D. at 42 (denying class certification in part because named plaintiff failed to file certification with amended complaint, noting that "[t]he purpose of the certification is "to ensure more effective representation of investors in securities ... class actions by transferring control of the litigation from the attorneys to the investors. Accordingly, the certification requires, among other things, a statement that the plaintiff has reviewed and

9

authorized the complaint") (citations omitted); *see generally Burke v. Ruttenberg,* 102 F. Supp. 2d at 1321 ("The Court houses deep reservations about appointing any body to act in a lead plaintiff capacity where there exist serious questions whether all of the purported members of that body are aware that they are to act as lead plaintiff"); *In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1047 (N.D. Cal. 1999) (reproducing Memorandum of the Securities and Exchange Commission in which it is stated that "the Reform Act essentially bars from the lead plaintiff role a person who. . . does not read the complaint before a lawsuit is filed in his or her name"). Likewise, this Court should deny the Salmassi and Brodeur's application.

Salmassi and Brodeur's reliance on the California Civil Code, adopting the Uniform Electronic Transactions Act, to justify their use of an online or electronic signature is inapposite. The governing law is not California law, where the Chae Group's counsel is located, but rather the law of Massachusetts, where this action is pending, where many of the defendants are located, and where there is the most interest in how this action is maintained. *See Weikel v. Tower Semiconductor, Ltd.,* 183 F.R.D. 377, 400 (D.N.J. 1998) ("In construing matters of State law in pendent claims or in state law matters otherwise subsidiary to its federal question jurisdiction, a federal court . . . is duty-bound to apply the law of the state in which it sits."). According to Chapter 110G of the Massachusetts General Laws, the use of electronic signatures on official court documents required to be executed in connection with a court proceeding is expressly excluded. *See* MASS. GEN. LAWS ch. 110G, §§ 2 and 3 (2003) ("Uniform Electronic Transactions Act ("UETA") (attached hereto as Exhibit B). The Merturi Group and its counsel are unaware of any statutes permitting electronic signatures on lead plaintiff certifications in this state. The UETA states as follows, in relevant part:

> (8) "Electronic record" means a record created, generated, sent, communicated, received, or stored by electronic means.

>   (9) "Electronic signature" means an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record.
>
>   * * *
>
>   (18) "Transaction" means an action or set of actions occurring between two or more persons relating to the conduct of business, commercial, or governmental affairs.
>
>   SECTION 3. (a) Except as otherwise provided in subsection (b), this Chapter applies to electronic records and electronic signatures relating to a transaction.
>
>   (b) This Chapter does not apply to a transaction to the extent it is governed by:
>
>   * * *
>
>   (4)   This Chapter applies to a transaction governed by the Electronic Signatures in Global and National Commerce Act, 114 Stat. 464, 15 U.S.C. s 7001, et seq., but is not intended to limit, modify or supersede Section 101(c) (3) or (e) of that Act [15 U.S.C. s 7001(c) (d) or (e)]. ***This Chapter shall not apply to a signature, contract or other record, or otherwise to any transaction, to the extent it is governed by any of the laws or bodies of law indicated in the following sub-section:***
>
>   * * *
>
>   >   *(c)    court orders or notices, or official court documents (including briefs, pleadings, and other writings) required to be executed in connection with court proceedings;*

MASS. GEN. LAWS ch. 110G, §§ 2 and 3 (2003) (emphasis added).

Given the plain language of the UETA, counsel for the Chae Group would be hard pressed to argue that (1) a lead plaintiff motion and accompanying PSLRA certification(s) are not "official court documents", (2) that a court hearing determining the most adequate plaintiff is not a "court proceeding", and (3) that the lead plaintiff motion and accompanying certifications need not be executed for a court to appoint a lead plaintiff. In fact, the PSLRA expressly requires that each prospective representative party file a sworn certification in order for the court to determine the prospective lead plaintiff's financial interest. *See* 15 U.S.C. § 78u-4(a)(2)(A) ("Each plaintiff

11

seeking as a representative party on behalf of a class *shall provide* a sworn certification, which shall be personally signed by such plaintiff and *filed* with the complaint") (emphasis added). As such, given that the Massachusetts General Laws appear to exclude electronic signatures on lead plaintiff motions and accompanying lead plaintiff certifications, and that the Merturi Group and its counsel are unaware of any law in this state to the contrary, Salmassi and Brodeur's online certifications containing electronic signatures are therefore unacceptable in this action.[5]

### 4. The Vaso Active Plaintiff Group Failed To Properly Document Their Loss And Are Inadequate And Atypical

The Vaso Active Plaintiff Group, reporting combined losses of $247,000, suffers from many of the same infirmities as Edwin Choi and Joe Huback of the Choi Group. First, the Vaso Active Plaintiff Group failed to provide any information to substantiate its purported loss, not even an analysis of its members' transactions as set forth in their respective certification.[6] On the other hand, an analysis of the Vaso Active Plaintiff Group's losses may have been impossible given that the certification of Joyendu Mukherjee, a member of the Vaso Active Plaintiff Group, is materially defective. *See* Pastor Decl. Exh. B. Mukherjee failed to categorize with column headings any of the information he provided on page 3 or 4 of his certification such that one could calculate his interest in the litigation. Even if one were able to identify the information by guesswork, any attempt to determine Mukherjee's financial interest would be futile because he incorrectly calculated the proceeds from his transactions in Vaso. For example, it appears that Mukherjee incorrectly listed proceeds of $7, $7,996.09 from a sales transaction on March 25,

---

[5] The Merturi Group recognizes that this District permits, in certain circumstances, the use of electronic signatures on documents filed electronically, *i.e.*, documents filed by attorneys registered for Electronic Case Filing, documents containing multiple signatures, and affidavits. *See* United States District Court District of Massachusetts Electronic Case Filing Administrative Procedures (ECF Procedures") (Oct. 24, 2003), at § J. The ECF Procedures, however, does not expressly provide for the use of electronic signatures on lead plaintiff certifications.

[6] *See* Exhibit B of the Declaration of David Pastor In Support of Motion Of Vaso Active Plaintiff Group For Appointment As Lead Plaintiffs And Approval Of Selection of Lead Counsel ("Pastor Decl."), dated June 7, 2004.

12

2004 of 1,060 shares of Vaso stock, at $8.016666 per share. Mukherjee's certification is replete with similar errors.[7] Notwithstanding, Mukherjee appears to be a day trader in Vaso stock. Over the course of the Class Period, Mukherjee made **55 transactions** in Vaso stock **in only 21 days**, many of which occurred on the same day. For these reasons, the Vaso Active Plaintiff Group is inadequate and atypical.

B. **Milberg Weiss Should Be Appointed Co-Lead Counsel**

Courts must consider the complexity of the litigation, the amount of money at stake, parties involved, and the law firm's available resources in appointing lead counsel. *See In re Lernout & Hauspie Sec. Litig.,* 138 F. Supp. 2d 39, 46-47 (D. Mass. 2001) (Saris, J.). Lead Counsel must be "qualified, experienced and vigorously able to conduct the litigation." *Id.* at 45. In addition, recent amendments to Rule 23 of the Federal Rules of Civil Procedure call upon the judiciary to scrutinize with ever increasing vigor the selection of counsel to represent the class:

(1) Appointing Class Counsel.

>  (A) Unless a statute provides otherwise, a court that certifies a class must appoint class counsel.
>
>  (B) An attorney appointed to serve as class counsel must fairly and adequately represent the interests of the class.
>
>  (C) In appointing class counsel, the court
>
>  > (i) must consider:
>  >
>  > > ?  the work counsel has done in identifying or investigating potential claims in the action,
>  > >
>  > > ?  counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action,

---

[7] Mukherjee falsely certified the following transactions and proceeds in Vaso stock: 1) March 24, 2004 purchase of 1,060 shares at $6.66 per share, for proceeds of $6670.00; 2) March 24, 2004 purchase of 106 shares at $6.66 per share, for proceeds of $667.00; 3) March 29, 2004 sale of 206.0006 shares at $6.88 per share, for proceeds of $1,373.94; 4) March 29, 2004 sale of 566 shares at $6.88 per share, for proceeds of $3,434.86; and 5) March 30, 2004 sale of 260.066 shares at $7.51 per share, for proceeds of $1,499.94. *See* Pastor Decl. Exh. B.

13

>>  ?   counsel's knowledge of the applicable law, and
>
>>  ?   the resources counsel will commit to representing the class;
>
>  (ii)   may consider any other matter pertinent to counsel's ability to fairly and adequately represent the class;
>
>  (iii)   may direct potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney fees and nontaxable costs; and
>
>  (iv)   may make further orders in connection with the appointment.

Fed. R. Civ. P. 23(g). Although clearly applicable at the class certification stage, Rule 23(g) has also been applied at the lead plaintiff stage. In *In re Cree, Inc. Sec. Litig.,* a class action alleging violations of the Securities Exchange Act of 1934, the court considered proposed lead counsel's previous work in identifying or investigating potential claims in the actions, counsel's experience in litigating class and complex actions and claims asserted in the existing actions, and counsel's knowledge of applicable law, and its available resources before appointing it lead counsel. 219 F.R.D. 369, 373 (M.D. N.C. 2003).

It is imperative, thus, that the Court consider the complexity of this action, the complicated facts and scientific data concerning the pharmaceutical industry from which the allegations against Vaso arise, and the resources required to litigate this Action. Merturi's selection of Milberg Weiss as Co-Lead Counsel will benefit the class substantially. Milberg Weiss, which is well known to this Court, has historically been the preeminent class action firm, and employs teams of in-house investigators, forensic accountants and paralegals that are indispensable to the successful prosecution of these types of actions. In addition, because securities class actions lawyers are paid on contingency at the successful resolution of the case, which can take years, a firm's ability to fund a case, and to bear the risk of loss over time, is an important factor that is proportional to the firm's assets, ability to expand or contract its

workforce, and funds from operations.  For these reasons, the participation of Milberg Weiss as Lead or a Co-Lead Counsel will result in tangible benefits to the class.  The participation of the Mr. Merturi, Chae, and Ching as Co-Lead Plaintiff will also ensure that the Class is adequately represented and will make it more likely that a class will be certified. *See In re Oxford Health Plans,* 182 F.R.D. at 50 ( "[I]t is far less likely that any potential defenses would successfully rebut a finding of typicality where more than one investor or group of investors who made the decision to purchase the security is appointed as class representative.").

The Class would be best represented by a team of law firms, each of whom is experienced in the prosecution of securities class actions and have the resources available to do so.  This approach ensures "pooling . . . of the resources of the plaintiffs' counsel in order to support what could be a costly and time-consuming litigation." *In re Oxford Health Plans*, 182 F.R.D. at 46.  Given the magnitude of this action, this Court should appoint as Co-Lead Counsel the team of Milberg Weiss, and the law firm selected by each of the Chae Group and Choi Groups.  Together, Co-Lead Counsel shall work together, provide superior and effective representation, and maximize any recovery for the Class.

## POINT II.

### THE FINANCIAL INTEREST OF OTHER MOVANTS IS SUBSTANTIALLY SMALLER AND THEY FAIL TO PROPERLY DOCUMENT THEIR LOSSES

The losses reported by Michael Berteletti, the Alipour Group, Eduard Slinin, and Bruce A. Yungman and Ronnie Youngman are substantially less than the losses alleged by the Choi Group, Chae Group, and Merturi Group, and therefore, this Court should deny their motions.  In addition, it is inappropriate to appoint Michael Berteletti, Eduard Slinin, Bruce A. Yungman or Ronnie Youngman, or any member of the Alipour Group as Co-Lead Plaintiff given that the largest individual loss alleged among them is merely $71,800, compared to Luz Merturi's

15

$98,737--the smallest loss alleged by the proposed Co-Lead Plaintiffs. The motion of Michael Berteletti, the Alipour Group, Eduard Slinin, and Bruce A. Yungman and Ronnie Youngman are also plagued with inaccuracies, deficiencies, and unsubstantiated claims that unequivocally demonstrate that they are not the presumptive most adequate plaintiff in this Action. For example, Michael Berteletti certified that he purchased Vaso securities on March 15, 2004 at $7.78 per share, when, in fact, the trading range of Vaso stock on that day never exceeded $7.26.[8] *See* Exh. C (historical price chart of Vaso stock). Moreover, Berteletti failed to properly calculate his loss in Vaso Active stock by applying the 90-day trading average of $0.74 per share, using, instead, an average price of $0.60, thereby inflating his purported loss by nearly 2 percent. Likewise, Eduard Slinin and Bruce Yungman improperly calculated their respective loss by applying the incorrect 90-day trading average.[9] In addition, Kourosh Alipour of the Alipour Group certified that he purchased Vaso stock on February 20, 2004 at $21.00 per share when the stock did not trade below $24.57 that day.[10] *See* Exh. C. Timmy Smith and Douglas Weymouth of the same group also failed to list on their respective certification the price at which they bought or sold Vaso stock.[11]

---

[8] *See* Exhibit A Of The Declaration Of Christopher Keller In Support of the Motion Of Michael Berteletti For Appointment As Lead Plaintiff And Approval Of Proposed Lead Plaintiff's Selection of Lead Counsel, dated June 7, 2004.

[9] *See* Exhibit B (chart analyzing Slinin's loss) of the Declaration Of Theodore M. Hess-Mahan In Support Of Motion Of Eduard Slinin To (1) Be Appointed Lead Plaintiff; And (2) Approve Proposed Lead Plaintiff's Choice of Counsel, dated June 7, 2004, and Exhibit C (chart analyzing Yungman's loss) Of The Declaration Of Fred T. Isquith In Support Of Motion Of Bruce A. Yungman and Ronnie Young For Consolidation, Appointment As Lead Plaintiffs And Approval Of Selection Of Lead Counsel, dated June 7, 2004.

[10] *See* Exhibit 1 of the Declaration Of William B. Federman In Support Of The Motion Of The Alipour Group For Consolidation, Appointment As Lead Plaintiff And For Approval Of Selection Of Lead Counsel, dated June 7, 2004.

[11] *See id.* at Exhs. 2 and 3.

16

For these reasons, Michael Berteletti, the Alipour Group, Eduard Slinin, and Bruce A. Yungman and Ronnie Youngman are not entitled to the presumption of the most adequate plaintiff under the PSLRA and their submissions should be rejected.

## CONCLUSION

For all the foregoing reasons, the Merturi Group respectfully requests that the Court: (i) appoint Luz Merturi, Richard Ching, and Ki Chang Chae as Co-Lead Plaintiffs in the action; (ii) approve the Merturi Group's selection of Milberg Weiss as Co-Lead Counsel, along with one law firm selected by each of the Choi and Chae Groups, and approve the Merturi Group's selection of Moulton & Gans, P.C. to serve as Liaison Counsel as set forth herein; and (iii) grant such other such relief as the court may deem just and proper.

DATED:  June 21, 2004                                      Respectfully submitted,

**MOULTON & GANS, P.C.**

By: /s/ Nancy Freeman Gans
Nancy Freeman Gans
33 Broad Street, Suite 1100
Boston, MA  02109
Tel.:  (617) 369-7979

*Proposed Liaison Counsel*

**MILBERG WEISS BERSHAD & SCHULMAN LLP**
Steven G. Schulman
Peter E. Seidman
Sharon M. Lee
One Pennsylvania Plaza
New York, NY 10119
Tel.: (212) 594-5300

*Proposed Co-Lead Counsel*

17

**BRODSKY & SMITH, LLC**
Evan Smith
Two Bala Plaza, Suite 602
Bala Cynwyd, PA  19004
Tel:  (610) 667-6200

**LAW OFFICES OF CHARLES J. PIVEN, P.A.**
Charles J. Piven
The World Trade Center-Baltimore
401 East Pratt Street, Suite 2525
Baltimore, Maryland  21202
Tel.:  (410) 986-0036

*Attorneys for Plaintiff*

### CERTIFICATE OF SERVICE

I, Sharon M. Lee, hereby certify that a true copy of the above document was served upon the attorney of record for each party on June 21, 2004.

/s/ Sharon M. Lee
Sharon M. Lee
**MILBERG WEISS BERSHAD & SCHULMAN LLP**
One Pennsylvania Plaza
New York, NY  10119-0165
(212) 594-5300