# EXHIBIT F

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KATHLEEN GUERRA, Individually )
and on behalf of all others similarly )
situated, )
 )
 )
       Plaintiffs, )   CIVIL ACTION
 )   NO. 01-11789-NG
  v. )   (Lead Number)
 )
TERADYNE INC., et al., )
 )
       Defendants. )

## MEMORANDUM OF DECISION AND ORDER ON MOTION OF THE PLUMBERS AND PIPEFITTERS NATIONAL PENSION FUND GROUP FOR APPOINTMENT AS LEAD PLAINTIFF

This matter is before the court on the "Motion of the Plumbers and Pipefitters National Pension Fund Group for Consolidation, Appointment as Lead Plaintiff and Approval of Selection of Lead and Liaison Counsel" (Docket #6).[1] By this motion, approval is being sought for the appointment of the Plumbers and Pipefitters National Pension Fund ("the Fund") and two individuals, Stephen N. Gordon and Martin R. Gubb (collectively, the "Pension Fund Group") as Lead Plaintiff in three consolidated cases pursuant to § 21D(a)(3)(B) of the Securities Exchange Act of 1934, and of their selection

---

[1] At the hearing on July 2, 2002, this court allowed motions to consolidate three pending cases against Teradyne, Inc. On the same date, the competing motion of Brooks Industries of L.I. Profit Sharing Plan, et al. for Approval of Selection of Lead Counsel was withdrawn. (See Docket #11). In accordance with the court's allowance of the consolidation of these cases, all documents filed in the consolidated cases shall bear the Docket No. 01-11789-NG and shall be filed under that number only.

of the law firms of Milberg Weiss Bershad Hynes & Lerach LLP and Schiffrin & Barroway LLP as Lead Counsel, and Moulton & Gans, P.C. as Liaison Counsel. For the reasons detailed herein, the motion is ALLOWED.

## STATEMENT OF FACTS

These securities class actions are brought on behalf of all persons who purchased the securities of Teradyne, Inc. ("Teradyne") between July 14, 2000 and October 17, 2000. Teradyne manufactures automatic test systems and related software for the electronics and commercial industries. See Guerra Complaint at ¶ 7. The plaintiffs allege that during the class period, Teradyne executives misled the investing public through conscious omissions and the dissemination of materially false and misleading statements, which incorrectly portrayed the company business and financial affairs. See id. at ¶ 16. By these actions, the plaintiffs allegedly were induced to purchase Teradyne securities at artificially inflated prices. Id. The plaintiffs further contend that the statements were made to artificially inflate Teradyne's stock price to fund the $122,000,000 acquisition of Herco Technology Corporation and Perception Laminates Incorporated d/b/a Synthane Taylor. Id. at ¶¶ 16, 37. Such conduct, according to the plaintiffs, constitutes violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA") (15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

The PSLRA requires the appointment of a "lead plaintiff" in every securities class action case. See 15 U.S.C. §§ 78u-4(a)(1) and (a)(3)(B)(i). The court must select as Lead Plaintiff "the most adequate plaintiff" to represent the interests of class members. As the statute provides:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that
> (aa)　has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
> (bb)　in the determination of the court, has the largest financial interest in the relief sought by the class; and
> (cc)　otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This presumption "may be rebutted only upon proof by a member of the purported class that the presumptively most adequate plaintiff:"

> (aa)　will not fairly and adequately protect the interests of the class; or
> (bb)　is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). The PSLRA further provides that "the most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to present the class." 15 U.S.C. § 78u-4(a)(3)(B)(v).

In the instant case, the Pension Fund had the single largest loss of any potential lead plaintiff, having lost $794,519.02. Adding to that the individuals' losses, the Pension Fund Group's loss totalled $1,026,179.02. The defendants do not dispute that the Fund

-3-

had the single largest loss, and would presumptively qualify as lead plaintiff. Rather, the defendants contend that the aggregation of previously unrelated plaintiffs contravenes the language and purpose of the PSLRA, and that such an appointment would prejudice the defendants in their management of the litigation. In the alternative, the defendants argue that pursuant to the PSLRA's restriction on "professional plaintiffs," the Fund is prohibited from being appointed as lead plaintiffs due to the fact that it is already serving as lead plaintiff in more than five securities class action suits.

## ANALYSIS[2]

One principal goal of the PSLRA was to empower investors "so that they – not their lawyers – exercise primary control over securities litigation." In re Lernout & Hauspie Sec. Litig., 138 F. Supp. 2d 39, 43 (D. Mass. 2001) (quoting S. Rep. No. 104-98 at 4). Congress concluded that parties with the best ability to offer such control and effectively represent the interests of the class were "[i]nstitutional investors and other class members with large amounts at stake" in comparison to "class members with small amounts at stake" who may be less likely to supervise the attorneys involved or who may be easily manipulated by counsel. Id. (quoting H.R. Conf. Rep. No. 104-369). Therefore,

---

[2] Movants assert that the defendants lack standing to challenge their status as lead plaintiff. See Greebel v. FTP Software, Inc., 939 F. Supp. 57, 60-61 (D. Mass. 1996) (while defendants may object if movants fail to comply with procedural and notice requirements, they lack standing to object to qualifications of movants). However, as all parties agree that the objections by the defendant reflect pertinent issues that would have to be resolved in any event, the issue of standing will not be decided.

-4-

to "increase the likelihood that institutional investors will serve as lead plaintiffs," Congress required courts to "presume that the member of the purported class with the largest financial stake in the relief sought is the most adequate plaintiff." Id.

In the instant case, the defendants' opposition to the court's appointment of the Pension Fund Group as lead plaintiff does not center upon the statutory requirements, but instead, challenges the propriety of allowing an aggregation of previously unrelated parties to collectively serve as lead plaintiff in a securities class action. The defendants argue that "[a]ppointing aggregations of unrelated individuals and entities as lead plaintiffs. . .would be a disservice to and contravention of Congress' intentions in enacting the Reform Act's lead plaintiff provisions." Defendants' Opposition to Plaintiffs' Competing Motions for Appointment of Lead Plaintiffs at 8. The defendants contend that if the court allows the appointment of three individuals or entities, "it is most likely that the lawyers who brought this litigation will control the process and direct these artificial and divergent aggregations, rather than the other way around." Id. In addition, the defendants claim that if the appointment were allowed, it would increase their burden in connection with class certification issues, since the defendants "would be forced to take depositions and obtain discovery from all members of the lead plaintiff aggregation." Id. at 13. However, as detailed below, in the instant case, the proposed group is appropriate.

## Appointment of Previously Unrelated Plaintiffs

"Courts have differed on whether the statute permits a group of unrelated persons to serve as lead plaintiff." In re Lernout & Hauspie Sec. Litig., 138 F. Supp. 2d at 43. Thus, some courts have refused to allow such groupings. See, e.g., In re Telxon Corp. Sec. Litig., 67 F. Supp. 2d 803, 813 (N.D. Ohio 1999) ("the context and structure of the PSLRA evince an intent that a 'group' consist of more than a mere assemblage of unrelated persons who share nothing in common *other than* the twin fortuities that (1) they suffered losses and (2) they entered into retainer agreements with the same attorney or attorneys."); In re Donnkenny Inc. Sec. Litig., 171 F.R.D. 156, 158 (S.D.N.Y. 1997) ("To allow lawyers to designate unrelated plaintiffs as a 'group' and aggregate their financial stakes would allow and encourage lawyers to direct the litigation."). However, the statute itself speaks in terms of "members of the purported class" and "group of persons" when identifying criteria for lead plaintiff, and clearly contemplates the appointment of more than one individual or entity as lead plaintiff. See 15 U.S.C. §§ 78u-4(a)(3)(B)(i) and 78u-4(a)(3)(B)(iii)(I). Thus, there is no per se bar to an aggregate of several investors serving as lead counsel.

Courts in this circuit have read no pre-existing relationship requirement into the PSLRA's lead plaintiff provision. See, e.g., In re Lernout & Hauspie Sec. Litig., 138 F. Supp. 2d at 44 (the "weight of case law suggests that the trial court has the discretion to designate a triumvirate of unrelated persons as a lead plaintiff group . . . ."), and cases

-6-

cited. Rather, the determinative factor is not *per se* the size of the proposed group or the relatedness of its members, but the group's ability to adequately control the litigation. Here, the appointment of the proposed three-member group would be consistent with the policies and objectives of the PSLRA.

Obviously, the inclusion of the Fund in the Group (subject to the objection discussed below) satisfies Congress' desire to encourage the appointment of institutional investors. Additionally, given the significant size of the losses the proposed Group allegedly suffered, they have a clear incentive to participate in and control the litigation.

In addition to their financial interests, the small, manageable size of the Pension Fund Group will facilitate their control of the suit. This is not a grouping of "unorganized groups of unrelated investors with . . . no clear-cut mechanism for making decisions" unable to "'fairly and adequately' carry out the responsibility to protect the interests of the class." See In re Network Assocs., Inc. Sec. Litig., 76 F. Supp. 2d 1017, 1024 (N.D. Cal. 1999). This is a small group that successfully strikes the balance between having a substantial financial interest in the outcome of the litigation while at the same time retaining the cohesion that allows for the effective management of the litigation. See Takeda v. Turbadyne Techs., Inc., 67 F. Supp. 2d 1129, 1135 (C.D. Cal. 1998) ("district courts applying the Reform Act have frequently construed [the PSLRA lead plaintiff provision to include] a *small* group of manageable size that is capable of joint decisionmaking regarding the litigation"), cited in In re Tyco Int'l Sec. Litig., MBD

-7-

No. 00-MD-1335-B, 2000 WL 1513772, at *4 (D.N.H. Aug. 17, 2000) (unpublished decision). "Where the interests of proposed lead plaintiffs are aligned, concerns regarding the division of authority and dilution of control are not paramount." In re Party City Sec. Litig., 189 F.R.D. 91, 114 (D.N.J. 1999).

Here, all three proposed plaintiffs seek to serve in the lead plaintiff group. Counsel informed the court that the individual plaintiffs requested of their own initiative to be involved in the litigation, and thus will help insure active control of the litigation by providing counsel with the perspective of individual as well as institutional investors. The proposed members of the Group have all cooperated to date. Given the small size of the group, defendants' concerns about increased discovery in connection with class certification discovery is unwarranted. The proposed group is an appropriate size and capacity to adequately manage the litigation.

### The Pension Fund as "Professional Plaintiff"

In the alternative, the defendants argue that the "professional plaintiff" provision of the PSLRA bars the Pension Fund from being appointed as lead plaintiffs. The PSLRA provides, "[e]xcept as the court may otherwise permit, consistent with the purposes of this section, a person may be a lead plaintiff . . . in no more than 5 securities class actions brought as plaintiff class actions pursuant to the Federal Rules of Civil Procedure during any 3-year period." 15 U.S.C. § 78u-4(a)(3)(B)(vi). The defendants contend that the present configuration of the Pension Fund Group should be disallowed

because of the Fund's service as lead plaintiff in more than five class actions in the last three years.

However, the text and Congressional intent behind the PSLRA support the inclusion of the Pension Fund in the lead plaintiff group. Despite the restriction on the number of times a party can serve as lead plaintiff, the inclusion of the phrase, "except as the court may otherwise permit, consistent with the purposes of this section. . ." grants the court the discretion to override this restriction. Naiditch v. Applied Micro Circuits Corp., 2001 U.S. Dist. Lexis 21374, at *5 (S.D. Cal. Nov. 5, 2001). Where, as here, the goals of the PSLRA can be accomplished by the appointment of a party that would otherwise violate the professional plaintiff provision, those goals should control and override the professional plaintiff restriction. See id. (citing H.R. Conf. Rep, No. 104-369, at 31-35 (1995); reprinted in 1995 U.S.C.C.A.N. 679, 730-734, "[i]nsitutional investors seeking to serve as lead plaintiff may need to exceed this limitation and do not represent the type of professional plaintiff this legislation seeks to restrict. As a result, the Conference Committee grants courts discretion to avoid the unintended consequences of disqualifying institutional investors from serving more than five times in three years.").

As noted above, the PSLRA reflects Congressional desire to "'increase the likelihood that institutional investors will serve as lead plaintiffs[.]'" In re Lernout & Hauspie Sec. Litig., 138 F. Supp. 2d at 43 (internal citation omitted). Here, as in Naiditch, the appointment of the Pension Fund will insure that a large institutional

-9-

plaintiff with financial expertise and substantial losses will be involved in the litigation. There is no information before the court which would indicate that, despite its involvement in other cases, the Pension Fund would not fully and fairly litigate the instant dispute. Its interest in the outcome of the litigation is real. For these reasons, the Fund will not be disqualified from serving as part of the lead plaintiff group in the instant case.

### Other Requirements

To be appointed as lead plaintiff, the plaintiff must demonstrate that it "otherwise satisfies the requirements" of Federal Rule of Civil Procedure 23(a).[3] At this stage, only the requirements of Rule 23(a) that the proposed plaintiff's claims or defenses are typical of the class, and that the proposed plaintiff will fairly and adequately protect the class' interests must be met. In re Lernout v. Hauspie Sec. Litig., 138 F. Supp. 2d at 46 and cases cited. Here, defendants do not contend that these requirements have not been satisfied and, from the record before the court, the proposed lead plaintiff group has met its burden of proof on these issues. Thus, the Group has established "typicality" in that "the named plaintiffs' claims arise from the 'same events or course of conduct' and involve the same legal theory as do the claims of the rest of the class;" it has met the "adequacy requirement" in that the plaintiffs "have common interests and an absence of

---

[3] This preliminary conclusion is without prejudice to defendants' right to contest these issues in connection with class certification. In re Lernout v. Hauspie Sec. Litig., 138 F. Supp. 2d at 45 n.4

conflict with the class members" and have selected qualified, experienced counsel. Id. For these reasons, the Pension Fund Group shall be appointed lead plaintiff.

### Appointment of Counsel

The final question relative to this motion is whether to appoint three law firms as class counsel. Defendants noted at oral argument the possibility of duplication of effort but raised no further objection. The court is convinced that the firms are all qualified and experienced in the field, and are aware of the need to act in cooperation to adequately and efficiently represent the plaintiffs. The selection of lead counsel will be approved. See id. at 46-47 (approving three law firms as class counsel). "There should be no concern that duplicative legal efforts will result in higher legal costs to the class because the statute limits total attorneys' fees to 'a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class.' 15 U.S.C. § 78u-4(a)(6). That limit should make it a matter of indifference to the class whether a reasonable fee is paid to one or divided among cooperating recipients." Nager v. Websecure, Inc., No. 97-10662-GAO, 1997 U.S. Dist. Lexis 19601, at *4 (D. Mass. Nov. 26, 1997) (approving three law firms to serve as an "executive committee" to manage litigation).

-11-

## CONCLUSION

The "Motion of the Plumbers and Pipefitters National Pension Fund Group for Consolidation, Appointment as Lead Plaintiff and Approval of Selection of Lead and Liaison Counsel" (Docket #6) is ALLOWED.

A scheduling conference in accordance with a separate order of this court shall be held on Monday, September 9, 2002 at 3:00 P.M.

/s/ Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge

DATED: August 27, 2002