# EXHIBIT G

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

HOWARD GUNTY PROFIT               )
SHARING PLAN et al.,              )
    Plaintiff,               )
                             )
    v.                       )      C.A. No. 99-12318-MLW
                             )
CAREMATRIX CORP., ABRAHAM D.       )
GOSMAN, ANDREW GOSMAN, ROBERT )
KAUFMAN, FRDERICK LEATHERS,        )
MICHAEL GOSMAN,                   )
    Defendants.              )


JAMES COSENTINO et al.,   )
    Plaintiffs,              )
                             )
    v.                       )      C.A. No. 99-12322-MLW
                             )
CAREMATRIX CORP., ABRAHAM D.       )
GOSMAN, ANDREW GOSMAN, ROBERT )
KAUFMAN, FRDERICK LEATHERS,        )
MICHAEL GOSMAN,                   )
    Defendants.              )


MICHAEL E. GLASS et al.           )
    Plaintiffs,              )
                             )
    v.                       )      C.A. No. 99-12323-MLW
                             )
CAREMATRIX CORP., ABRAHAM D.       )
GOSMAN, ANDREW GOSMAN, ROBERT )
KAUFMAN, FRDERICK LEATHERS,        )
MICHAEL GOSMAN,                   )
    Defendants.              )

JAMES P. DELMONICO et al.,           )
          Plaintiffs,                )
                                     )
          v.                         )          C.A. No. 99-12324-MLW
                                     )
CAREMATRIX CORP., ABRAHAM D.         )
GOSMAN, ANDREW GOSMAN, ROBERT        )
KAUFMAN, FRDERICK LEATHERS,          )
MICHAEL GOSMAN,                      )
          Defendants.                )


PATTY LISA et al.,                   )
          Plaintiffs,                )
                                     )
          v.                         )          C.A. No. 99-12325-MLW
                                     )
CAREMATRIX CORP., ABRAHAM D.         )
GOSMAN, ANDREW GOSMAN, ROBERT        )
KAUFMAN, FRDERICK LEATHERS,          )
MICHAEL GOSMAN,                      )
          Defendants.                )


MIRIAM NATHAN et al.,                )
          Plaintiffs,                )
                                     )
          v.                         )          C.A. No. 99-12341-MLW
                                     )
CAREMATRIX CORP., ABRAHAM D.         )
GOSMAN, ANDREW GOSMAN, ROBERT        )
KAUFMAN, FRDERICK LEATHERS,          )
MICHAEL GOSMAN,                      )
          Defendants.                )


LEROY E. SCHOBER, et al.,            )
          Plaintiffs,                )
                                     )
          v.                         )          C.A. No. 99-12364-MLW
                                     )
CAREMATRIX CORP., ABRAHAM D.         )
GOSMAN, ANDREW GOSMAN, ROBERT        )
KAUFMAN, FRDERICK LEATHERS,          )
MICHAEL GOSMAN,                      )
          Defendants.                )


                        2

BRADLEY DUNHAM et al.,              )
          Plaintiffs,                )
                             )
          v.                        )      C.A. No. 99-12380-MLW
                             )
CAREMATRIX CORP., ABRAHAM D.        )
GOSMAN, ANDREW GOSMAN, ROBERT )
KAUFMAN, FRDERICK LEATHERS,         )
MICHAEL GOSMAN,                     )
          Defendants.                )


BROCK HAYNES et al.,                )
          Plaintiffs,                )
                             )
          v.                        )      C.A. No. 99-12418-MLW
                             )
CAREMATRIX CORP., ABRAHAM D.        )
GOSMAN, ANDREW GOSMAN, ROBERT )
KAUFMAN, FRDERICK LEATHERS,         )
MICHAEL GOSMAN,                     )
          Defendants.                )


EDWARD J. OEST et al.,              )
          Plaintiffs,                )
                             )
          v.                        )      C.A. No. 99-12456-MLW
                             )
CAREMATRIX CORP., ABRAHAM D.        )
GOSMAN, ANDREW GOSMAN, ROBERT )
KAUFMAN, FRDERICK LEATHERS,         )
MICHAEL GOSMAN,                     )
          Defendants.                )

3

```
GARY A. RYAN and                  )
MICHAEL B. LONDON et al.,         )
        Plaintiffs,               )
                                  )
        v.                        )        C.A. No. 99-12477-MLW
                                  )
CAREMATRIX CORP., ABRAHAM D.      )
GOSMAN, ANDREW GOSMAN, ROBERT     )
KAUFMAN, FRDERICK LEATHERS,       )
MICHAEL GOSMAN,                   )
        Defendants.               )


IRVING RAVENS et al.,             )
        Plaintiffs,               )
                                  )
        v.                        )        C.A. No. 99-12563-MLW
                                  )
CAREMATRIX CORP., ABRAHAM D.      )
GOSMAN, ANDREW GOSMAN, ROBERT     )
KAUFMAN, FRDERICK LEATHERS,       )
MICHAEL GOSMAN,                   )
        Defendants.               )


DONALD CAMP, MARIE CAMP,          )
ARTHUR BOXER, et al.,             )
        Plaintiffs,               )
                                  )
        v.                        )        C.A. No. 99-12641-MLW
                                  )
CAREMATRIX CORP., ABRAHAM D.      )
GOSMAN, ANDREW GOSMAN, ROBERT     )
KAUFMAN, FRDERICK LEATHERS,       )
MICHAEL GOSMAN,                   )
        Defendants.               )
```

4

<u>MEMORANDUM AND ORDER</u>

WOLF, D.J.                                    August 15, 2000

Thirteen plaintiffs, who acquired common stock in CareMatrix Corp. ("CareMatrix") between October 29, 1998 and October 7, 1999, brought separate actions in late 1999 against defendant CareMatrix and five individually-named officers and directors alleging violations of sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j and 78t, and Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5. The plaintiffs assert that the defendants, which develop, manage and operate assisted living facilities, artificially inflated the company's earnings through improper accounting practices that included recording revenues before they were realized. Moreover, while manipulating corporate financial records, the individually-named officers allegedly knew the revenues were unlikely to be collected, but nevertheless issued false and misleading statements touting the company's financial health and future. It is alleged that when CareMatrix revealed the true status of its finances on October 7, 1999, the price of its stock dropped more than forty percent.

By January 2000, the plaintiffs had formed four main groups, all requesting that their actions be consolidated pursuant to Federal Rule of Civil Procedure 42, and all requesting court

5

appointment as lead plaintiff pursuant to section 21D(a)(3)(B) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(3)(B). The defendants did not challenge consolidation, but opposed the motions for appointment as lead plaintiff on grounds that none of the groups had sufficient interest for the designation, and none of the members of each group were sufficiently related to be considered a united group.

By April 2000, the plaintiffs groups had resolved their differences, chosen four individuals as lead plaintiffs, and proposed two law firms as co-lead counsel. In a joint motion, they now seek court approval of their designations.

For the reasons discussed below, the plaintiffs' motions to consolidate are being allowed, and the joint motion to appoint lead plaintiffs and lead co-counsel is being allowed in part and denied in part.

I.    FACTS

The allegations and claims in the plaintiffs' individual Complaints are the same except for the description of each plaintiff. The plaintiffs and their respective cases are: Howard Gunty Profit Sharing Plan, C.A. No. 99-12318-MLW; James Cosentino, C.A. No. 99-12322-MLW; Michael E. Glass, C.A. No. 99-12323-MLW; John P. Delmonico, C.A. No. 99-12324-MLW; Patty Lisa, C.A. No. 99-

6

12325-MLW; Miriam Nathan, C.A. No. 99-12341-MLW; Leroy Schober, C.A. No. 12364-MLW;   Bradley Dunham, C.A. 99-12380-MLW; Brock Haynes, C.A. 99-12418-MLW; Edward J. Oest, C.A. No. 99-12456-MLW; Gary A. Ryan and Michael B. London, C.A. No. 99-12477-MLW; Irving Ravens, C.A. No. 12563-MLW; and Donald Camp, Marie Camp and Arthur Boxer, C.A. No. 99-12641-MLW.[1]   The plaintiffs  acquired common stock in CareMatrix between October 29, 1998 and October 7, 1999. Compl. ¶ 1.

The defendants are: CareMatrix, a Delaware corporation with a principle place of business in Needham, Mass. that develops, manages  and  operates  assisted-living  facilities  and  other healthcare facilities; Abraham D. Gosman, CareMatrix's chairman and chief executive officer ("CEO"); Robert Kaufman, CareMatrix's chief executive officer; Andrew D. Gosman, CareMatrix's vice chairman; Frederick R. Leathers, CareMatrix's chief financial officer; and Michael A. Gosman, a member of CareMatrix's board of directors. Id. at ¶¶ 6-8.

The  Complaints  allege  the  following.   Because  of  their positions with CareMatrix, the individual defendants had access to

---

[1]   Plaintiff Jonathan Polansky also has filed an identical Complaint.  C.A. No. 99-12286-MLW.  The court on May 8, 2000 allowed the joint motion of Polansky and the defendants to refer his individual case to a mediator in the Northern District of California.   Should that mediation fail or be abandoned, Polansky's case will be treated as the others referenced in this Order.

non-public corporate information including financial and business prospects. Id. at ¶ 10. The defendants had a duty to disseminate accurate information and to correct any prior inaccuracies. Id. at ¶ 11. CareMatrix's operations were intertwined with those of Chancellor Entities ("Chancellor"), which was a group of real estate companies owned or controlled by Abraham Gosman, CareMatrix's chairman and CEO. Id. at ¶ 20. From October 1998 through October 1999, Chancellor and CareMatrix developed healthcare facilities. Id. at ¶ 21. CareMatrix accrued development fees from Chancellor for the management services it was to perform under the development contracts. Id.

CareMatrix's fraudulent scheme included recognizing development fees as revenue upon execution of development contracts "when, in fact, the likelihood that the project would be completed and CareMatrix would ever actually be paid the development fee was remote at best, if at all." Id. at ¶ 22. The defendants, knowing of the diminished market for healthcare facilities, "were aware, or at the very least recklessly disregarded, that the millions of dollars of development fees which CareMatrtix had recognized as income would, in all likelihood[,] never be collected." Id.

On October 29, 1998, CareMatrix reported quarterly net income of more than double the same figure from a year earlier, and defendant Robert Kaufman commented on the "purportedly burgeoning

development pipeline." Id. at ¶ 24. On that basis, analysts recommended CareMatrix's stock, and the price reached $31 per share in active trading. Id. at ¶¶ 25, 29. In its third quarter 10-Q report to the Securities and Exchange Commission, CareMatrix represented, among other things, that development fees were recognized on a percentage basis as the various projects were completed. Id. at ¶ 28.

However, CareMatrix's reports and statements materially overstated earnings and assets; reported revenues in violation of generally accepted accounting principles because their collection could not reasonably be assured; recognized doubtful receivables in its revenues statements; and presumed the future completion of projects that the defendants knew would never be finished due to lack of financing. Id. at ¶ 30. On December 1, 1998, corporate officers also issued statements regarding CareMatrix's development and financial prospects that were similarly materially misleading. Id. at ¶ 32.

On February 4, 1999, on the basis of studies of the assisted-living facilities industry, analysts suspended their recommendation of CareMatrix stock, causing a twenty-two percent decline in the share price. Id. at ¶ 33. Two weeks later, in response to the analysts' findings, CareMatrix announced the growth and health of the company when defendant Abraham Gosman spoke of doubling

9

revenues and tripling income and that the stock was undervalued. Id. at ¶¶ 34, 36.

However, the public statements touting anticipated prosperity were misleading because it was untrue that the "development pipeline" was strong; in fact, CareMatrix was having difficulty financing its reported growth. Id. at ¶ 37. Nevertheless, CareMatrix officers continued to make rosy statements about the company and its business prospects through September 1999. Id. at ¶¶ 38-42, 44, 48-51, 55-57.

In September 1999, analysts placed a hold on their recommendation of CareMatrix stock based on suspicions about the funding of corporate projects. Id. at ¶¶ 59-60. On October 7, 1999, CareMatrix conceded its financing difficulties and problems completing contracts. Id. at ¶ 61. The stock dropped forty-one percent the next day to close at $3.56 per share. Id. at ¶ 62.

The plaintiffs allege that the stock value, which had reached $31 per share in the year before it plummeted, was fraudulently inflated by the defendants' misrepresentations and improper accounting practices. Id. at ¶¶ 63-64. The defendants' acted with scienter when they issued their optimistic, public statements because they intended to artificially inflate the stock price by deceiving the plaintiffs and the investing public. Id. at ¶ 66.

The Complaints claim violations of section 10(b) of the

10

Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder (Count I), and violations of section 20(a) of the 1934 Act (Count II). The plaintiffs seek certification of a class, damages, and interest.

## II. DISCUSSION

### A. Motion to Consolidate

The defendants do not oppose consolidation of the Complaints into one action. Federal Rule of Civil Procedure 42(a) allows consolidation of actions "involving a common question of law or fact" in order to "avoid unnecessary costs or delay." The court has "broad discretion to decide whether consolidation would be desirable and the decision inevitably is contextual." Wright & Miller, Federal Practice and Procedure: Civil 2d § 2383 (2d ed. 1995 & Supp. 2000).

The Complaints in this action involve common questions of law or fact. Indeed, with the exception of the description of the plaintiffs, the allegations and claims in the thirteen Complaints are identical. The parties do not dispute this. Therefore, the motion to consolidate is being allowed and lead plaintiffs, as defined below, shall file an amended complaint effecting this consolidation under the caption In re CareMatrix Corp. Securities Litigation, C.A. No. 99-12318-MLW.

11

Having decided the motion to consolidate, the court turns to the appointment of lead plaintiffs.  See 15 U.S.C. § 78u-4(a)(3)(B)(ii);  Securities Exchange Act of 1934 section 21D(a)(3)(B)(ii) (requiring decision on motion to consolidate before ruling on appointment of lead plaintiff).

B.    Joint Motion to Appoint Lead Plaintiffs and Lead Co-Counsel

In January 2000, four plaintiffs groups were vying for designation as lead plaintiffs:  (1) CareMatrix Plaintiffs Group, which included forty-six individuals; (2) Louisiana State Employees Retirement Systems; (3) the Proposed CareMatrix Lead Plaintiffs Group, which included 328 individuals;  and (4) a group led by plaintiff Michael Glass, which included twenty-one individuals.[2] By April 2000, the four groups had resolved their differences and selected four individuals to be lead plaintiffs and two law firms to represent them as lead co-counsel.  Joint Modification of Mots. of Plaintiffs for Appointment of Lead Plaintiff and Lead Counsel ¶¶ 1-2, 4-5.  The four individuals named as lead plaintiffs in

---

[2]  The defendants objected to all four groups on grounds that the size and incohesiveness of each would complicate the case unnecessarily.  However, only other plaintiffs have standing to challenge petitions for lead plaintiff status.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(stating that presumption of most adequate plaintiff can be rebutted by a member of the purported plaintiff class only); Greebel v. FTP Software, Inc., 939 F. Supp. 57, 60 (D. Mass. 1996) (finding defendant lacked standing to challenge lead plaintiff designation).

April 2000 had combined losses of $1.5 million, giving them the "largest financial interest in the relief sought." Id. at ¶ 6. The four individuals included two from the CareMatrix Plaintiffs Group and two from the Proposed CareMatrix Lead Plaintiffs Group, and the two co-counsels agreed upon by plaintiffs and now proposed to the court had been the lawyers for those two groups.

The Private Securities Litigation Reform Act of 1995 ("PSLRA") provides for court appointment of a lead plaintiff who is "the most capable of adequately representing the interests of the class members," also called the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(i). The lead plaintiff need not be a named plaintiff, but rather need only be a member of the purported class of plaintiffs. Laborers Local 1298 Pension Fund v. Campbell Soup Co., 2000 WL 486956 * 1 (D. N.J. 2000). The court is to presume that the most adequate plaintiff "is the person or group of persons" who filed the complaint or a motion in response to a notice of the pendency of the action, has a large financial interest in the outcome of the litigation, and otherwise satisfies the requirements of Federal Rule of Civil Procedure 23, although the scrutiny applied to meeting the Rule 23 requirements is "less intensive than undertaken on a motion to certify the class."[3]   15

---

[3] Federal Rule of Civil Procedure 23 requires, among other things, that: (1) the class be so numerous that joinder of all members is impracticable, (2) there are common questions of law

U.S.C. § 78u-4(a)(3)(B)(ii)(I)(aa-cc); <u>Campbell Soup</u>, 2000 WL
486956 at *2.

Courts have rejected proposals for lead plaintiffs where the
proposed group is a large and unwieldy number of individuals whose
commonality rests only in their status of stock purchasers. <u>In re
Network Assoc., Inc. Sec. Litig.</u>, 76 F.Supp.2d 1017, 1022-23 (N.D.
Cal. 1999) (citing <u>In re Advanced Tissue Sciences Sec. Litig.</u>, 184
F.R.D. 346, 352 (S.D. Cal. 1998)). This is because the "whole
point of the [PSLRA provisions] was to install a lead plaintiff
with substantive decision making ability and authority," instead of
permitting attorneys to direct the litigation process. <u>Id.</u> at
1023-24 (citing <u>In re Donnkenny Inc. Sec. Litig.</u>, 171 F.R.D. 156,
157-58 (S.D.N.Y. 1997)). Large, otherwise unrelated groups tend to
lack a group decision making apparatus, and instead delegate the
decision making role to attorneys. <u>Id.</u> <u>See also</u> <u>Sakhrani v.
Brightpoint, Inc.</u>, 78 F.Supp.2d 845, 850 (S.D. Ind. 1999)
("provisions of the [PSLRA] were designed to avoid situations in
which a named class representative . . . acts primarily as a tool
of the lawyers who may well have recruited him.").

The statute permits a group of persons to serve as lead

_____

or fact, (3) the claims and defenses of the representative
parties are typical of the claims and defenses of all members of
the class, and (4) the representative plaintiffs will fairly and
adequately protect the interests of the class.

plaintiff, but the legislative history contemplates a single entity, not an amalgam of unrelated investors. <u>Network Assoc.</u>, 76 F.Supp.2d at 1024-25. In addition to the practical aspects of coordinating with counsel and making decisions, limiting the designation of lead plaintiff to one or a few plaintiffs prevents dilution of the fiduciary duty the lead plaintiff has to the proposed class of plaintiffs it is representing, which includes a duty to pursue in good faith the largest available recovery. <u>Id.</u> at 1032.

Consequently, groups have been appointed lead plaintiff where they have the ability to control the litigation and the lawyers and adequately represent the proposed class. <u>Id.</u> at 1025 (citing <u>In re Baan Co. Sec. Litig.</u>, 186 F.R.D. 214, 218-35 (D. D.C. 1999)). The District Court for the District of Massachusetts has in the past year at least twice named a group of lead plaintiffs and more than one law firm to serve them. <u>See, e.g.</u>, <u>Levine v. Lycos, Inc. et al.</u>, C.A. No. 99-10394-EFH (appointing ten lead plaintiffs and two law firms as lead counsel); <u>Fitzer v. Security Dynamics Tech. Inc., et al.</u>, C.A. No. 98-12496-WGY (appointing five lead plaintiffs and one lead counsel with liaison counsel).

In short, while the lead plaintiff has been and may be more than one individual or one entity, it cannot be "a mere assemblage of unrelated persons who share nothing in common other than the

15

twin fortuities that (1) they suffered losses and (2) they entered
into retainer agreements with the same attorney or attorneys." In
re Telxon Corp. Sec. Litig., 67 F.Supp.2d 803, 813 (N.D. Ohio
1999). Accord, Aronson v. McKesson HBOC, Inc., 79 F.Supp.2d 1146,
1154 (N.D. Cal. 1999). It is not necessary that proposed lead
plaintiffs have a pre-litigation relationship, but rather that they
be able to operate in concert and manage the litigation and the
lawyers, which is accomplished most successfully by a single
plaintiff or small group of plaintiffs. In re Baan Co. Securities
Litig., 186 F.R.D. 214, 216 (D. D.C. 1999). See also Tumolo v.
Cymer, Inc., 1999 WL 1567741 *2-3 (S.D. Cal. 1999) (finding small
group more effectively manages litigation and the attorneys than
large, diffuse group). The District Court for the Northern
District of California has suggested that the members of the
proposed lead plaintiffs group explain its members' association,
how they came to form a group, and how they would work together.
Network Assoc., 76 F.Supp.2d at 1026. Absent sufficient
explanation, their motion to be lead plaintiff should be denied.
Id.

Here, it appears that the plaintiffs or their attorneys, in an
effort to expedite the litigation, compromised their differences in
April 2000 and chose representatives from the two largest remaining
groups vying for lead plaintiff status and their counsel to be

16

designated lead plaintiffs and lead co-counsel.  While they were able to collaborate on that decision, nothing suggests that they are a cohesive enough unit to adequately represent other plaintiffs.  See Network Assoc., 76 F.Supp.2d at 1023-24;  Baan, 186 F.R.D. at 216;  Tumolo, 1999 WL 1567741 at *2-3;  In re Donnkenny Inc. Securities Litig., 171 F.R.D. 156, 157-58 (S.D.N.Y. 1997).

However, two of the individuals proposed in the joint motion for the four-person lead plaintiffs group do apparently have some connection and ability to serve in a lead capacity for all similarly situated plaintiffs.  See id.  David Bailey ("Bailey"), who lost nearly $814,000, and John B. Crook ("Crook"), who lost nearly $224,000, have discussed, among other things, the role of lead plaintiff, how they would handle their responsibilities if appointed, and how they would communicate and collaborate during the litigation.  Aff. of David T. Bailey ¶¶ 4-5; Aff. of John Crook ¶¶ 4-6.  Although Bailey and Crook did not have a relationship prior to the litigation, such relationship is not required and does not preclude their effectiveness as lead plaintiffs.  See Baan, 186 F.R.D. at 216.

Both Bailey and Crook have significant financial interests at stake in this litigation and satisfy the requirements of Federal Rule of Civil Procedure 23 in that they are typical of other

17

proposed class members, their claims and defenses will be the same as other class members, and that they will fairly and adequately represent the interests of the class.   See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).   By already having discussed with each other and their counsel how they would manage the litigation, Bailey and Crook have shown how they will minimize the risk that this case will be lawyer-driven, and instead will proceed toward an outcome with the plaintiffs' interest at the forefront.   See Network Assoc., 76 F.Supp.2d at 1024; Donnkenny, 171 F.R.D. at 157-58. Accordingly, Bailey and Crook are being appointed lead plaintiffs without prejudice to the defendants' right to contest the propriety of class certification.

In seeking lead plaintiff status, Bailey and Crook initially were represented by the Boston law firm of Berman, DeValerio & Pease LLP, which, like the other proposed co-lead law firm, Milberg, Weiss, Bershad, Hynes & Lerach LLP, has extensive experience litigating securities actions.   See Aff. of Att'y Jennifer Finger, Ex. F (Berman, DeValerio & Pease Firm Resume); Aff. of Att'y Steven G. Shulman, Ex. E (Milberg, Weiss, Bershad, Hynes & Lerach Firm Resume).   Neither firm ordinarily requires co-counsel to litigate such actions, and providing co-counsel in this instance is likely to complicate needlessly the mechanics of the litigation, including communication between the lead plaintiffs and

18

between attorneys for the plaintiffs and for the defendants. Although lawyer committees have been appointed in the past, such collaboration does not seem necessary in this case.  See Nager v. Websecure, Inc., 1997 WL 773717 *1 (D. Mass. 1997) (questioning the necessity of lawyers' committee, but approving multiple law firms to minimize "disputes about the direction of the litigation"). Accordingly, because the firm already has represented the lead plaintiffs and is otherwise qualified, Berman, DeValerio & Pease is being appointed sole lead counsel.

## III. ORDER

For the reasons stated above, it is hereby ORDERED that:

1.   Plaintiffs' motions to consolidate are ALLOWED, and the related actions shall be captioned In re CareMatrix Corp. Securities Litigation, C.A. No. 99-12318-MLW.

2.   Any action now pending or hereafter filed in the District of Massachusetts on behalf of purchasers of CareMatrix common stock which arises out of the facts alleged in the consolidated action shall be consolidated for all purposes as soon as they are brought to the court's attention.   Counsel shall call to the clerk's attention any case that may properly be consolidated as part of this action.

3.   Plaintiffs' joint motion for appointment of lead

plaintiffs and lead counsel is ALLOWED to the extent that plaintiffs David Bailey and John B. Crook are designated the lead plaintiffs pursuant to section 21D(a)(3)(B) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(3)(B), and the law firm of Berman, DeValerio & Pease LLP is designated lead counsel pursuant to section 21D(a)(3)(B)(v) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(3)(B)(v). The joint motion is DENIED in all other respects.

4.    Lead counsel shall coordinate all discovery, briefing and argument, settlement negotiations, and receipt and dissemination of court orders, and shall serve as liaison between defense counsel and plaintiffs' individual attorneys. Defendants shall effect service on all plaintiffs by serving papers on lead counsel.

5.    Lead plaintiffs shall, within fourteen days of receipt of this Order, file a consolidated complaint consistent with this Memorandum and Order.

UNITED STATES DISTRICT COURT