# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE VASO ACTIVE PHARMACEUTICALS SECURITIES LITIGATION | :<br>:<br>: Consolidated Case No.: 04-10708<br>: (RCL)<br>:<br>: |

**MERTURI GROUP'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR APPOINTMENT AS CO-LEAD PLAINTIFF, AND APPROVAL OF ITS SELECTION OF CO-LEAD COUNSEL AND LIAISON COUNSEL**

## **PRELMINARY STATEMENT**

The Merturi Group hereby respectfully submits this memoranda of law in reply to the Choi Group and David B. Brody's opposition memorandum of law, and in further support of the appointment of Luz Merturi, a member of the Merturi Group, as Co-Lead Plaintiff with movant Richard Cheng of the Choi Group, and approval of Mr. Merturi's selection of Milberg Weiss Bershad & Schulman LLP ("Milberg Weiss") as Co-Lead Counsel with the lead counsel proposed by the Choi Group, and approving Moulton & Gans, P.C. as Liaison Counsel.[1] Whereas the Merturi Group previously proposed that this Court appoint a team of three Co-Lead Plaintiffs consisting of Luz Merturi, Richard Cheng, and Ki Chang Chae from the Chae Group, and approve their respective choice of lead counsel, the Chae Group now concedes it is not the presumptive most adequate plaintiff (peculiarly, and paradoxically, stating it no longer presses its motion unless, for any reason, the Choi Group is unable to be selected), and therefore, the Chae Group's motion should no longer be considered.[2] Accordingly, for the same reasons set forth in its opposition brief, the Merturi Group proposes the appointment of Merturi and Cheng as Co-Lead Plaintiffs and approval of Milberg Weiss and Cheng's choice of counsel as Co-Lead

---

[1] Movant Eduard Slinin withdrew his motion on June 22, 2004. The Chae Group conceded in its brief dated June 17, 2004, *see infra* n. 2, that they are not the presumptive most adequate plaintiff and did not file any substantive response. The remaining movants did not file an opposition brief. It appears, under these circumstances, the remaining movants, recognizing they do not meet the PSLRA requirements for appointment as lead plaintiff, have abandoned their motion, and therefore, should no longer be considered as lead plaintiff.

[2] *See* Memorandum Of Law In Further Support Of The Motion Of The Chae Group To Be Appointed Lead Plaintiff And For Approval Of Lead Plaintiff's Selection of Lead Counsel, dated June 17, 2004, at p. 2.

Counsel. [3]

## ARGUMENT

## POINT I

### THE COURT SHOULD APPOINT AS CO-LEAD PLAINTIFFS
### LUZ MERTURI AND RICHARD CHENG

The lead plaintiff movants in this action share a common interest in appointing the
representative who will best serve the interests of the Class and who will vigorously prosecute
the action to maximize all recovery for the Class. *See In re Oxford Health Plans, Inc. Sec. Litig.*,
182 F.R.D. 42, 45 (S.D.N.Y. 1998); *In re: The First Union Corp. Sec. Litig.*, 157 F. Supp. 2d
638, 643 (W.D. N.C. 2000). In cases such as the instant action, where each of the proposed lead
plaintiff groups has pointed to flaws in the others and, as a result, the presumption of most
adequate plaintiff is substantially in dispute, there is substantial precedent supporting the
proposition that courts may exercise their discretion under Fed. R. Civ. P. Rule 23 to choose
among movants to form a lead plaintiff group that will provide the best representation for the
Class.

In this case, the Choi Group, Merturi Group, and David Brody, as co-trustee of the Brody
Family Revocable Trust ("Brody") each are subject to claimed infirmities that may preclude their
appointment as sole lead plaintiff. Edwin Choi of the Choi Group appears to be an individual
day trader, unaffiliated with any firm, and, thus, is subject to unique defenses which could render
him atypical and consume his energies. Merturi Opp. at p. 5-6.[4] Moreover, Joe Huback, with

---

[3] *See* Merturi Group's Memorandum Of Law In Opposition To Competing Motions, And In
Further Support Of Its Motion For Consolidation, Appointment As Co-Lead Plaintiff, And
Approval Of Its Selection Of Co-Lead Counsel And Liaison Counsel ("Merturi Opp."), dated
June 21, 2004, at p. 2-5, 13-15.

[4] Counsel for the Merturi Group recognizes that day traders are not *per se* atypical, and that in
other cases, have been appointed lead plaintiff. *See, e.g., In re Royal Ahold N.V. Sec. and ERISA
Litig.*, 219 F.R.D. 343, 354-55 (D. Md. 2003) (appointing Generic Trading, one of the largest

whom Mr. Choi joined in the same group, failed to accurately document his transactions; rather, he listed two transactions on a ***Saturday***, which were obviously impossible. Merturi Opp. at p. 6-8. David Brody, who reports only $46,736 in losses, has a substantially smaller financial stake in this action than Richard Cheng or Luz Merturi and, therefore, simply ineligible. Brody also suffers from the same unique defense as Edwin Choi, *i.e.*, he is obviously an individual day trader in Vaso stock, erratically engaging in 26 transactions over a period of 14 days, and as many as 9 transactions in a single day, thereby rendering him susceptible to attack as atypical.[5]

This Court can avoid exposing the Class to these potential pitfalls by appointing a team of Co-Lead Plaintiffs, who both have a substantial financial interest in this litigation, have no apparent shortcomings, *and* otherwise satisfy the PSLRA's adequacy and typicality requirements. *See In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. at 42, 45. Richard

---

institutional trading firms in the United States, as lead plaintiff), *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. LaBranche & Co., Inc.*, 2004 U.S. Dist. LEXIS 9571, at *65 (S.D.N.Y. May 27, 2004) (appointing Empire Programs, a massive institutional trading firm which employed a computer program to trade billions of shares of stock during the class period), and *In re CMS Energy Sec. Litig.*, No. 02-CV-72004-DT (E.D. Mich. Nov. 14, 2004), slip op. at 7 (attached as Exhibit A hereto) (appointing broker dealer who purchased 311,500 shares of stock during the class period). However, the day traders in the above cases are sophisticated institutions whose business is based on a trading model designed to make trades in response to movements in the market on a frequent basis, and therefore, are distinguishable from individual investors who, arguably, do not scrutinize a company's financial statements or react to its fundamental value as reflected in daily news reports and releases in connection with their investment decisions.

[5] Remarkably, in his opposition brief, Brody attacks other movants for the same reasons of which is he is guilty. *See* Memorandum Of Law In Opposition To Competing Motions For Appointment As Lead Plaintiff, Lead Counsel And Liaison Counsel And In Further Support Of The Motion Of David B. Brody, As Co-Trustee Of The Brody Family Revocable Trust, To Appoint Lead Plaintiff, Lead Counsel And Liaison Counsel, dated June 21, 2004, at p. 6-7.

Cheng and Luz Merturi, who reported losses of $130,573[6] and $98,737, respectively, would constitute such a team.[7]

Courts have endorsed such a Co-Lead Plaintiff and Co-Lead Counsel structure as proposed herein.  For example, in *In re Oxford Health Plans*, the court appointed as co-lead plaintiffs three members from three separate movant groups, and approved their respective selection of counsel as co-lead counsel, stating that:

> The [Securities and Exchange] Commission acknowledges that the plain language of the PSLRA allows for the appointment of more than one plaintiff, and recognizes that courts applying the PSLRA have appointed groups of plaintiffs who have aggregated their losses to serve as lead plaintiffs. See SEC Memorandum p. 3, 8. The Commission argues, however, that there is no precedent in the case law for "the appointment of two competing groups of plaintiffs with separate counsel as co-lead plaintiffs." Id. The weight to be attached to this argument is lessened by the unexplained failure of the Commission to appear and attend the hearing, and by the fact that the Court has received no response to the allegations made at the hearing.
>
> As noted above, ***the PSLRA expressly contemplates the appointment of more than one plaintiff, and this Court finds no basis in the statute for the distinction drawn by the SEC between competing and non-competing groups of plaintiffs. It should also be noted that the lead plaintiff movants are not in fact competing with each other. Each is seeking the same result-- the greatest recovery for the class consistent with the merits of the claims raised, the defenses asserted and the burdens and risks of litigation.*** The rebuttable presumption created by the PSLRA which favors the plaintiff with the largest financial interest was not intended to obviate the principle of providing the class with the most adequate representation and in general the Act must be viewed against established principles regarding Rule 23 class actions. ***Allowing for diverse representation, including in this case a state pension fund, significant individual investors and a large institutional investor, ensures that the interests of all class members will be adequately represented in the prosecution of the action and in the negotiation and approval of a fair settlement, and that the settlement process will not be distorted by the differing aims of differently situated claimants.***

---

[6] Counsel for the Merturi Group inadvertently misreported in its opposition brief that Richard Ching sustained losses of $141,116.

[7] Even if Luz Merturi calculated his financial interest with the method suggested by Brody in his opposition brief, Mr. Merturi's losses would still be substantially larger than the losses reported by Brody.

The SEC also states that even the appointment of only two lead plaintiffs limits the ability of those plaintiffs "to control the litigation, and in particular to control the conduct of lawyers." SEC Memorandum at 16. It is unclear to this Court why the appointment of more than one lead plaintiff will limit the ability of each plaintiff to control its own chosen counsel. ***In any case, in actuality a greater number of plaintiffs allows them, as a group, to wield more control over counsel.*** See *D'Hondt v. Digi Int'l*, 1997 U.S. Dist. LEXIS 17700, 1997 WL 405668 *3 ("the assertion can legitimately be made that the larger the number of proposed Lead Plaintiffs, the greater the dilution of the control that those Plaintiffs can maintain over the conduct of the putative class action, [while] an equally cogent assertion can be broached that, when more greatly numbered, the Lead Plaintiffs can more effectively withstand any proposed effort by the class counsel to seize control of the class claims.").

Because the PSLRA does not recommend or delimit a specific number of lead plaintiffs, the lead plaintiff decision must be made on a case-by-case basis, taking account of the unique circumstances of each case. ***In light of the magnitude of this case, the Court concludes that the use of three lead plaintiffs is the most reasonable means. Such a structure allows for broad representation and the sharing of resources and experience to ensure that the litigation will proceed expeditiously against Oxford and the experienced counsel it has retained to represent it, and will assure the Court that any settlement when proposed will be provident.*** [Emphasis added.]

182 F.R.D. at 48-49. *See also In re Cable & Wireless,* 217 F.R.D. at 379 ("where neither movant, standing alone, is a particularly ideal plaintiff", the court appointed two previously unrelated and separate movants as co-lead plaintiffs); *Laborers Local 1298 Pension Fund v. Campbell Soup Co.*, 2000 WL 486956, at *3 (D.N.J. 2000) (appointing previously unrelated movants who demonstrated the largest and second largest financial interest as co-lead plaintiffs because it "allows for broad representation and the sharing of resources and experience") (quoting *In re Oxford Health Plans, Inc.*, 182 F.R.D. at 42, 49); *In re: The First Union Corp.*, 157 F. Supp. 2d at 643 (appointing two movant groups as co-lead plaintiffs). Further, as noted by the Choi Group in its opposition brief, this Court has in prior cases appointed a small group of investors such as Choi and Merturi, as lead plaintiff. *See* Memorandum Of Law In Further Support of Motion Of The Choi Group To Be Appointed Lead Plaintiffs And For Approval Of Lead Plaintiff's Selection of Lead Counsel And Liaison Counsel, And In Opposition To

5

Competing Motions, dated June 21, 2004, at p. 5-6 (citing *In re Stone & Webster Sec. Litig.*, No. 00-10874-RCL (D. Mass. Aug. 8, 2000) (Lindsay, J.); *Galileo Corp. v. Riedel*, No. 98-12129 (D. Mass. Apr. 21, 1999) (Lindsay, J.)).  Accordingly, Brody's assertions that this Court should not appoint a group of unrelated individuals as lead plaintiff is unsubstantiated.

## POINT II

### THE COURT SHOULD APPOINT AS CO-LEAD COUNSEL MILBERG WEISS AND LEAD COUNSEL PROPOSED BY  THE CHOI GROUP

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the lead plaintiff shall, subject to Court approval, select and retain counsel to represent the class they seek to represent.  In addition, the Court should weigh the complexity and magnitude of the action against proposed lead counsel's qualifications, experience, and available resources, in approving lead plaintiff's selection of counsel.  Rule 23(g) of the Federal Rules of Civil Procedure provides guidance on whether movants' selection of counsel best suits the needs of the Class. Fed. R. Civ. P. 23(g).  Although clearly applicable at the class certification stage, Rule 23(g) has been applied at the lead plaintiff stage as well.  *See In re Cree, Inc. Sec. Litig.*, 219 F.R.D. 369, 373 (M.D. N.C. 2003).  In this action, Milberg Weiss has substantial experience in the prosecution of shareholder and securities class actions, and has the resources necessary to efficiently conduct this litigation. *See* Merturi Opp. at p. 13-15.  As demonstrated above, Milberg Weiss is strongly motivated to ensure the efficient and rigorous prosecution of this action.  Accordingly, the Court should approve Luz Merturi's selection of Milberg Weiss as Co-Lead Counsel with Richard Cheng's choice of counsel.[8]

---

[8] Emblematic of Milberg Weiss' preeminent credentials, as counsel for the New York State Retirement Fund, Milberg Weiss recently achieved settlements on the eve of trial in securities litigation pending in this District against Raytheon Company and its auditors.

## CONCLUSION

The Merturi Group respectfully requests that based on the foregoing reasons and reasons set forth in its previous filings with this Court, that the Court (i) appoint Luz Merturi and Richard Cheng as Co-Lead Plaintiffs in the action; (ii) approve the Merturi Group's selection of Milberg Weiss as Co-Lead Counsel, along with the proposed lead counsel selected by Richard Cheng, and approve the Merturi Group's selection of Moulton & Gans, P.C. to serve as Liaison Counsel as set forth herein; and (iii) grant such other such relief as the court may deem just and proper.

DATED: July 9, 2004                                    Respectfully submitted,

**MOULTON & GANS, P.C.**

By:___/s/ Nancy Freeman Gans
Nancy Freeman Gans
33 Broad Street, Suite 1100
Boston, MA  02109
Telephone:  (617) 369-7979

*Proposed Liaison Counsel*

**MILBERG WEISS BERSHAD & SCHULMAN LLP**
Steven G. Schulman
Peter E. Seidman
Sharon M. Lee
One Pennsylvania Plaza
New York, NY 10119
Telephone: (212) 594-5300

*Proposed Co-Lead Counsel*

**BRODSKY & SMITH, LLC**
Evan Smith
Two Bala Plaza, Suite 602
Bala Cynwyd, PA  19004
Tel:  (610) 667-6200

**LAW OFFICES OF CHARLES J. PIVEN, P.A.**
Charles J. Piven
The World Trade Center-Baltimore
401 East Pratt Street, Suite 2525
Baltimore, Maryland  21202
Tel.:  (410) 986-0036

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I, Sharon M. Lee, hereby certify that a true copy of the above document was served upon the attorney of record for each party by mailing a copy of same, postage prepaid, on July 9, 2004.

/s/ Sharon M. Lee
Sharon M. Lee