# EXHIBIT A



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FILED
NOV 14 2002
CLERK'S OFFICE
U.S. DISTRICT COURT
EASTERN DIST. MICHIGAN

IN RE:

Civil No. 02-CV-72004-DT

HON. GEORGE CARAM STEEH

CMS ENERGY SECURITIES
LITIGATION
_____/

### OPINION AND ORDER GRANTING ANDOVER BROKERAGE AND HERBERT STEIGER'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFFS AND APPROVING LEAD PLAINTIFFS' SELECTION OF LEAD AND LIAISON COUNSEL

INTRODUCTION

This court has consolidated numerous proposed class actions filed against CMS Energy Corporation, et al. ("CMS"), most of which were reassigned to this court as companion cases to first-filed Adrienne Green v. CMS Energy Corporation, #02-72004, filed May 17, 2002. Remaining for determination by the court are motions for appointment of a lead plaintiff and approval of the lead plaintiff's lead and liaison counsel. For the reasons stated below, the court will grant the motion of Andover Brokerage/Herbert Steiger for appointment as joint lead plaintiffs and approve their selections of lead and liaison counsel. The similar motion made by the Louisiana School Employees' Retirement System will be denied; those filed by the Gordon Group and Arthur Green will be dismissed.

BACKGROUND

Each of the complaints in this litigation was filed on behalf of a purchaser of CMS securities during the period spanning August 3, 2000 through May 10, 2002 (the "class

36

period"), and alleges injuries to the plaintiffs resulting from defendants' alleged material misrepresentations/omissions concerning CMS. Plaintiffs' claims are brought under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and 17 C.F.R. § 240.10b-5, promulgated under the Exchange Act by the Securities and Exchange Commission ("SEC"). The various complaints have identified a number of documents, such as CMS quarterly and annual press releases and financial filings with the SEC, disseminated during the class period, which are alleged to have been false and misleading in their representation of CMS revenues and earnings. These alleged misrepresentations were brought to light when, on May 10, 2002, CMS announced that the SEC was undertaking an inquiry into its "round-trip" trading practices. Plaintiffs assert that CMS reported improperly recognized revenues in the amount of approximately $4.4 billion, attributable to these "round-trip" transactions, which artificially inflated CMS revenues and earnings.

Five motions were made to the court for consolidation of this court's securities cases pending against CMS and for appointment of lead plaintiff and approval of lead and liaison counsel. The court considered the parties' oral presentations made September 10, 2002, and consolidated the cases in an order issued September 24, 2002. Remaining for the court's determination, set forth below, is the appointment of lead plaintiff and that plaintiff's, or those plaintiffs', lead and liaison counsel.

## DISCUSSION

Lead Plaintiff

As required by § 21D(a)(3)(A)(i) of the Exchange Act, counsel for plaintiff in the Adrienne Green v. CMS case published a notice to potential class members to advise the public of that action's pendency. That notice was published in the "Business Wire,"

2

a widely circulated national business wire service, the day the Green complaint was filed, May 17, 2002. This gave all members of the proposed class 60 days, or until July 16, 2002, to file their applications to serve as lead plaintiff in this action. 15 U.S.C. §§ 78u-4(a)(3)(A) and (B). Federal securities laws specifically authorize any potential class member, not only named plaintiffs, to make such a motion for appointment as lead plaintiff. 15 U.S.C. §§ 77z-1(a)(3)(B), 78u-4(a)(3)(B).

Initially, five potential class members sought appointment as lead plaintiff. They alleged the following losses in connection with CMS securities: Andover Brokerage, L.L.C. asserted losses of $2,642,640.85 resulting from its purchase of 311,500 shares of CMS Energy common stock; Herbert Steiger asserted losses of $291,820.90 in connection with purchases of thousands of CMS Energy shares during the class period; and the Louisiana School Employees' Retirement System (LSERS) asserted losses of $500,000 from purchases of CMS securities. The "Gordon Group," a group of individual investors, initially sought appointment as lead plaintiff but withdrew that request on the date of oral argument. Arthur Green, the fifth movant, did not pursue the appointment as lead plaintiff at oral argument. After the initial motions were filed, Andover Brokerage joined forces with Herbert Steiger and moved with Steiger for appointment as co-lead plaintiffs. LSERS also moved for appointment generally as lead plaintiff, stating its claims are typical of the claims of the class.

The Exchange Act, amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), created a procedure governing the appointment of lead plaintiffs in private actions brought pursuant to the Exchange Act which are "brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §§ 78u-4(a)(1), (a)(3)(B)(i). As noted above, the plaintiff in the initial action must publish a

notice to the class informing members of their right to file a motion for appointment as lead plaintiff, within 20 days of filing her complaint. 15 U.S.C. §§ 78u-4(a)(3)(A)(i). Any person or group of persons who is/are member(s) of the proposed class then has/have 60 days to apply to the court for appointment as lead plaintiff. 15 U.S.C. §§ 78u-4(a)(3)(A) and (B).

The court shall consider a motion made by a class member for appointment as lead plaintiff within 90 days after publication of the notice or as soon as practicable after the court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B). The PSLRA provides that in determining who the "most adequate" plaintiff is,

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that –
>
> (aa) has either filed the complaint or made a motion in response to a notice...
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii). The Federal Rules of Civil Procedure provide that a party may be a representative for a class only if four requirements are satisfied:

> 1) the class is so numerous that joinder of all members is impracticable;
>
> 2) there are questions of law or fact common to the class;
>
> 3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> 4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

4

In this matter, the Andover/Steiger movants assert that they should be appointed as co-lead plaintiffs because their losses were the largest of any movant: calculating losses in accordance with §§ 21D(e)(1) or 21D(e)(2), their alleged losses amount to in excess of $2.9 million. They assert that this amount is undisputed, and contend that their combination of an institutional investor with an individual investor is precisely the type of combination the PSLRA intended to empower.[1]

Andover further asserts that it satisfies the requirements of Fed. R. Civ. P. 23, because its claims are typical of class members and it would fairly and adequately protect the interests of the class. Andover asserts that its claims are typical of--if not identical to--the other class members' claims. Concerning the adequacy inquiry, Andover cites to a 1978 9th Circuit case, Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d 507, 512 (9th Cir. 1978), which set forth two factors historically considered by courts in assessing a proposed class representative's adequacy: 1) whether the class representative appears capable of prosecuting the action through competent counsel; and 2) whether there existed antagonism or disabling conflict between the interests of the class representatives and the interests of the members of the class. Pursuant to § 21D(a)(3)(B)(v) of the Exchange Act, courts have been directed to inquire as to the existence of conflicts between the interests of the proposed representatives and the members of the class, and allow lead plaintiff to retain lead counsel to represent the

---

[1] The court notes Andover's persuasive argument, made in its initial motion to be appointed as sole lead plaintiff, that the PSLRA reflected Congress' desire to "increase the likelihood that institutional investors will serve as lead plaintiffs" because institutional investors, "with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake." H.R. Conf. Rep. No. 104-369 at 34 (1995). Andover also quoted from legislative history that "increasing the role of institutional investors in class actions will ultimately benefit the class and assist the courts." S. Rep. No. 104-98 at 11.

class, "subject to the approval of the court." Andover asserts fulfillment of each requirement.

In a response brief, LSERS asserts that Andover should not be appointed lead plaintiff because its losses in CMS transactions did not involve trading on its own account. Andover has disputed this, asserting that Andover itself, through its traders, engaged in the subject trades. This was not further called into question by LSERS. LSERS has also pointed to citations relating to books and records violations from the National Association of Securities Dealers ("NASD"); Andover states these citations are typical in size and magnitude for a firm of Andover's size, and points out that it was more than one year ago that the SEC informed Andover that it was only "considering" recommending an enforcement action against Andover. Andover distinguishes itself from the proposed lead plaintiff in the case of <u>Newman v. Eagle Bldg. Tech.</u>, Case No. 02-80294 (S.D. Fla. July 31, 2002), cited by LSERS, where a proposed lead plaintiff group was found to be inadequate due to its conduct; in that case, the court considered a finding of fraud made by the SEC. Andover asserts that it is in good standing in the financial community.

LSERS also seeks appointment as lead plaintiff. LSERS represents itself as a "$1.5 billion public pension fund with losses of approximately $500,000 from purchases of CMS Energy Corp. securities during the period from August 3, 2000 to May 10, 2002." In arguing for placement as lead plaintiff, LSERS asserts that it is an institutional investor that has served as lead plaintiff in securities class actions in the recent past and has knowledge of a lead plaintiff's obligations and responsibilities. LSERS further asserts that its claims are typical of the claims of all investors who purchased CMS securities, and that it will fairly and adequately protect the class'

interests. LSERS contends that as it is an experienced, institutional investor, it will exercise meaningful supervision of the litigation, as Congress had in mind in 1995.

Next, LSERS asserts it is qualified under Fed. R. Civ. P. 23, as its interests are aligned with those of the class, and because it will fairly and adequately represent the class. LSERS further points to a fee arrangement it has already negotiated with its chosen counsel as evidence of its adequacy as a class representative. LSERS argued that such a fee arrangement was not presented by Andover/Steiger.[2]

The court has considered Andover/Steiger's and LSERS' arguments in this matter. The court is in agreement with Andover/Steiger that LSERS, through its allegations of NASD citations and *potential* SEC action, has not demonstrated a lack of integrity in the Andover/Steiger parties. As noted above, the court has considered *in camera*[3] the materials provided on behalf of proposed lead counsel for Andover/Steiger, Entwistle & Capucci and Milberg, Weiss et al., concerning attorneys' fees, and is not convinced by the assertions of LSERS that any inadequacy is represented by that choice of counsel. Furthermore, as was emphasized at oral argument in this matter, the court will necessarily review and approve a fee arrangement at the end of this litigation, pursuant to Fed. R. Civ. P. 23. Also, regarding the dispute over whether a trading methodology affects the typicality prong under Fed. R. Civ. P 23, the court is in agreement with Andover/Steiger that the length of time the shares are held does not affect the typicality of the claim—i.e. its *similarity* and ability to protect the claim of an

---

[2] Information concerning attorney fee arrangements proposed by the Andover/Steiger and LSERS movants was requested at the September 10, 2002 hearing in this matter and provided to the court for *in camera* review.

[3] These materials, as well as those concerning a fee agreement between LSERS and its proposed lead counsel, will be filed under seal.

7

individual (or entity) who held the shares for a longer period. The court is convinced that the claim of a plaintiff who bought and sold in short order will also protect the individual who had a long position in those securities.

Combining the findings of the court, above, with the presumption under the PSLRA concerning appointment of a lead plaintiff with the largest financial interest in the relief sought by the class, acknowledged by all parties represented at oral argument in this matter, the court is persuaded that it should appoint the Andover/Steiger parties to the lead plaintiff position in this matter. The Andover/Steiger claims present questions of law and fact which are common to the class; their claims are typical, as discussed above; and it appears to the court that the Andover/Steiger parties, as representatives, will fairly and adequately protect the interests of the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)

Lead and Liaison Counsel

15 U.S.C. § 78u-4(a)(3)(B)(v) provides that the proposed lead plaintiff shall select and retain counsel to represent the class s/he seeks to represent, subject to court approval. As stated by LSERS, the court should not intervene with the lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

The Andover Group/Steiger movants' selected joint lead counsel are Milberg, Weiss, Bershad, Hynes & Lerach, LLP (Steiger) and Entwistle & Capucci, LLP (Andover Brokerage), with the local firms of Mantese, Miller and Shea, PLLC and Elwood S. Simon & Associates as proposed liaison counsel. As discussed above, there has been no real dispute concerning the ability of these lawyers to litigate this matter. Furthermore, the materials presented in support of this motion, as well as the

performance of counsel at oral argument and in their written briefs, demonstrate to the court the competence of the lead plaintiffs' chosen counsel. For that reason, the court will approve these firms as lead and liaison counsel for the lead plaintiffs appointed above.

## CONCLUSION

In accordance with the determinations of the court, above, the motion made by Andover Brokerage, L.L.C. and Herbert Steiger for appointment as joint lead plaintiffs is hereby GRANTED, and their selection of lead and liaison counsel is approved as set forth above. The motions of the Louisiana School Employees' Retirement System for appointment as lead plaintiff and for approval of lead and liaison counsel are hereby DENIED. The motions brought by the Gordon Group[4] and Arthur Green for appointment as lead plaintiff are hereby DISMISSED. An amended consolidated complaint and the response thereto shall be prepared according to the court's stipulated order enlarging time to respond to complaint, issued June 24, 2002.

IT IS SO ORDERED.

GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

Dated: 1 4 NOV 2002
Detroit, Michigan

---

[4] As noted above, this motion was withdrawn at oral argument in this matter on September 10, 2002.

9