# EXHIBIT E

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Max Bruckner, et al. | Civil No. 02-2677(DSD/FLN) |
| Jonathan Miller | Civil No. 02-2774(DSD/FLN) |
| Sayers Investment Partners | Civil No. 02-2787(DSD/FLN) |
| Francis John Pease | Civil No. 02-2832(DSD/FLN) |
| Norma Kegg | Civil No. 02-2889(DSD/FLN) |
| Eastside Holdings, Ltd. | Civil No. 02-2921(DSD/FLN) |
| Edith Gottlieb | Civil No. 02-2931(DSD/FLN) |
| James G. Thomas | Civil No. 02-2933(DSD/FLN) |
| Glen R. Laws | Civil No. 02-3053(DSD/FLN) |
| Chips Investments, Ltd. | Civil No. 02-3508(DSD/FLN) |
| William Potter | Civil No. 02-3574(DSD/FLN) |
| Dorothy Potash | Civil No. 02-3715(DSD/FLN) |
| Catholic Workman | Civil No. 02-3755(DSD/FLN) |
| Eliot B. Gersten | Civil No. 02-3798(DSD/FLN) |

v.

Xcel Energy, Inc.

---

## PRETRIAL ORDER NO. 1

This matter is before the court on motions brought by several plaintiffs competing for lead plaintiff designation under 15 U.S.C. § 7u-4(a)(3)(B)(i) of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Before the court are thirteen securities fraud class actions[1] and one shareholder derivative action[2] naming as

---

[1] The securities fraud actions include Bruckner v. Xcel Energy, 02-2677; Miller v. Xcel Energy, 02-2774; Sayers v. Xcel Energy, Inc., 02-2787; Pease v. Xcel Energy, Inc., 02-2832; Kegg v. Xcel Energy, 02-2889; Eastside Holdings v. Xcel Energy, Inc., 02-2921; Thomas v. Xcel Energy, Inc., 02-2933; Laws v. Xcel Energy, Inc., 02-3053; Chips Investments v. Xcel Energy, Inc., 02-3508;
(continued...)

FILED 11-13-02
RICHARD D. SLETTEN, CLERK
Judgment Ent'd. _____
Deputy Clerk's Initials _____

defendants Xcel Energy, Inc. ("Xcel") and some or all of its directors and officers.[3]

Putative class members of the securities fraud actions Victor Sakal ("Sakal"), United Brotherhood of Carpenters and Joiners of America Local 3127 Pension Fund ("Pension Fund"), Donald Christ, LeRoy Faser, Leon Fiegel, Lewis and Elizabeth Fisher, Kevin C. Frye, Joseph and Lucia Press and the Tillery Family ("Frye Group") and Private Asset Management ("PAM") have each brought motions to consolidate all the related actions. Each has also moved to be named lead plaintiff in the consolidated action, and for the court's approval of their respective selections of lead and liaison counsel.[4] Plaintiffs Chips Investments Limited Partnership and its partners Steven C. Aanenson and Beverly K. Aanenson, together with

---

[1](...continued)
Potter v. Xcel Energy, Inc., 02-3574; Potash v. Xcel Energy, Inc., 02-3715; Workman v. Xcel Energy, Inc., 02-3755; Gersten v. Xcel Energy, Inc., 02-3798. One securities fraud action, Visioneering Res v. Xcel Energy, Inc., 02-3509, was voluntarily dismissed.

[2] The shareholder derivative action is captioned Gottlieb v. Xcel Energy, Inc., 02-2931.

[3] The securities fraud actions name as defendants Xcel Energy, Inc. and individuals James J. Howard (Xcel Board Chairman), Wayne H. Brunette (Xcel President and CEO.) and Edward J. McIntyre (Xcel Vice President and CFO.). Gottlieb, as a shareholder derivative action, names Xcel Energy, Inc., these same three individuals and all the other directors as well.

[4] An additional putative class member, Jack Edwin Bissey, George A.N. Coppedge II, George W. Keros, Randall Allan Pratt and Merrick Seabourn ("Coppedge Group") also moved for consolidation, appointment as lead plaintiff and approval of selection of lead counsel. Those motions have been withdrawn.

2

individuals Harry C. Andrews, Thomas R. Perry, Jr. and Lloyd Amundson ("Chips") and Catholic Workman ("Workman") have similarly moved for appointment as lead plaintiff and approval of lead and liaison or co-lead counsel.  For the reasons set forth below, Sakal's motion to consolidate the related actions is granted in part and denied in part, Chips motion to be appointed lead plaintiff is granted, Chips motion for approval of co-lead counsel is granted and the remaining motions before the court are denied.

### BACKGROUND

On July 31, 2002, Max Bruckner and Steven Herod brought a class action claim against Xcel Energy, Inc. in this district. They also name individual defendants James J. Howard, Xcel's Chairman of the Board of Directors, Wayne H. Brunette, its President and Chief Executive Officer and Edward J. McIntyre, its Vice President and Chief Financial Officer, as "controlling persons" within the meaning of Section 20 of the Securities Exchange Act of 1934.[5]  Bruckner and Herod claim that the defendants violated Sections 10(b) and 20(a) of the Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 of the rules and regulations

---

[5] 15 U.S.C. § 77(a) et seq.

3

promulgated under the Act (17 C.F.R. § 240.10b-5).   With the exception of the Gottlieb action, all of the related complaints allege the same or substantially the same violations.

Specifically, they allege, *inter alia*, that between January 31, 2001 and July 26, 2002 (the class period), Xcel and the other named defendants filed false and misleading reports with the Securities and Exchange Commission and made false and misleading public statements pertaining to Xcel's subsidiary, NRG Energy, Inc. ("NRG").   They further allege that these false and misleading statements, together with defendants' failure to disclose material adverse information, led to a significant overstatment of Xcel's financial condition.   All plaintiffs claim that they and the putative class members suffered extensive financial losses resulting from the market's negative reaction when the true nature of the company's financial condition became clear.

Xcel is a Minnesota corporation with its principal place of business in Minneapolis, Minnesota.   It provides electricity, natural gas and other energy-related products to commercial and residential customers in twelve midwestern states.   Xcel is registered with the Securities and Exchange Commission and its stock is publicly traded on the New York Stock Exchange.

4

## DISCUSSION

The court notes initially that when, as here, more than one action has been filed raising claims under the Exchange Act and any party thereto has moved to consolidate related actions, the PSLRA requires that "the decision on the motion to consolidate" be made prior to consideration of motions for appointment of lead plaintiff and lead counsel.  15 U.S.C. § 78u-4(a)(3)(B)(ii).  Therefore, the court responds first to the various motions to consolidate.

I.   **Consolidation**

   a.   **The Securities Fraud Actions**

Pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, the court may consolidate actions when there are common questions of law or fact.  See Enterprise Bank v. Saettele, 21 F.3d 233, 235 (8th Cir. 1994).  Rule 42(a) states:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed. R. Civ. P. 42(a).  The trial court has broad discretion in electing to consolidate related actions.  See United States E.P.A. v. City of Green Forest, Ark., 921 F.2d 1394, 1402 (8th Cir. 1990).  And as Rule 42(a) suggests, "consolidation is permitted as a matter of convenience and economy in administration."  Johnson v. Manhatten Ry., 289 U.S. 479, 496 (1933).

In the actions before the court, all fourteen of the complaints identify the same class period, name all or substantially all the same defendants, and with the exception of Gottlieb, set forth the same or substantially the same factual and legal claims. As a shareholder derivative action, Gottlieb differs significantly from the other related actions, and will be discussed separately below.

The court finds that all of the security fraud actions share sufficient questions of both fact and law that consolidation will "tend to avoid unnecessary costs and delays." Fed. R. Civ. P. 42(a). Further, none of the parties opposes consolidation of the securities fraud actions. Therefore, Sakal's motion to consolidate the related securities fraud cases is granted.

**b.    The Gottlieb Shareholder Derivative Action**

As a shareholder derivative action, Gottlieb differs from the securities fraud actions in several respects. Central to the consolidation analysis is whether Gottlieb and the other cases share important questions of law or fact. Fed. R. Civ. P. 42(a); see also Enterprise Bank, 21 F.3d at 235.

Gottlieb alleges many of the same facts as are asserted in the securities fraud actions. Like the other actions, Gottlieb refers to the individual defendants' conduct leading up to and during the period between January 31, 2002 and July 26, 2002. However, in alleging a breach of the board of director's fiduciary

6

responsibilities, <u>Gottlieb</u> looks back as a far as 1992. Further, as a shareholder derivative action, the focus of the factual allegations is not the dilatory conduct of the individual defendants named in the securities fraud cases, but rather the board of director's actions and inaction relative to that conduct.

<u>Gottlieb's</u> legal claims also necessarily differ both procedurally and substantively from those raised in the other actions. Procedurally, shareholder derivative actions fall under the ambit of Rule 23.1 of the Federal Rules of Civil Procedure, while securities fraud class actions are controlled by Rule 23. This alone creates significantly different threshold pleading and proof questions for the respective actions. Substantively, <u>Gottlieb</u> raises a common law claim that is not within the coverage of the Exchange Act or related regulations. Further, the action is brought on behalf of the corporation itself, rather than on Gottlieb's behalf. <u>See</u> <u>generally</u>, Charles A. Wright and Arthur R. Miller, <u>7C Federal Practice and Procedure, Civ. 2d</u>, § 1821 (1986) (noting same). For these reasons, the court finds that consolidation of the shareholder derivative action with the securities fraud actions is inappropriate.

However, even where complete consolidation is inappropriate, it remains within the court's discretion to consolidate limited parts of related actions for limited purposes. <u>See</u> <u>EEOC v. H.B.E. Corp.</u>, 153 F.3d 543, 550 (8th Cir. 1998); <u>see</u> <u>also</u> <u>Magnavox Co. v.</u>

7

APF Electronics, Inc., 469 F. Supp. 29, 32 (D.C. Ill. 1980) (stating "Rule 42(a) ... also contemplates consolidation for purposes of particular parts of the litigation, such as pretrial proceedings").

Bearing in mind the purpose of Rule 42(a) to avoid unnecessary costs and delays, the court finds that it is in the interest of all parties to the related actions to consolidate Gottlieb with the other related cases for pretrial purposes only, as more fully set forth below.

## II. Designation of Lead Plaintiff Under the PSLRA

The PSLRA sets forth three principal requirements that must be met by plaintiffs seeking to be appointed as lead plaintiff. 15 U.S.C. § 78u-4. First, the earliest filing plaintiff must publish notice of the pendency of the action within twenty days of filing the complaint. 15 U.S.C. § 78u-4(a)(3)(A)(i)(I) and (ii). Any member of the putative class may, within sixty days of publication of that notice, move to serve as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). Second, any plaintiff seeking to serve as a "representative party on behalf of a class" must personally provide a certification of willingness, ability and appropriateness for that role to the court.[6] 15 U.S.C. § 78u-4(a)(2)(A). Third, the

---

[6] The court recognizes that a literal reading of Section (2)(A) would limit its application to plaintiffs seeking class representative status, which is not synonymous with lead plaintiff appointment. While some district courts have found otherwise, see
(continued...)

8

PSLRA establishes a rebuttable presumption that the most appropriate lead plaintiff is the person or group of persons with "the largest financial interest in the relief sought by the class" that "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(bb) and (cc). While the Eighth Circuit Court of Appeals has had little opportunity to pass on the lead counsel provisions of the PSLRA, a significant body of decisional law has evolved in the other circuits.

### a.    Publication of the Pendency of the Action

The PSLRA requires that the first filing plaintiff in an Exchange Act class action publish notice of the pendency of the action in a "widely circulated national business-oriented publication," stating the claims alleged, the purported class period and advising potential plaintiffs of the opportunity to move

---

[6](...continued)
e.g. Greebel v. FTP Software, Inc., 939 F. Supp. 57, 61 (D. Mass. 1996), the court agrees with the reasoning of Chill v. Green Tree Financial Corp., 181 F.R.D. 398, 409-10 (D. Minn. 1998). There, Magistrate Judge Raymond L. Erickson explains that the legislative history of the PSLRA demonstrates Congress' intent that the Act deter so-called "professional plaintiffs." See id. at 410. As he notes, "[i]n the absence of such certifications, the entire scheme of the PSLRA could be displaced, as inventive law firms would still be allowed to recruit 'professional plaintiffs,' and foist them on an unsuspecting, and uniformed Court, in the context of a Lead Plaintiff Motion." Id.

for appointment as lead plaintiff within sixty days of its publication.[7]  15 U.S.C. § 78u-4(a)(3)(A)(i)(I) and (II).

In this case, Bruckner filed his action on July 31, 2002.  He published the required notice in Business Wire on August 1, 2002.[8] The publication noted the pendency of the action, identified the claims raised in his complaint and set forth the purported class period.  Further, it informed potential class members of their right to move for appointment as lead plaintiff within sixty days. Therefore, the court finds that the publication issued in conjunction with the <u>Bruckner</u> action satisfies the requirements of 15 U.S.C. § 78u-4(a)(3)(A)(i)(I) and (II).

Following the <u>Bruckner</u> publication, several putative class members and two additional plaintiffs filed motions for appointment as lead plaintiff.  Sakal, Pension Fund, the Frye Group, PAM, Chips and Workman all filed their respective motions for appointment on September 30, 2002.  Each of the motions was brought within sixty days of the publication, as required by 15 U.S.C. § 78u-4(a)(3)(A)(i)(II), and is therefore timely.

---

[7] Under the Act, subsequent parties filing related actions or moving for appointment as lead plaintiff are not required to publish notice.  15 U.S.C. § 78u-4(3)(A)(ii).

[8] Business Wire, a national publication, has been accepted in this district as satisfying the requirements of Section 78u-4(a)(3)(A)(i).  <u>See</u> <u>Chill v. Green Tree Financial Corp.</u>,181 F.R.D. 398, 403 (D. Minn. 1998).

### b.    Plaintiff Certification

Section 78u-4(a)(2)(A) of the Act requires that plaintiffs seeking representative status file sworn certification that

> (i) states that the plaintiff has reviewed the complaint and authorized its filing;
>
> (ii) states that the plaintiff did not purchase the security that is the subject of the complaint at the direction of plaintiff's counsel or in order to participate in any private action arising under this chapter;
>
> (iii) states that the plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary;
>
> (iv) sets forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint;
>
> (v) identifies any other action under this chapter, filed during the 3-year period preceding the date on which the certification is signed by the plaintiff, in which the plaintiff has sought to serve as a representative party on behalf of a class; and
>
> (vi) states that the plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond the plaintiff's pro rata share of any recovery, except as ordered by the court in accordance with paragraph (4).

15 U.S.C. § 78u-4(a)(2)(A)(i-vi).  The court finds that each of the movants has filed a sworn certification, signed by the plaintiff or

putative plaintiff, in accordance with the requirements of the Act.[9]

### c.    The Rebuttable Presumption of Most Adequate Plaintiff

The PSLRA requires that the court appoint as lead plaintiff "the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members...." 15 U.S.C. § 78u-4(a)(3)(B)(i).  To that end, the Act creates a rebuttable presumption that the plaintiff or putative plaintiff who timely files a motion for appointment as lead plaintiff, has "the largest financial interest" in the class relief and otherwise satisfies the requirements of Rule 23, is the most adequate lead plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  That presumption may be challenged by a member of the purported plaintiff class offering proof that the presumptively most adequate plaintiff-

> (aa) will not fairly and adequately protect the interests of the class; or

> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The PSLRA does not define "largest financial interest" or describe the means by which it is to be calculated.    Courts

---

[9] <u>See</u> note 6, <u>supra</u>, for the court's analysis of the applicability of the certification provisions to subsequent motions for appointment as lead plaintiff.

12

considering that question have looked at four factors: (1) number of shares purchased during the class period, (2) net shares purchased during the class period, (3) net funds expended during the class period, and (4) the approximate loss experienced during the class period. See Lax v. First Merchants Acceptance Corp., 1997 WL 461036 at *5 (N.D. Ill. 1997); In re Olsten Corp. Securities Litigation, 3 F. Supp. 2d 286, 296 (E.D. N.Y. 1998); Skwortz v. Crayfish Co., Ltd., 2001 WL 1160745 at *5 (S.D. N.Y. 2001). These are frequently referred to at the Lax factors.

In addition to showing the greatest financial interest, the Act also requires that the presumptive lead plaintiff "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Courts have consistently held that at this stage the Rule 23 considerations are limited to the questions of typicality and adequacy. See In re Cendant Corp. Litigation, 264 F.3d 201, 263 (3rd Cir. 2001); In re Oxford Health Plans, Inc. Securities Litigation, 182 F.R.D. 42, 50 (S.D. N.Y. 1998); Gluck v. Cellstar Corp., 976 F. Supp. 542, 546 (N.D. Tex. 1997); D'Hardt v. Digi International, Inc., 1997 WL 405668 at *2 (D. Minn. 1997). Thus, the searching inquiry that will follow a Rule 23 motion for class certification is not appropriate this early in the litigation. See In re Advanced Tissue Sciences Securities Litigation, 184 F.R.D. 346, 349 (S.D. Cal. 1998). Rather, the presumptive lead plaintiff "need only make

13

a 'preliminary showing' that the Rule's typicality and adequacy requirements have been satisfied." Skwortz, 2001 WL 1160745 at *5 (citing In re Olsten, 3 F. Supp. 2d at 296).

Because the PSLRA specifically incorporates Rule 23, courts have applied traditional Rule 23 principles in considering typicality and adequacy. See Cendant, 264 F.3d at 264-5. As for typicality, the court "should consider whether the circumstances of the movant with the largest losses 'are markedly different or the legal theory upon which the claims [of that movant] are based differs from that upon which the claims of other class members will perforce be based.'" Id. at 265 (citing Hassine v. Jeffes, 846 F. 2d 169, 177 (3rd Cir. 1988) (internal citations omitted)). "[P]erfect identity [of claims] is not required. In re Wirebound Boxes Antitrust Litigation, 128 F.R.D. 268, 270 (D. Minn. 1989).

Rule 23(a) adequacy has four principal requirements. "First, the representatives and their attorneys must be able and willing to prosecute the action competently and vigorously. Second, each representative's interests must be sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge." In re Wirebound Boxes, 128 F.R.D. at 270. Third, in the context of lead plaintiff motions, courts have factored the size and composition of the presumptive lead plaintiff group into the adequacy inquiry. See Cendant, 264 F.3d at 266. The court may determine under its preliminary Rule 23 analysis that "the way in

14

which a group seeking to become lead plaintiff was formed or the manner in which it is constituted would preclude it from fulfilling the tasks assigned to a lead plaintiff...." Id. See also Chill, 181 F.R.D. 398, 408 (stating that the larger the lead plaintiff group, the greater the dilution of control over the action). Finally, courts may consider whether a movant's selection of counsel is so wholly incompetent or so rife with conflict as to demonstrate the movant's inadequacy to lead the collective action. See In re Cavanaugh, 306 F.3d 732-3 (9th Cir. 2002).

### d.    Applying the PSLRA Lead Plaintiff Provisions: In re Cavanaugh

The Ninth Circuit Court of Appeals recently brought the various PSLRA lead plaintiff provisions into a coherent whole by establishing a three-step process for identifying the most adequate lead plaintiff. See Cavanaugh, 306 F.3d at 729. In step one, the court must consider the adequacy of the notice, filing and motion in accordance with the Act. See id. In step two, "the district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." Id. at 729-30. The court "must then focus its attention on *that* plaintiff and determine, based on ... his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" Id. Only if that plaintiff does not, *prima facie*, meet the requirements of Rule 23(a) is the court to consider the adequacy of the plaintiff with

15

the next greatest financial stake. See id. at 730; see also Cendant, 264 F.3d 201, 268 (same). Finally, at step three, competing movants may challenge the presumptive lead plaintiff's *prima facie* showing that it satisfies the Rule 23(a) requirements.[10] See Cavanaugh, 386 F.3d at 730.

It is implicit in the three part process, and explicit in Cavanaugh, that the appointment of lead plaintiff "is not a beauty contest." Id. at 732. The plaintiff with the largest stake is the presumptive lead plaintiff, provided he meets the Rule 23 requirements, even if the court considers another plaintiff somehow better suited to lead the action. See id. The Act does not permit the court to consider any other plaintiffs' motions unless and until the plaintiff with the largest stake has been disqualified. See id. at 730-31.

### e.   Cavanaugh Step One: Notice, Certification and Motion

Applying Cavanaugh to the present motions, the court finds that all movants have satisfied the requirements of step one, having properly certified and timely moved for appointment following Bruckner's proper publication of notice.

### f.   Cavanaugh Step Two: Financial Stake

Turning to step two, the court must first evaluate each movant's financial stake in the matter. Of the six movants

---

[10] Under the Act, only members of the putative plaintiff class may challenge the appropriateness of the presumptive lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

16

competing for designation as lead plaintiff, Chips purports to have the largest stake in the relief sought.  In support of its motion for appointment as lead plaintiff, Chips claimed its collective interest in the litigation was based on calculated losses of $3,810,508 during the class period.  After competing movants challenged that total, Chips filed an amended affidavit reducing its claimed losses to $2,566,794.  If correct, that amount exceeds the next nearest movant's claimed interest by at least $1,700,000.[11] Applying the <u>Lax</u> factors, the court finds that Chips interest in the relief sought satisfies the financial interest requirement of step two.  <u>See Lax</u>, 2002 WL 461036 at *5.

### g. <u>Cavanaugh</u> **Step Two continued: Rule 23 Analysis**

Step two also requires that the court make an initial finding that the movant with the largest stake meets the typicality and adequacy requirements of Rule 23(a).  <u>See Cavanaugh</u>, 306 F.3d at 730.  The court reiterates that the typicality and adequacy determination at this preliminary stage is not a "searching inquiry."  <u>Skwortz</u>, 2001 WL 1160745 at *5.

### 1. **Typicality**

Rule 23 typicality is generally not a formidable threshold, so long as plaintiff's circumstances and legal theories are not "markedly different" than those of the class.  <u>Cendant</u>, 264 F.3d at

---

[11] Pension Fund claims an interest of $775,874.80, PAM claims losses of $633,718, Workman alleges losses of $464,093.02 and Sakal claims losses of $6,137.75.

265.  Here, the claims of Chips mirror those of the other movants
and filing plaintiffs.  They base their allegations on the same
actions of defendants, cite the same class period and raise the
same legal theories as the other plaintiffs.  Therefore, the court
finds that the Chips group meets the PSLRA's initial Rule 23
typicality requirement.

### 2.    Adequacy

The court's step two inquiry into Chips' adequacy yields a
similar finding.  There is nothing in Chips' pleadings, motion
papers or affidavit that suggests it is unable or unwilling "to
prosecute the action competently and vigorously."  <u>In re Wirebound
Boxes</u>, 128 F.R.D. at 270.  Similarly, the interest of Chips in the
litigation is, as a preliminary matter, not at odds with the
interests of the other putative class members.  <u>See id.</u>  Though
Chips consists of a group of investors, the PSLRA clearly envisions
such groups serving as lead plaintiffs.  The Act states "the court
shall adopt a presumption that the most adequate plaintiff in any
private action arising under this chapter is the person *or group of
persons* that...."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)  (emphasis
added).  Further, there is no indication that the Chips group is so
large or unwieldy that it will be unable to adequately perform the
responsibilities of lead plaintiff.  Finally, the court finds
nothing about the selection of counsel by Chips to call into
question its ability to serve in a lead plaintiff capacity.

18

Therefore, the court finds that Chips has made a *prima facie* showing that it is presumptively the most adequate lead plaintiff pursuant to the PSLRA.   However, that finding is preliminary in nature.   15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).   The act permits competing movants to show that the presumptively most adequate plaintiff will not adequately protect the class or is subject to unique defenses that render it inadequate.   15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

    h.    **Cavanaugh Step Three: Other Movant's Challenges to the Prima Facie Showing**

The court turns to step three of the analysis and considers the objections raised by competing movants.   See <u>Cavanaugh</u>, 306 F.3d at 730.   Initially, it is important to separate the other movants' actual challenges to Chips' eligibility from their averments regarding their own suitability for the role of lead plaintiff.   Even if another plaintiff is somehow better qualified, the court must appoint Chips, the largest stakeholder, as lead plaintiff unless it is disqualified under the requirements set out in Section 78u-4(a)(3)(B)(iii)(II) of the Act.   See <u>Cavanaugh</u>, 306 F.3d at 730; <u>Cendant</u>, 264 F.3d 201, 267.

Competing movants may challenge the presumptive lead plaintiff either on the grounds that it "will not fairly and adequately protect the interests of the class" or that it "is subject to unique defenses" rendering it unable to adequately represent the class.   15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) and (bb).

19

### 1.    **Pension Fund and PAM**

Pension Fund raises two objections to the motion of Chips for appointment.  First, Pension Fund asserts that Chips consists of a group of unrelated investors and therefore should not, and by some holdings, cannot be appointed lead plaintiff.[12]    PAM raises a similar objection.  Pension Fund and PAM cite a several decisions finding aggregations of previously unrelated plaintiffs contrary to the intent of Congress in promulgating the Act.[13]  They argue that permitting such groups may encourage lawyers to create, direct and control securities actions.  See In re Donnkenny, Inc. Securities Litigation, 171 F.R.D. 156, 157-58 (S.D. N.Y. 1997).  They further assert that such groups may be unable to provide cohesive, unified direction of the action.  See Crawford v. Onyx Software, 2002 U.S. Dist. LEXIS 1101, at *4 (W.D. Wash. 2002).

Pension Fund's second objection states that Chips is atypical and inadequate because its initial motion included erroneous calculations.

---

[12] The Chips group consists of Chips Investment Limited Partnership, including Steven C. Aanenson, its sole general partner, Steven C. and Beverly K. Aanenson, husband and wife, Harry C. Andrews, Thomas R. Perry, Jr. and Lloyd Amundson, as president of both the Lloyd and Barbara Amundson Charity Foundation, Inc. and Lake Benton Bancorporation, Inc., and for L.A. Amundson Scholarships, Inc.

[13] Pension Fund cites eight district court decisions supporting these propositions and PAM cites an additional four.

As to the initial objection of Pension Fund and PAM and the decisions upon which they rely, the court respectfully disagrees. First, nearly half of the Chips group's claimed losses ($1,137,432) were suffered by the limited partnership and Steven and Beverly Aanenson.   There is no dispute that there is a preexisting relationship between Mr. and Mrs. Aanenson and between the Aanenson's and the limited partnership.  Because their losses alone significantly exceed the next highest movant's claimed interest, it cannot be said in this case that, but for the aggregation, Chips would not be the presumptive lead plaintiff.  Second, Chips has cited a similar number of contrary district court decisions where lead plaintiff status was awarded to groups ranging in size from three to twenty-one persons, including two decisions from this district.  <u>See</u> <u>Chill</u>, 171 F.R.D. 398, 414-15; <u>D'Hondt</u>, 1997 WL 405668 at **4-5.  Neither does the court find the second objection raised by Pension Fund persuasive in light of the explanation of the errors offered by Chips and their quick amendment of the motion upon receipt of corrected certifications from the individual members' various brokerages.   Therefore, the court finds that Pension Fund and PAM have failed to rebut the presumption that Chips is the most adequate lead plaintiff.

### 2.   Workman and Sakal

Workman and Sakal take a somewhat different tack.  Rather than challenging the adequacy of Chips to represent the entire class,

they challenge its ability to represent purported sub-classes. Workman seeks appointment as lead plaintiff of a proposed "Noteholder Class," pointing out that it is the only plaintiff to have filed a claim on behalf of Senior Noteholders as opposed to equity stock purchasers.  It claims that because of differences between the relative rights and positions of bondholders and stockholders, only a bondholder can adequately represent the interests of other bondholders.  Finally, Workman contends that a struggle between bondholders and stockholders over an inadequate settlement or award is likely, if not inevitable.  In support of it argument, Workman cites decisions creating independently represented bondholder and shareholder subclasses.  See e.g., In re Livent, Inc. Noteholders Litigation, 151 F. Supp. 2d 371 (S.D. N.Y. 2001); In re Oxford, 182 F.R.D. at 42; In re Cendant, 264 F.3d. 201; Chill, 181 F.R.D. 398; Aronson v. McKesson HBOC, Inc., 79 F. Supp. 2d 1146 (N.D. Cal. 1999).  Finally, Workman submits a recent district court order granting separate lead plaintiff status to a Section 11 plaintiff group in a case where a substantial portion of the class brought Section 10(b) claims.  See In re Peregrine Systems, Inc. Securities Litigation, Civ. No. 02cv870-J (S.D. Cal. 2002) [Doc. No. 145.]

The court finds the competing movant's arguments unpersuasive, at least at this stage of the litigation.  Each of Workman's cited cases is distinguishable.  In Oxford, the court appointed three

22

competing groups as co-lead plaintiffs because, in its opinion, the scope of the litigation was too great a burden for any one of them individually.  See In re Oxford, 182 F.R.D. at 49.  That is not the case here.  The court noted that the appointment of lead and co-lead plaintiff status is not subject to hard and fast rules, and is best considered on a "case-by-case basis, taking account of the unique circumstances of each case."  Id.  The Cendant court also elected to split the putative class, but in that case there was a potentially extreme conflict of interest not present in this case. See In re Cendant, 182 F.R.D. at 149.  In Chill, the court quite understandably appointed co-lead plaintiffs because the options actions were not consolidated with the securities actions due to the Eighth Circuit's limitations on option-holder standing.  See Chill, 181 F.R.D. at 407.  Finally, the District Court for the Southern District of California recently appointed co-lead plaintiffs in In re Peregrine, Civ. No. 02cv870-J [Doc. No. 145.], because competing movants had entirely different, and possibly competing, claims.  The court appointed one group to lead the Section 10(b) plaintiffs and while the other would lead the Section 11 claimants.[14]  See id.

---

[14] Workman has informed the court, both in its brief and at oral argument, that it is preparing to file an amended complaint, adding Section 11 claims.  While such claims, if properly raised, would be factored into the court's analysis, no amended complaint has yet been filed.

23

In a similar vein, Sakal seeks appointment as lead plaintiff
of the putative class of plaintiffs who received Xcel securities in
exchange for shares of NRG, which he refers to as "the NRG Class."
He argues that the NRG Class requires separate representation from
the other Xcel shareholders because its interests may differ from,
and possibly compete with, those of the rest of the class.    Like
Workman, Sakal cites decisions appointing multiple lead plaintiffs
representing differing groups within the action.    See e.g., In re
PSINet, Inc. Securities Litigation, CA 00-1850-A (E.D. Va. 2001);
In re Penncorp Financial Group, Inc. Securities Litigation, No. 98
Civ. 5995 (S.D. N.Y. 1998); In re Painewebber Limited Partnerships
Litigation, 171 F.R.D. 104 (S.D. N.Y. 1997) (each bifurcating
classes and appointing independent counsel).

Sakal's reliance on Painewebber is misplaced.    There the court
permitted each of the various plaintiff partnerships to be
represented by independent counsel and experts.    See id. at 124.
It is not clear at what point in the litigation that took place.
More important, that court's analysis centered on the Rule 23(a)(4)
adequacy of the representative plaintiffs in relation to a
certified class and the Rule 23(e) validity of a proposed
settlement.    Unlike the more intense scrutiny required at that
stage of the litigation, "searching inquiry" into typicality and
adequacy for PSLRA lead plaintiff purposes is not appropriate.
Skwortz, 2001 WL 1160745 at *5.    The court therefore finds that

neither Workman nor Sakal have met the PSLRA's burden of proving that Chips "will not fairly and adequately protect" their respective interests.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

The court believes the better course is to appoint one lead plaintiff for the consolidated class.  See e.g., In re Tyco Int'l Ltd. Securities Litigation, 2000 WL 1513772 (D.N.H. 2000) (holding "while the potential for conflict ... is real, the lead plaintiff determination is not the appropriate stage in the litigation to address this concern."  Id. at *8).

First, to subdivide the class at this point would defeat to some extent both the purposes of consolidation and Congress' intent in passing the largest stakeholder provisions of the PSLRA. "[P]laintiff's arguments do not fully take into account that the Reform Act establishes a procedure for the court's speedy consolidation of all pending claims."  Aronson, 79 F. Supp. 2d at 1151.  "[Plaintiff's] speculations about possible conflicts do not rebut the statutory presumption that one lead plaintiff can vigorously pursue all available causes of action against all possible defendants under all available legal theories."  Id. (Emphasis in original.)  And ultimately, "every warrior in this battle cannot be a general."  Cendant, 182 F.R.D. at 148.

Second, the court notes that, once appointed, the lead plaintiff becomes a fiduciary obligated to advance the interests of all putative class members.  See In re Quintas Securities

Litigation, 201 F.R.D. 475, 482 (N.D. Cal. 2001); In re Lucent
Technologies, Inc. Securities Litigation, 194 F.R.D. 137, 155
(D.N.J. 2000).  The court believes that the Chips group will not
take that responsibility lightly.

Third, upon consideration of an eventual motion for class
certification, the court's Rule 23 inquiry is necessarily more
rigorous.  If at that time Workman, Sakal or any other putative
class member demonstrates that Chips cannot meet the requirements
of Rule 23, the court will then take appropriate remedial action.
See In re Enron Corp. Securities Litigation, 206 F.R.D. 427, 451
(S.D. Tex. 2002).  Said the Enron court:

> [I]t is centrally important to the litigants
> on both side and to this Court, especially
> because there are so many parties involved and
> all are entitled to equal access to the
> evidence, that the discovery process not
> disintegrate into chaos and harassment.  At
> the same time diligent and efficient
> prosecution of the causes of action must be
> encouraged.  To accomplish such and to provide
> all parties with more information through
> discovery to flesh out, or perhaps even
> eliminate, concerns regarding conflicts of
> interest, the Court believes that the
> litigation should proceed as a unified class
> with a strong Lead Plaintiff, at least until
> the time for class certification.  At that
> point, if still appropriate or if newly
> appropriate, the parties may reurge or file
> new requests for subclasses and separate
> representatives.

Id.  For these reasons, Workman's and Sakal's motions for
appointment as lead plaintiff of unique subclasses and their
corollary attacks on the adequacy of Chips as presumptive lead

plaintiff are denied.  Having met the prima facie requirements of the PSLRA and overcome the competing movants' objections, the motion of Chips for appointment as lead plaintiff in the consolidated actions is granted.

### i.    Motions for a Document Retention Order

The motion of the Frye Group and the proposed order of Pension Fund urge the court to issue an order requiring the parties preserve all documents relative to the related actions.  The PSLRA requires that all parties to an action under the Act retain relevant documents "[d]uring the pendency of any stay of discovery" and provides for appropriate sanctions for willful failures to retain such documents.  15 U.S.C. § 78u-4(b)(3)(C)(i) and (ii).  Such stays are common in Exchange Act actions, because the Act specifically provides for a stay of discovery during the pendency of any motion to dismiss.  15 U.S.C. § 78u-4(b)(3)(B).

Even though those provisions of the Act have not been triggered by a motion to dismiss, the court believes an order for document retention is unnecessary at this time.  However, the court reminds all the parties that "[s]anctions may be imposed against a litigant who is on notice that documents and information in its possession are relevant to litigation, or potential litigation, or are reasonably calculated to lead to the discovery of admissible evidence, and destroys such documents and information."  Dillon v. Nissan Motor Co., 986 F.2d 263, 267 (8th Cir. 1993).  The court

therefore denies the motions requesting an order for document retention.

### III. Approval of Lead Counsel Under the PSLRA

The PSLRA states, "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). Courts have exercised varying degrees of discretion and focused on differing factors in applying this provision. See e.g., Singer v. Nicor, Inc., 2002 WL 31356419 at *4 (N.D. Ill. 2002) (deferring approval of counsel pending submission of fee arrangements, staffing plans, plans to allocate work to other firms and planned role of local counsel in the litigation); Johnson v. Telltabs, Inc., 2002 WL 31163670 at *3-4 (N.D. Ill. 2002) (approving selection only on showing that fees were reasonable); Richard NMI Bell v. Acendant Solutions, Inc., 2002 WL 638571 at *6 (N.D. Tex. 2002) (requiring lead plaintiff to eliminate two of three proposed co-counsel); Newman v. Eagle Building Technologies, 209 F.R.D. 499, 506 (S.D. Fla. 2002) (approving counsel because no plaintiff or defendant objected and court found no independent basis to reject); Naiditch v. Applied Micro Circuits Corp., 2001 WL 1659115 at *4 (S.D. Cal. 2001) (approving after review of counsel's résumé).

The court agrees with those finding that judicial inquiry in this regard should be limited. As the Ninth Circuit points out, "... Congress gave the lead plaintiff, and not the court, the power

28

to select a lawyer for the class. <u>Cavanaugh</u>, 306 F.3d at 733, note 11. The Third Circuit commented in <u>Cendant</u>, "we think that the Reform Act evidences a strong presumption in favor of approving a properly selected lead plaintiff's decisions as to counsel...." <u>In re Cendant</u>, 264 F.3d at 276. This view affirms the importance of client autonomy in selection of counsel, a significant value in the court's view. <u>See Cavanaugh</u> at 734.

Some courts have elected to review proposed fee agreements in the approval of counsel process. <u>See</u> <u>e.g.</u>, <u>Cavanaugh</u>, 306 F.3d at 732; <u>In re Quintus Securities Regulation</u>, 201 F.R.D. 475, 492-93 (N.D. Cal. 2001); <u>In re Bank One Shareholders Class Actions</u>, 96 F. Supp. 2d 780, 784 (N.D. Ill. 2000). However, because the court retains the authority to protect the interests of the entire class, for example by approving or denying proposed settlements and fee awards, the court finds that it unnecessary to review proposed fee arrangements at this time. Fed. R. Civ. P. 23(e); <u>see</u> <u>also</u> <u>In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation</u>, 55 F.3d 768, 819 (3rd Cir. 1995) (stating "a thorough judicial review of fee applications is required in all class action settlements").

Additionally, the PSLRA itself works to protect the plaintiff class in this regard. Section 78u-4(a)(6) of the Act requires that "attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the

29

amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6). For these reasons, the court finds it unnecessary to review proposed fee arrangements at this time.

Finally, the choice of counsel by Chips was among the factors the court considered at step two of the <u>Cavanaugh</u> analysis because the selection is an indicator of plaintiff's adequacy to serve in the lead plaintiff role. The court reviewed proposed co-counsel's résumés, and further, is familiar with proposed local counsel's qualifications. The court found nothing calling into question proposed counsel's ability to represent the putative plaintiff class. At step three of the <u>Cavanaugh</u> analysis, competing movants could have raised the issue as well, but did not. Therefore, the court grants the motion of Chips for approval of the law firms of Chestnut & Cambronne, P.A. and Berger & Montague, P.C. as co-lead counsel for the consolidated action.

### CONCLUSION

Having found that (1) the related securities fraud actions share significant questions of fact and law and should therefore be consolidated, (2) the shareholders derivative action shares sufficient questions of fact with the related securities fraud actions that is should be consolidated with them for pretrial purposes only, (3) the Chips group meets the requirements of the

PSLRA and therefore should be appointed as lead plaintiff in the consolidated securities fraud actions, (4) Workman's motion for appointment as lead plaintiff for a subclass of noteholders and related motion for approval of counsel is premature and should therefore be denied, (5) Sakal's appointment as lead plaintiff for a subclass known as the NRG Class and related motion for approval of counsel is premature and should therefore be denied, (6) Frye Group's motion and Pension Fund's request for a document retention order is unnecessary and therefore should be denied, and (7) the Chips group's selection of Chestnut & Cambronne, P.A. and Berger & Montague, P.C. as co-lead counsel should be approved, **IT IS HEREBY ORDERED:**

1.    That Sakal's motion to consolidate [Doc. No. 16 in 02-2677; Doc. No. 8 in 02-2774; Doc. No. 7 in 02-2787; Doc. No. 8 in 02-2832; Doc. No. 8 in 02-2889; Doc. No. 7 in 02-2921; Doc. No. 7 in 02-2931; Doc. No. 11 in 02-2933; Doc. No. 7 in 02-3053; Doc. No. 12 in 02-3508; Doc. No. 7 in 02-3574] is **GRANTED IN PART** to the extent that:

> Bruckner v. Xcel Energy, 02-2677; Miller v. Xcel Energy, 02-2774; Sayers v. Xcel Energy, Inc., 02-2787; Pease v. Xcel Energy, Inc., 02-2832; Kegg v. Xcel Energy, 02-2889; Eastside Holdings v. Xcel Energy, Inc., 02-2921; Thomas v. Xcel Energy, Inc., 02-2933; Laws v. Xcel Energy, Inc., 02-3053; Chips Investments v. Xcel Energy, Inc., 02-3508; Potter v. Xcel Energy, Inc., 02-3574; Potash v. Xcel Energy, Inc., 02-3715; Workman v. Xcel Energy, Inc., 02-3755; Gersten v. Xcel Energy, Inc., 02-3798

are hereby consolidated for all purposes into one consolidated securities fraud action and **DENIED IN PART**, to the extent that <u>Gottlieb v. Xcel Energy, Inc.</u>, 02-2931, is consolidated with the above consolidated securities fraud actions for pretrial purposes only.

2.    That, hereinafter, the caption of the consolidated securities fraud action shall be as follows:

UNITED STATES DISTRICT COURT<br>
DISTRICT OF MINNESOTA

In re Xcel Energy, Inc. Securities Litigation
Master File No. 02-2677 (DSD/FLN).

3.    That a copy of this order shall be docketed in all of the constituent files, but the files in this consolidated action shall be maintained under Master File No. 02-2677 (DSD/FLN), and all orders, pleadings, motions and other documents will, when filed and docketed in the Master File, be deemed to be filed and docketed in each applicable constituent file.

4.    That this order shall apply to the consolidated securities fraud action and to each case that relates to the same subject matter that is subsequently filed in this court or is transferred to this court and is consolidated with the consolidated securities fraud action.

5.    That the motion of Chips for appointment as lead plaintiff in the consolidated action on behalf of potential plaintiffs in the putative class of purchasers of Xcel Energy, Inc.

32

securities from January 31, 2001 through July 26, 2002, the putative class period [Doc. No. 6 in 02-3508], is **GRANTED**.

6.   That the motion of Chips for approval of Chestnut & Cambronne, P.A. and Berger & Montague, P.C. as co-lead counsel for plaintiffs in the consolidated action [Doc. No. 6 in 02-3508] is **GRANTED**.

7.   That Sakal's motions for appointment as lead plaintiff and for approval of counsel in the consolidated action [Doc. No. 16 in 02-2677; Doc. No. 8 in 02-2774; Doc. No. 7 in 02-2787; Doc. No. 8 in 02-2832; Doc. No. 8 in 02-2889; Doc. No. 7 in 02-2921; Doc. No. 7 in 02-2931; Doc. No. 11 in 02-2933; Doc. No. 7 in 02-3053; Doc. No. 12 in 02-3508; Doc. No. 7 in 02-3574] are **DENIED**.

8.   That Pension Fund's motions for consolidation, appointment as lead plaintiff and approval of counsel in the consolidated action [Doc. No. 19 in 02-2677; Doc. No. 11 in 02-2774; Doc. No. 10 in 02-2787; Doc. No. 11 in 02-2832; Doc. No. 11 in 02-2889; Doc. No. 10 in 02-2921; Doc. No. 10 in 02-2931; Doc. No. 14 in 02-2933; Doc. No. 10 in 02-3053; Doc. No. 15 in 02-3508; Doc. No. 10 in 02-3574] are **DENIED**.

9.   That PAM's motions for consolidation, appointment as lead plaintiff and approval of counsel in the consolidated action [Doc. No. 24 in 02-2677; Doc. No. 13 in 02-2774; Doc. No. 13 in 02-2787; Doc. No. 14 in 02-2832; Doc. No. 14 in 02-2889; Doc. No. 13 in 02-2921; Doc. No. 13 in 02-2931; Doc. No. 18 in 02-2933; Doc. No. 13

33

in 02-3053; Doc. No. 18 in 02-3508; Doc. No. 13 in 02-3574] are **DENIED**.

10.   That Workman's motions for appointment as lead plaintiff for a subclass of plaintiffs in the consolidated action and approval of counsel [Doc. No. 2 in 02-3755] are **DENIED**.

11.   That the Frye Group's motion for consolidation, appointment as lead plaintiff and approval of counsel in the consolidated action [Doc. No. 5 in 02-2933] is **DENIED**.

12.   That Frye Group's motion for a document retention order [Doc. No. 5 in 02-2933] is **DENIED**.

13.   That within 45 days after the entry of this order, lead plaintiffs in the consolidated securities fraud action shall file a "Consolidated Amended Complaint" and serve it upon counsel for defendants, and that within 30 days after service, defendants shall serve and file an answer or otherwise respond to the Consolidated Amended Complaint.

14.   That any counsel of record for a party in the related actions who is not a member of the Bar of this District and who otherwise conforms to all requirements of this District is hereby admitted to practice *pro hac vice* for the related actions.

15.   That Gottlieb's motion for consolidation of Gottlieb v. Xcel Energy, Inc., 02-2931, with the consolidated securities fraud actions (Master File No. 02-2677 (DSD/FLN)) for all pretrial purposes, but not for trial [Doc. No. 16 in 02-2931] is **GRANTED**.

34

16.  The Master File for the consolidated securities fraud actions (Master File 02-2677 (DSD/FLN)) shall also serve as the Master File for <u>Gottlieb</u> and any subsequently filed shareholder derivative action, but a separate docket shall be maintained for <u>Gottlieb</u> and any other subsequently filed shareholder derivative actions.

17.  Every document filed in the shareholder derivative action shall bear the same Master File number as the consolidated securities fraud action <u>and</u> the individual case number to which it pertains, but each shareholder derivative action shall bear the caption:

UNITED STATES DISTRICT COURT<br>
DISTRICT OF MINNESOTA

In re Xcel Energy, Inc. Shareholder Derivative Action
Master File No. 02-2677(DSD/FLN)
Civil No. 00-0000 (e.g.).

18.  That this order shall apply to each related shareholder derivative action subsequently filed or transferred to this court.

19.  That Gottlieb's motion to be appointed representative plaintiff of the shareholder derivative action pursuant to Rule 23.1 of the Federal Rules of Civil Procedure [Doc. No. 16 in 02-2931] is **DENIED** as premature.


Dated: November 12, 2002

_____
David S. Doty, Judge
United States District Court

35