# EXHIBIT F

NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| GERALD E. VANGSGARD, on behalf of himself and all others similarly situated,<br><br>               Plaintiff,<br><br>        v.<br><br>ARIBA, INC., et al.,<br><br>               Defendants.<br><br>─────────────────────<br><br>AND RELATED ACTIONS | Case Number C-03-00277 JF<br><br>ORDER[1] CONSOLIDATING RELATED ACTIONS, APPOINTING LEAD PLAINTIFF, AND APPROVING LEAD PLAINTIFF'S COUNSEL |

     On May 12, 2003, the Court heard argument regarding motions for consolidation of the related actions, appointment of lead plaintiff, and approval of lead plaintiff's counsel. The Court has read and considered the briefing submitted by the parties. For the reasons set forth below, the Court will consolidate the related actions, appoint Aletti Gestielle SGR, s.p.a. as lead plaintiff, and approve the law firm of Schiffrin & Barroway, LLP as lead plaintiff's counsel and the law firm of Kaplan Fox & Kilsheimer, LLP as lead plaintiff's liaison counsel.

───────────────

[1] This disposition is not designated for publication.

# I. BACKGROUND

Before the Court are twelve related class action lawsuits, including the above-entitled action, asserting claims against Defendant Ariba, Inc. ("Ariba") and certain of its directors and officers for securities fraud pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a, *et seq.* ("the Exchange Act"), and Rule 10b-5 promulgated thereunder. The lawsuits at issue were filed on behalf of a class of investors who purchased or otherwise acquired securities of Ariba during the period from January 11, 2000 to January 15, 2003, inclusive. The plaintiffs in each of these lawsuits allege that beginning on January 11, 2000 and continuing through at least late 2001, Defendants made false and misleading statements about Ariba's revenues, business prospects and financial condition which had the effect of artificially inflating the price of Ariba securities.

Several plaintiffs have moved for consolidation of the related actions. In addition, six plaintiffs or groups of plaintiffs timely filed motions seeking appointment as lead plaintiff and approval of lead plaintiff's counsel; four of those plaintiffs or groups of plaintiffs subsequently withdrew their motions.[2] The only two applicants for appointment as lead plaintiff who remain are Aletti Gestielle SGR, s.p.a., and a group of three carpenters' pension funds. The Court will address the pending motions as follows.

# II. DISCUSSION

## A. Legal Standard

The Private Securities Litigation Reform Act of 1995, Pub.L. No. 104-67 ("PSLRA"), establishes a two-step process for resolving motions to consolidate and motions for appointment of lead plaintiff when multiple actions on behalf of a putative class assert substantially the same claims under the Exchange Act. To wit, the Court must resolve any motions to consolidate prior to considering the issue of appointing a lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(ii). "[A]s soon as practicable" after the Court decides whether to consolidate the actions, it then "shall appoint the most adequate plaintiff as

---

[2] Motions seeking appointment as lead plaintiff and approval of lead plaintiff's counsel filed by Edward R. Taddia and Ellen G. Taddia, Sam Haddad, the McKuin Plaintiffs, and Herschel Potts and Clifford Ardito were withdrawn prior to the May 12, 2003 hearing.

Case No. C-03-00277 JF
ORDER CONSOLIDATING RELATED ACTIONS, APPOINTING LEAD PLAINTIFF, AND APPROVING LEAD
PLAINTIFF'S COUNSEL
(JFLC3)

1  lead plaintiff" for the litigation. *Id.* The party chosen as lead plaintiff "shall, subject to the approval of

2  the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v).

3

4  **B. Consolidation**

5        Federal Rule of Civil Procedure 42(a) permits consolidation of "actions involving a common

6  question of law or fact." FED. R. CIV. P. 42(a). "The district court has broad discretion under this rule

7  to consolidate cases pending in the same district." *Investors Research Co. v. United States Dist. Ct.*,

8  877 F.2d 777, 777 (9th Cir. 1989).

9        The moving parties seek consolidation of the twelve related actions before the Court.[3]

10  Defendants support consolidation and no other party to these proceedings has objected to such

11  consolidation. The actions present the same or substantially similar factual and legal issues and assert

12  the same claims against common defendants. Under these circumstances, the Court concludes that

13  consolidation will promote judicial efficiency and avoid unnecessary duplication and expense.

14  Accordingly, the Court will consolidate the twelve related actions for all purposes, including trial.

15        The Court has approved a modified version of the proposed Order Granting Plaintiff Aletti

16  Gestielle SGR, S.P.A.'s Motion to Consolidate All Related Actions for All Purposes, which is being

17  issued in conjunction with this Order. This proposed order lists all the lawsuits to be consolidated and

18

19

20

---

21      [3] The eleven actions related to the above-entitled action are: *Monzo, et al. v. Ariba, Inc., et al*, No. C-03-00335 JF; *Lapin v. Ariba, Inc., et al.*, No. C-03-00340 JF, *Azvalinsky v. Ariba, Inc, et*

22  *al.*, No. C-03-00350 JF; *Dabrowski v. Ariba, Inc., et al.*, No. C-03-00386 JF; *Stagliano, et al. v.*

23  *Ariba, Inc., et al.*, No. C-03-00404 JF; *Kim v. Ariba, Inc., et al.*, No. C-03-00417 JF; *Meisel v. Ariba, Inc., et al.*, No. C-03-00441 JF; *Gross v. Ariba, Inc., et al.*, No. C-03-00451 JF; *LNCY*

24  *Park Rite, Inc. v. Ariba, Inc., et al.*, No. C-03-00454 JF; *Kraus v. Ariba, Inc., et al.*, No. C-03-

25  00560 JF; and *Becht v. Ariba, Inc., et al.*, No. C-03-00616 JF.
    In addition, two derivative actions (*Bernhardt v. Krach, et al.*, No. C-03-02172 JF, and

26  *Cypcar v. Krach, et al.*, No. C-03-02399 JF) that are related to this action have been consolidated as

27  *In re Ariba, Inc. Derivative Litigation*, No. C-03-2172 JF. This order does not affect the derivative litigation.

28
                                      3

1   provides for the handling of any later-filed cases.[4]

2

3   **C. Appointment of Lead Plaintiff**

4       The PSLRA requires that the Court "appoint as lead plaintiff the member or members of the

5   purported plaintiff class that the court determines to be most capable of adequately representing the

6   interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(I).  "In making this determination, the court is

7   to apply a rebuttable presumption that the most adequate plaintiff is the applicant who has the largest

8   financial interest in the relief sought and otherwise meets the requirements of Rule 23 of the Federal

9   Rules of Civil Procedure." *Z-Seven Fund, Inc. v. Motorcar Parts & Accessories*, 231 F.3d 1215,

10  1217-18 (9th Cir. 2000).  This presumption may be rebutted by evidence that the applicant: (1) will not

11  fairly and adequately protect the interests of the class; or (2) is subject to unique defenses. *Id.* (citing

12  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)).

13      Six plaintiffs or groups of plaintiffs have filed motions seeking appointment as lead plaintiff in this

14  litigation, four of whom subsequently withdrew their motions.  The only two applicants for appointment

15  as lead plaintiff who remain are an Italian investment fund, Aletti Gestielle SGR, s.p.a. ("Aletti"), and a

16  group of three carpenters' pension funds comprised of the Massachusetts State Carpenters Pension

17  Fund, the Massachusetts State Guaranteed Annuity Fund, and the United Brotherhood of Carpenters

18  Pension Fund (collectively "the Carpenters Group").

19      **1. Appropriateness of Group Plaintiff**

20      The PSLRA provides explicitly that a "member or members" of the putative class or a "person

21  or group of persons" may be the most adequate plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(I), (B)(iii)(I).

22  The Court first must determine whether the Carpenters Group, which claims combined losses of more

23  _____

24      [4] The moving parties request that the Court order the preservation of documents related to this
25  litigation.  Defendants object on the ground that such an order is unnecessary and inappropriate in light
    of the parties' obligations under the law.  The Court agrees with the moving parties that counsel for the
26  parties should notify their clients of their document preservation obligations pursuant to the federal
    securities laws and the local rules.  In all other respects, however, the Court denies the moving parties'
27  request.

28                                          4

1  than $2.3 million, is the type of group that is appropriate for appointment as lead plaintiff under the

2  PSLRA. In other words, can the losses of the individual plaintiffs that comprise the Carpenters Group

3  be aggregated into group losses to create a lead plaintiff group? Despite the Carpenters Group's

4  assertions to the contrary, Aletti contends that the Carpenters Group is an unrelated group of investors

5  that was assembled solely for this litigation.

6      Several courts in this district have considered what type of group is appropriate for

7  appointment as lead plaintiff under the PSLRA. In *Aronson v. McKesson HBOC, Inc.*, 79 F.Supp.2d

8  1146 (N.D. Cal. 1999), the court adopted a narrow view of the term "group" that forbids aggregation

9  of unrelated plaintiffs. *Id.* at 1153. Under that definition, an acceptable group "has a meaningful

10 relationship preceding the litigation, and is unified by more than the mere happenstance of having bought

11 the same securities." *Id.* In *In re Network Associates, Inc. Sec. Litig.*, 76 F.Supp.2d 1017 (N.D.

12 Cal. 1999), the court adopted a similarly narrow view of the term "group." *Id.* at 1023-27. And in *In*

13 *re Critical Path, Inc. Sec. Litig.*, 156 F.Supp.2d 1102 (N.D. Cal. 2001), the court held that a group

14 is unacceptable "unless its members have a relationship that predates the litigation." *Id.* at 1111.

15     The undersigned considered the same issue in *Bowman v. Legato*, 195 F.R.D. 655 (N.D. Cal.

16 2000), where a group of investors sought appointment as lead plaintiff. This Court agreed with the

17 holdings of *McKesson* and *Network Associates* that "the phrases 'members' and 'group of persons'

18 must be read in the context of the overall scheme and purpose of the [PSLRA]," and noted that "[i]t is

19 beyond dispute that one of the [PSLRA's] primary purposes was to eradicate lawyer-driven securities-

20 fraud class actions." *Id.* at 658. The Court found that the group proposed as lead plaintiff, which was

21 comprised of two institutional investors and four individuals, was not an appropriate group within the

22 meaning of the PSLRA because its members had no meaningful pre-existing relationship and it "was

23 solicited and created by the Milberg [Weiss] firm solely for the purpose of obtaining appointment as

24 lead plaintiff." *Id.*

25     The Carpenters Group notes that in *In re Versata, Inc. Sec. Litig.*, No. C 01-1439 SI, 2001

26 WL 34012374 (N.D. Cal. Aug. 20, 2001), the court adopted a less strict definition of "group." In

27 *Versata*, the court held that "[r]equiring a pre-litigation relationship, though appealing in its simplicity, is

28

5

Case No. C-03-00277 JF
ORDER CONSOLIDATING RELATED ACTIONS, APPOINTING LEAD PLAINTIFF, AND APPROVING LEAD
PLAINTIFF'S COUNSEL
(JFLC3)

1    too rigid" and that "under appropriate circumstances small groups, whether or not they have any pre-

2    litigation relationship" may aggregate their financial losses. *Id.* at \*5. The Carpenters Group relies on

3    *Steiner v. Aurora Foods, Inc.*, No. 00-CV-602, 2000 WL 33911305 (N.D. Cal. June 5, 2000),

4    where the court appointed as lead plaintiff a group of four investors that included three institutional

5    investors. *Id.* at \*1, \*3. However, it is unclear from that decision whether there was a pre-litigation

6    relationship between the members of the group appointed as lead plaintiff. The Carpenters Group also

7    relies on an unpublished decision in *Weisz v. Calpine Corp.*, No C-02-1200 SBA (N.D. Cal. Aug.

8    19, 2002), Ex. A to Declaration of Dennis J. Herman in support of the Carpenter Group's reply, in

9    which the court appointed as co-lead plaintiffs an institutional investor and an individual investor. In that

10    case, however, both of the plaintiffs had requested appointment as sole lead plaintiff; the court

11    appointed co-lead plaintiffs because it found none of the lead plaintiff applicants to be satisfactory. *Id.*

12    at 8-13.

13        As it did in *Bowman*, this Court adopts the narrower view of the term "group" as articulated in

14    *McKesson* and *Network Associates*: a group is unacceptable unless its members had a meaningful

15    relationship preceding the litigation. Here, the Carpenters Group is comprised of the Massachusetts

16    State Carpenters Pension Fund, the Massachusetts State Guaranteed Annuity Fund, and the United

17    Brotherhood of Carpenters Pension Fund. The two Massachusetts funds manage pension and annuity

18    funds for the benefit of carpenter union members in New England; the United Brotherhood of

19    Carpenters Fund is a national fund that was established for the benefit of the officers and

20    representatives of the union and its affiliates. The two Massachusetts funds are managed by the same

21    board of trustees, which includes nine representatives who are beneficiaries of the national fund.

22    Carpenter union members are eligible to participate in both Massachusetts funds and may transfer their

23    retirement assets between the two funds. In addition, the Massachusetts funds and the national fund

24    had a pre-existing relationship with the international carpenters union. It is clear that the two

25    Massachusetts funds had a substantial pre-existing relationship and they have, in fact, previously sought

26    to serve as lead plaintiff in other securities fraud class action litigation. The relationship between the two

27    Massachusetts funds and the national fund is more attenuated. Nonetheless, the Court finds and

28

6

Case No. C-03-00277 JF
ORDER CONSOLIDATING RELATED ACTIONS, APPOINTING LEAD PLAINTIFF, AND APPROVING LEAD
PLAINTIFF'S COUNSEL
(JFLC3)

1  concludes that the Carpenters Group is a small, cohesive group of related institutional investors and that

2  its members had a sufficiently well-established pre-litigation relationship. It thus is an appropriate group

3  for appointment as lead plaintiff within the meaning of the PSLRA.

4      **2. Calculation of Largest Financial Interest**

5      Aletti and the Carpenters Group dispute the appropriate methodology to use in calculating

6  financial losses. In its moving papers, Aletti claimed losses in the amount of $4,782,768.00. Aletti's

7  original loss calculation, however, erroneously included one purchase transaction of 20,000 shares on

8  January 4, 2000 that occurred before the start of the class period. *See* Ariba, Inc. Estimated Losses,

9  Ex. C to Declaration of Sean M. Handler in support of Aletti's motion. In its reply brief, Aletti revised

10 its loss calculation by excluding the transaction at issue, amending its claimed losses to $4,914,294.01,

11 an increase of more than $130,000.00. Aletti arrived at this revised figure by eliminating from its loss

12 calculation the January 4, 2000 purchase transaction, for which it claimed a cost of $3,770,032.00, as

13 well as its first two class period sales transactions. *See* Amended Ariba, Inc. Estimated Losses, Ex. A

14 to Declaration of Sean M. Handler in support of Aletti's reply. Those sales transactions, which

15 occurred on March 31, 2000 and April 3, 2000, resulted in sales of 15,000 shares for $2,966,526.15

16 and 10,000 shares for $935,031.80, respectively. *Id.* Although Aletti's papers do not make clear

17 what methodology it used to calculate its losses, it clarified at oral argument that it used the first-in, first-

18 out ("FIFO") methodology to cancel the effect of the January 4, 2000 purchase transaction with its first

19 two class period sales transactions. Aletti claims such accounting, which results in estimated losses of

20 more than $4.9 million, is appropriate because it held no shares before January 4, 2000.

21     FIFO methodology, which chronologically matches specific purchases of stock with specific

22 sales of stock, is an accepted accounting approach for calculating losses. *See Chill v. Green Tree*

23 *Financial Corp.*, 181 F.R.D. 398, 411 (D. Minn. 1998); *In re Chipcom Corp.*, 1997 WL 1102329,

24 *24 (D. Mass. June 26, 1997). Aletti asserts that FIFO methodology is the most accurate means of

25 estimating losses based on damages shares because it held a significant number of shares before the

26 start of the class period.

27     Although the Carpenters Group does not dispute the accuracy of Aletti's revised loss

28

                                              7

1  calculation using FIFO methodology, it contends that Aletti did not use such methodology properly

2  when it prepared its original loss calculation, and that the Court should not consider Aletti's revised loss

3  calculation. The Carpenters Group contends that Aletti's estimated losses should be determined by

4  calculating the number of net shares purchased during the class period. In *Network Associates*, the

5  court held that the best approximation of each lead plaintiff applicant's financial interest in the relief

6  sought was the number of net shares purchased during the class period, i.e., the number of shares sold

7  during class period subtracted from the number of shares purchased during class period. 76 F.Supp.2d

8  at 1027. Aletti does not dispute that if this net share methodology is applied, its claimed losses are only

9  $1,109,536.00.[5] This appears to be the same methodology used by the Carpenters Group to estimate

10  its losses. *See* Movants' Purchases and Losses and Certification of Named Plaintiffs, Exs. A and B to

11  Declaration of Dennis J. Herman in support of the Carpenters Group's motion. The losses sustained by

12  the Carpenters Group calculated using the net share methodology – $2,383,256.00 – is the sum of the

13  losses of the three funds: Massachusetts State Carpenters Pension Fund $975,479.00; Massachusetts

14  State Guaranteed Annuity Fund $474,472.00; and United Brotherhood of Carpenters Pension Fund

15  $933,305.00.

16      After consideration of the circumstances and the class period trading activity of the lead plaintiff

17  applicants, the Court concludes that FIFO methodology is the best approximation of estimated losses

18  here. As discussed above, Aletti held 20,000 shares before the start of the class period. FIFO

19  methodology dictates that the proceeds from the first 20,000 shares sold by Aletti during the class

20  period be excluded from the loss calculation to cancel the effect of the January 4, 2000 purchase

21  transaction. In its amended loss calculation, Aletti has in fact excluded the first *25,000* shares sold

22  rather than the first 20,000 shares. This error does not prejudice the Carpenters Group, however, as it

23  only decreases the amount of losses sustained by Aletti. The Court concludes that the best

24  approximation of Aletti's claimed losses is $4,914,294.01.

25

26  ———————————————

27      [5] This amount is calculated by subtracting the cost of the January 4, 2000 purchase transaction ($3,770,032.00) from Aletti's original loss calculation ($4,782,768.00).

28

Case No. C-03-00277 JF
ORDER CONSOLIDATING RELATED ACTIONS, APPOINTING LEAD PLAINTIFF, AND APPROVING LEAD
PLAINTIFF'S COUNSEL
(JFLC3)

1    It appears from the information submitted by the Carpenters Group that only the national fund

2  held any shares before the start of the class period.  Because it held 1,000 shares before the start of the

3  class period, FIFO methodology dictates that the proceeds from the first 1,000 shares sold by the

4  national fund during the class period be excluded from the loss calculation.  The national fund's only

5  class period activity was one purchase transaction of 7,300 shares on July 20, 2000 and one sales

6  transaction of 7,300 shares on April 11, 2001.  Exclusion of 1,000 shares sold on April 11, 2001

7  increases the national fund's estimated losses by $5,800.00.  The Court thus concludes that the best

8  approximation of the Carpenter Group's claimed losses is $2,389,056.00.  Because it has the largest

9  financial interest in the relief sought and otherwise satisfies the requirements of Federal Rule of Civil

10  Procedure 23, Aletti is presumptively the most adequate lead plaintiff.[6]  The Court next considers

11  whether the evidence before it is sufficient to rebut this presumption.

12    **3. Rebuttal of Most Adequate Lead Plaintiff Presumption**

13    The Carpenters Group argues that Aletti's alleged failure to demonstrate its independence from

14  counsel renders it inadequate to represent the class.  Aletti proposes the law firm of Schiffrin &

15  Barroway, LLP as lead counsel and the law firm of Kaplan Fox & Kilsheimer, LLP  as liaison counsel.

16  Kaplan also was proposed as liaison counsel for Herschel Potts and Clifford Ardito, which

17  subsequently withdrew its application for lead plaintiff.  The Carpenters Group claims that Kaplan has a

18  conflict of interest because it submitted separate briefs in which it took conflicting positions that the

19  Potts and Ardito group and Aletti each has the greatest financial stake and should be appointed lead

20  plaintiff, and that Aletti is an inadequate lead plaintiff because it failed to prevent such behavior by its

21  counsel.  The Carpenters Group relies on two unpublished decisions in *In re S1 Corp. Sec. Litig.*, No.

22  1:00-CV-1156-BBM (N.D. Ga. Oct. 3, 2000, Oct. 26, 2000), Ex. A to Declaration of Dennis J.

23  Herman in support of the Carpenters Group's combined opposition, in which the court disqualified a

24  law firm that sought appointment as co-lead counsel for one lead plaintiff applicant and also sought

25  _____

26    [6] Aletti contends that the Carpenters Group is subject to unique defenses and thus is not fit for
   appointment as lead plaintiff.  In light of the Court's disposition of the pending motions, it need not
27  address this issue.

28                                                9

Case No. C-03-00277 JF
ORDER CONSOLIDATING RELATED ACTIONS, APPOINTING LEAD PLAINTIFF, AND APPROVING LEAD
PLAINTIFF'S COUNSEL
(JFLC3)

1   appointment as local counsel for a different lead plaintiff applicant.  Aletti argues that because the Potts

2   and Ardito group withdrew its motion seeking appointment as lead plaintiff, Kaplan has no conflict of

3   interest.  Aletti also emphasizes that Kaplan is proposed liaison counsel, not lead counsel, and thus any

4   conflict is immaterial.  Aletti relies on *Singer v. Nicor*, No. 02 C 5168, 2002 WL 31356419 (N.D. Ill.

5   Oct. 17, 2002), in which the court concluded that a lead plaintiff applicant's selection of local counsel

6   who also served as local counsel for another lead plaintiff applicant did not disqualify the first lead

7   plaintiff applicant.  The situation here is more analogous to *Singer* because Kaplan originally was

8   proposed as liaison counsel for two different lead plaintiff applicants.  The Court finds that although

9   Kaplan submitted briefs as liaison counsel on behalf of two separate lead plaintiff applicants, its conduct

10  does not prevent Aletti from adequately representing the interests of the class.

11          The Carpenters Group also attacks Aletti as inadequate to represent the class as lead plaintiff

12  because it is a foreign entity that does not have an office located in the United States, and because it is

13  not part of a lead plaintiff applicant group that includes a domestic investor.  The Carpenters Group

14  contends that it will be difficult for Aletti to effectively coordinate and oversee this litigation.  However,

15  "[i]n light of today's travel and communication methods, the geographical location of [foreign lead

16  plaintiff applicants] are irrelevant." *Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 505 (S.D. Fla.

17  2002) (rejecting challenge to lead plaintiff group applicant that included foreign investors).  Aletti relies

18  on *In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.*, 209 F.R.D. 353 (S.D. N.Y. 2002), in which

19  the court appointed as sole lead plaintiff a foreign institutional investor.[7]  While the Court is aware that

20  foreign investors typically have been appointed as lead plaintiffs as part of groups that include at least

21  one domestic investor or when they have a significant domestic presence, there is no indication in the

22  PSLRA that the mere fact that a foreign lead plaintiff applicant has no domestic presence renders it an

23  _____

24          [7] Several other cases relied on by Aletti are distinguishable.  In *Versata*, the court appointed as

25  lead plaintiff a group of investors comprised of a Swiss investment firm, a Mexican investment firm with
    a California branch office, and an individual investor from California.  Unlike Aletti, that group of

26  investors had substantial domestic ties.  In *Newman*, the court appointed as lead plaintiff a group that
    included two European banks.  However, that group also included three individuals who appear to

27  have been American investors.

28                                                      10

1  inadequate lead plaintiff. The Court concludes that the Carpenters Group has failed to rebut the

2  presumption that Aletti is the most adequate lead plaintiff. Accordingly, the Court will appoint Aletti as

3  sole lead plaintiff in this consolidated action.

4

5  **D. Approval of Lead Plaintiffs' Counsel**

6      Aletti proposes the law firm of Schiffrin & Barroway, LLP as lead plaintiff's counsel and the

7  law firm of Kaplan Fox & Kilsheimer, LLP as lead plaintiff's liaison counsel. Based upon the evidence

8  in the record, the Court is satisfied that Aletti's choice of counsel is well qualified to represent the

9  plaintiff class. Accordingly, Court will approve the law firm of Schiffrin & Barroway, LLP as lead

10  plaintiff's counsel and the law firm of Kaplan Fox & Kilsheimer, LLP as lead plaintiff's liaison counsel.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C-03-00277 JF
ORDER CONSOLIDATING RELATED ACTIONS, APPOINTING LEAD PLAINTIFF, AND APPROVING LEAD
PLAINTIFF'S COUNSEL
(JFLC3)

## V. DISPOSITION

Good cause therefore appearing, IT IS HEREBY ORDERED that:

(1) The related actions[8] are consolidated into Case No. 03-00277 JF for all purposes, including trial. The docket in Case No. 03-00277 JF shall constitute the Master Docket for this litigation. The file in Case No. 03-00277 JF shall constitute the Master File for every action in the consolidated action and all documents shall be filed in Case No. 03-00277 JF;

(2) Aletti Gestielle SGR, S.P.A. is appointed lead plaintiff; and

(3) Lead plaintiff's choice of lead counsel and liaison counsel is approved. The law firm of Schiffrin & Barroway, LLP shall serve as lead plaintiff's counsel and the law firm of Kaplan Fox & Kilsheimer, LLP shall serve as lead plaintiff's liaison counsel. Lead counsel shall have the authority to speak for, and enter into agreements on behalf of, plaintiffs on all matters regarding this litigation including, but not limited to, pre-trial proceedings, discovery, and settlement negotiations. Lead counsel shall manage the prosecution of this litigation to avoid duplicative or unproductive activities. Lead counsel shall be responsible for coordination of all activities and appearances on behalf of plaintiffs and for dissemination of notices and orders. Lead counsel shall be responsible for communications with the Court. Defendants' counsel may rely upon agreements made with lead counsel and such agreements shall be binding on all plaintiffs.

As provided for in the Order Granting Plaintiff Aletti Gestielle SGR, S.P.A.'s Motion to Consolidate Related Actions, issued in conjunction with this order, lead plaintiff shall file and serve upon Defendants a single amended consolidated class action complaint within sixty (60) days of the date of this order. Defendants shall answer, move to dismiss, or otherwise respond to the amended

---

[8] The twelve related actions are: *Vangsgard v. Ariba, Inc., et al.*, No. C-03-00277 JF, *Monzo, et al. v. Ariba, Inc., et al*, No. C-03-00335 JF; *Lapin v. Ariba, Inc., et al.*, No. C-03-00340 JF; *Azvalinsky v. Ariba, Inc, et al.*, No. C-03-00350 JF; *Dabrowski v. Ariba, Inc., et al.*, No. C-03-00386 JF; *Stagliano, et al. v. Ariba, Inc., et al.*, No. C-03-00404 JF; *Kim v. Ariba, Inc., et al.*, No. C-03-00417 JF; *Meisel v. Ariba, Inc., et al.*, No. C-03-00441 JF; *Gross v. Ariba, Inc., et al.*, No. C-03-00451 JF; *LNCY Park Rite, Inc. v. Ariba, Inc., et al.*, No. C-03-00454 JF; *Kraus v. Ariba, Inc., et al.*, No. C-03-00560 JF; and *Becht v. Ariba, Inc., et al.*, No. C-03-00616 JF.

12

Case No. C-03-00277 JF
ORDER CONSOLIDATING RELATED ACTIONS, APPOINTING LEAD PLAINTIFF, AND APPROVING LEAD PLAINTIFF'S COUNSEL
(JFLC3)

1    consolidated class action complaint within sixty (60) days after receipt of such complaint.  Lead Plaintiff

2    shall file any opposition to a motion to dismiss filed by Defendants within sixty (60) days after such

3    motion is filed, and Defendants shall file any reply within forty-five (45) days after any opposition is

4    filed.

5

6

7    DATED:  July 11, 2003

8                                                            (electronic signature authorized)
                                                            _____
9                                                            JEREMY FOGEL
                                                            United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C-03-00277 JF
ORDER CONSOLIDATING RELATED ACTIONS, APPOINTING LEAD PLAINTIFF, AND APPROVING LEAD
PLAINTIFF'S COUNSEL
(JFLC3)

1    Copies of this Order have been served upon the following persons:

2

3    Randi D. Bandman
     randib@mwbhl.com
4
     Patrice L. Bishop
5    service@secfraud.com

6    Michael D. Braun
7    service@secfraud.com

8    Lionel Z. Glancy
     info@glancylaw.com
9
     Michael M. Goldberg
10   info@glancylaw.com

11   Robert S. Green
12   rsg@classcounsel.com CAND.USCOURTS@CLASSCOUNSEL.COM

13   Francis M. Gregorek
     gregorek@whafh.com
14
     Marc S. Henzel
15   mhenzel182@aol.com

16   Dennis J. Herman
17   dennish@mwbhl.com

18   Shirley H. Huang
     shirleyh@mwbhl.com
19
     Robert A. Jigarjian
20   raj@classcounsel.com CAND.USCOURTS@CLASSCOUNSEL.COM

21   Raymond A. Just
22   rjust@sherman.com cflood@shearman.com

23   Reed R. Kathrein
     reedk@mwbhl.com
24
     Bruce B. Kelson
25   bkelson@shearman.com cflood@shearman.com

26   Laurence D. King
27   lking@kaplanfox.com

28                                    14

     Case No. C-03-00277 JF
     ORDER CONSOLIDATING RELATED ACTIONS, APPOINTING LEAD PLAINTIFF, AND APPROVING LEAD
     PLAINTIFF'S COUNSEL
     (JFLC3)

1

William S. Lerach
2   billl@mwbhl.com regank@mwbhl.com susannah@mwbhl.com

3   Betsy C. Manifold
    manifold@whafh.com
4

5   Azra Z. Mehdi
    azram@mwbhl.com azram@mwbhl.com
6

    Behram V. Parekh
7   service@wyca.com

8   Darren J. Robbins
9   DRobbins@mwbhl.com

10  Glen W. Schofield
    gschofield@rubyschofield.com bug@rubyschofield.com
11

    David R. Scott
12  drscott@scott-scott.com

13  Kevin J. Yourman
14  service@wyca.com

15

16  Counsel for Lead Plaintiff are responsible for distributing copies of this Order to counsel of record who
    have not registered for electronic filing under the Court's Electronic Case File (ECF) program.
17

18

19

20

21

22

23

24

25

26

27

28

Case No. C-03-00277 JF
ORDER CONSOLIDATING RELATED ACTIONS, APPOINTING LEAD PLAINTIFF, AND APPROVING LEAD
PLAINTIFF'S COUNSEL
(JFLC3)