UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN RE VASO ACTIVE PHARMACEUTICALS ) Consolidated Case No. 04-10708-RCL
SECURITIES LITIGATION )

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION OF THE CHOI GROUP TO BE APPOINTED LEAD PLAINTIFF
AND FOR APPROVAL OF LEAD PLAINTIFF'S SELECTION OF
<u>LEAD COUNSEL AND LIAISON COUNSEL</u>**

**SHAPIRO HABER & URMY, LLP**
Thomas G. Shapiro (BBO# 454680)
Theodore M. Hess-Mahan (BBO# 557109)
75 State Street
Boston, MA 02109
Telephone:     (617) 439-3939
Facsimile:     (617) 439-0134

**Proposed Liaison Counsel**

**SCHIFFRIN & BARROWAY, LLP**
Stuart L. Berman *(pro hac vice)*
Darren J. Check *(pro hac vice)*
Sean M. Handler *(pro hac vice)*
Three Bala Plaza East, Suite 400
Bala Cynwyd, PA 19004
Telephone:     (610) 667-7706
Facsimile:     (610) 667-7056

**Proposed Lead Counsel**

Dated: July 9, 2004

Vaso Active Pharmaceuticals, Inc. ("Vaso Active" or the "Company") investors Edwin Choi, Richard Cheng and Joe Huback (the "Choi Group") respectfully submit this reply memorandum of law in further support of their motion to consolidate the related actions, appoint lead plaintiff and approve lead plaintiff's selection of lead counsel and liaison counsel.[/1]  More specifically, the Choi Group hereby replies to opposition briefs filed by the Chae Group, the Merturi Group and Brody – the *only* movants who have opposed the Choi Group's application seeking appointment as lead plaintiff and approval of its selection of counsel.[/2]

I.   **PRELIMINARY STATEMENT**

The Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a), is neither "overly complex nor ambiguous" in providing a "*clear path* that district courts *must follow* in appointing a lead plaintiff." *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002) (emphasis added).  First, the court must determine which "person or *group of persons*" that "has either filed the complaint or made a motion," "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I) (emphasis added); *In re Lernout & Hauspie Securities Litigation*, 138 F. Supp. 2d 39, 42 (D. Mass. 2001).

---

[/1]   In all, nine applications for appointment of lead plaintiff were filed by: (i) the Choi Group; (ii) Ki & Young Chae, Joseph Salmassi and Norman Brodeur (the "Chae Group"); (iii) Modhi Gude, Arji Gauthami, Scott Brook, Shel T. Diamond and Joyendu Mukherjee (the "Vaso Active Plaintiff Group"); (iv) Luz Merturi, Brenda Reinemund (on behalf of Glen Reinemund), Derek Bauer, Maria Pia Hellrigl and Hector Tarazona (the "Merturi Group"); (v) Kourosh Alipour, Timmy Smith and Douglas Weymouth (the "Alipour Group"); (vi) David B. Brody, as Co-Trustee of the Brody Family Revocable Trust ("Brody"); (vii) Michael Berteletti ("Berteletti"); (viii) Bruce A. Yungman and Ronnie Young (the "Yungman Group"); and (ix) Eduard Slinin ("Slinin").

[/2]   The lead plaintiff application filed by Slinin has been withdrawn.

Based on the few oppositions filed as well as the silence of the other original movants, there is no dispute that the Choi Group, which suffered losses of approximately $339,239, has the largest financial interest of all movants seeking appointment as lead plaintiff. Indeed, the Chae Group, which claims the second-largest financial interest, has explicitly acknowledged that the Choi Group "has the largest financial interest and appears otherwise capable of running this litigation."[3]

Once the Court has determined which movant has the largest financial interest, the Court must then focus its attention only on *that* movant to determine whether that movant has met its *prima facie* burden of satisfying the typicality and adequacy requirements of Rule 23. *Cavanaugh*, 306 F.3d at 730. Consistent with the PSLRA's goal of identifying the "most adequate plaintiff," the Choi Group's members have each: (i) provided sworn certifications attesting to their trades in Vaso Active during the relevant class period as well as their desire to serve as a representative party; (ii) filed a timely motion seeking appointment as lead plaintiff and approval of their selection of counsel; and (iii) submitted a joint declaration which provides background as to their qualifications and how they intend to cohesively fulfill their responsibilities as lead plaintiff.[4] Because the Choi Group has the largest financial interest and

---

[3]   *See* Memorandum of Law in Further Support of the Motion of the Chae Group to be Appointed Lead Plaintiff and for Approval of Lead Plaintiff's Selection of Lead and Liaison Counsel ("Chae Group Opposition") at 2.

[4]   *See* Joint Declaration of Edwin Choi, Richard Cheng, and Joe Huback in Further Support of the Motion of the Choi Group to be Appointed Lead Plaintiffs and for Approval of Lead Plaintiffs' Selection of Lead Counsel and Liaison Counsel ("Joint Declaration") (attached as Exhibit A to Choi Group Memorandum of Law In Opposition to Competing Motions).

has sufficiently met its *prima facie* burden of satisfying Rule 23, it is the presumptive most adequate plaintiff.

Last, competing movants have an opportunity to rebut the presumptive most adequate plaintiff's showing of typicality and adequacy. *Cavanaugh*, 306 F.3d at 730. Here, only the Merturi Group and Brody have attempted to rebut the presumption favoring the Choi Group.[5] Generally, these movants have asserted that one or more members of the Choi Group are day traders, and therefore may be subject to unique defenses.[6] Merturi Group Opposition at 5-6;[7] Brody Opposition at 6-7.[8] These assertions, based solely on the fact that multiple transactions were executed on one day, are simply wrong.[9] Messrs. Choi and Cheng (both of whom are alleged to be day traders) are a physician and general contractor, respectively. *See* Joint

---

[5] The Chae Group, through its opposition, has explicitly supported the appointment of the Choi Group as lead plaintiff. *See* Chae Group Opposition.

[6] A day-trader is a "[v]ery active stock trader who holds positions for a very short time and makes several trades each day. Day traders are individuals who are trying to make a career out of buying and selling stocks very quickly, often making dozens of trades in a single day and generally closing all positions at the end of each day. Day trading can be costly, since the commissions and the bid/ask spread add up when there are so many transactions." *Taubenfeld v. Career Education Corporation*, No. 03 C 8884, 2004 U.S. Dist. LEXIS 4363, at *10, n.2 (N.D. Ill. March 19, 2004) (citation omitted).

[7] Merturi Group's Memorandum of Law in Opposition to Competing Motions, and in Further Support of Its Motion for Consolidation, Appointment as Co-Lead Plaintiff, and Approval of its Selection of Co-Lead Counsel and Liaison Counsel ("Merturi Group Opposition").

[8] Memorandum of Law in Opposition to Competing Motions for Appointment of Lead Plaintiff, Lead Counsel and Liaison Counsel and in Further Support of the Motion of David B. Brody, as Co-Trustee of the Brody Family Revocable Trust, To Appoint Lead Plaintiff, Lead Counsel and Liaison Counsel (" Brody Opposition").

[9] Brody's claim that Mr. Cheng is a daytrader is particularly absurd because this argument is based entirely on one day's transactions where Mr. Cheng only made *purchases*. Brody Opposition at 7.

Declaration at ¶¶ 2, 3. Further, of the approximate 76 trading days covering the relevant class period in this action, Mr. Choi and Mr. Cheng each executed trades on only 5 days. Moreover, at the conclusion of the relevant class period, *Messrs. Choi and Cheng retained 21,000 shares and 20,000 shares of Vaso Active, respectively*. These facts hardly resemble sophisticated, active day traders who typically do not hold stocks as investments. *See Securities and Exchange Commission Special Study: Report of Examination of Day-Trading Broker-Dealers*, February 25, 2000 at 9 ("The principal characteristic that distinguishes day traders from other market participants is their mind-set. Day traders ... are not investors, due to the short time they hold positions.") (attached as Exhibit A).

The Merturi Group makes an additional assertion that Mr. Huback's certification is defective because one date on which two sales were purportedly executed *after the relevant class period* fell on a Saturday. Merturi Group Opposition at 6-8. As reflected in Mr. Huback's trade confirmations submitted herewith, the date on which those sales were executed was April 22, 2004, not April 24, 2004, as reflected on Mr. Huback's certification.[10] *See* Mr. Huback's trade confirmations (attached as Exhibit C).[11] This argument falls far short of proving that Mr.

---

[10] When preparing his original certification, Mr. Huback inadvertently transcribed one wrong date for two *post class period* sales. Notably, the amount of shares purchased and corresponding prices were accurate; as a result, Mr. Huback's (and the group's) losses are reduced by only $350 to account for a slightly different statutory set-off price for shares sold within 90 days after the close of the class period. *See* corrected loss chart (attached as Exhibit B).

[11] Mr. Huback intends to supplement the record with a corrected certification. Notwithstanding this harmless error, the PSLRA only requires that plaintiffs provide all transactions in the security at issue "during the class period specified in the complaint." 15 U.S.C. §78u-4(a)(2)(A)(iv). All movants have acknowledged that the relevant class period for this action ends on March 31, 2004; therefore, as corroborated by the trading confirmations provided, Mr. Huback has accurately provided all class period transactions.

Huback (or the Choi Group) is not an adequate lead plaintiff. *See Max Bruckner et. al. v. Xcel Energy, Inc.*, No. 02-2677(DSD/FLN), slip op. at 20-21 (D. Minn. Nov. 12, 2002) (attached as Exhibit D) (court rejected argument that faulty certification was basis to disqualify lead plaintiff); *Chill v. Green Tree*, 181 F.R.D. 398, 410-11 (D. Minn. 1999) (court allowed lead plaintiff movant to correct "technical deficiencies" in initial certification with supplemental filing).

## II. ARGUMENT

### A. The Choi Group Is The Presumptive Most Adequate Lead Plaintiff

#### 1. The Choi Group Has The Largest Financial Interest

With $339,239 in financial losses, no competing movant or movant group claims a larger financial interest in this litigation than the Choi Group. In fact, the Choe Group, which claims financial losses of $326,902 equating to the second-largest financial interest, has explicitly recognized that the Choi Group "has the largest financial interest and appears otherwise capable of running this litigation." Choe Group Opposition at 2. Of the remaining two movants who have opposed the Choi Group's lead plaintiff application, the Merturi Group claims losses of $196,323 and Brody claims losses of $46,736.[12]

Brody's assertion that the Choi Group (and every other competing movant) used the wrong (too low) mean trading price to calculate losses for retained shares is patently wrong, and unsupportable under the PSLRA and relevant case precedent. Nowhere does the PSLRA provide that the mean trading price used to value retained shares is "weighted." Rather, the PSLRA

---

[12] It is worth noting that every member of the Choi Group suffered greater losses than Brody.

specifically provides that "the 'mean trading price' of a security shall be an average of the daily trading price of that security, determined as of the close of the market each day . . . ." 15 U.S.C. §78u-4(e)(3). This is precisely how the Choi Group determined the mean trading price for calculating losses. Accordingly, this argument in its entirety should be rejected.

### 2. The Choi Group Satisfies All Requirements Of Rule 23

In addition to submitting a sworn certification – the *only prerequisite* for lead plaintiff appointment – each member of the Choi Group has submitted a sworn joint declaration attesting to their knowledge and understanding of their responsibilities as a lead plaintiff as well as how they intend to manage and lead this litigation as a cohesive group. *See* Joint Declaration, ¶¶ 5 - 7.[13] Thus, the Choi Group has sufficiently met its threshold burden under Rule 23 and should be designated as the presumptive most adequate plaintiff.

### B. The Presumption That The Choi Group Is The Most Adequate Plaintiff Has Not Been Rebutted By Any Movant

Once the court designates a movant as the presumptive lead plaintiff, other movants have the opportunity to present *proof* that the presumptive lead plaintiff cannot meet the typicality and adequacy requirements of Rule 23. *Lernout,* 138 F. Supp. 2d at 42. Here, no competing movant has effectively rebutted the presumption favoring the Choi Group and consequently, the Choi Group should be appointed lead plaintiff.

---

[13] Without speaking to whether it is necessary for all plaintiffs to submit a declaration, as Brody suggests, the Choi Group is the only movant to have provided the Court with additional information which supports their adequacy as lead plaintiff. *See* Joint Declaration. Thus, any suggestion that the Choi Group is inadequate for not providing such a declaration is moot.

### 1. **The Choi Group Is Typical**

The standard for demonstrating typicality in this District, especially at this preliminary stage, is "not very substantial." *Abelson v. Strong*, No. 85-0592, MDL No. 584, 1987 U.S. Dist. LEXIS 7515, at *7-8 (D. Mass. July 30, 1987) (citation omitted). Rather, the plaintiffs' burden in proving typicality requires that "the named plaintiffs claims arise from the same events or course of conduct and involve the same legal theory as do the claims of the rest of the class." *Lernout*, 138 F. Supp. 2d at 46. As described in its initial lead plaintiff application, the Choi Group (1) purchased or acquired Vaso Active securities during the class period; (2) at prices allegedly artificially inflated by defendants' materially false and misleading statements and/or omissions; and (3) suffered damages thereby. Memorandum In Support Of Choi Group at 6. Moreover, all of the above-captioned actions are based on the same underlying conduct and allege the same legal theories. Thus, the Choi Group is a typical lead plaintiff.

Despite this low threshold for satisfying typicality, competing movants seize upon the trading of Messrs. Choi and Cheng and *speculate* that they are day traders who will have difficulty proving reliance. This assertion is simply wrong. The evidence reveals that Mr. Choi is a physician in California. Further, on only one occasion during the class period did Mr. Choi make more than three trades on a given day and, in fact, only traded Vaso Active stock on five days (of the approximate seventy-six trading days) during the class period. Significantly, during the relevant class period, Mr. Choi purchased 35,000 shares of Vaso Active stock and sold only 14,000 shares. Consequently, Mr. Choi retained 21,000 shares at the close of the class period. *See* Joint Declaration, ¶2; Mr. Choi's certification previously submitted.

Mr. Cheng is a general contractor in Hawaii. Like Mr. Choi, Mr. Cheng never made more than three trades on a given day except one. He too only traded Vaso Active stock on five days (of the approximate seventy-six trading days) during the class period. Also, during the relevant class period, Mr. Cheng purchased 22,500 shares of Vaso Active stock, sold only 2,500 shares, and therefore retained 20,000 shares. *See* Joint Declaration, ¶3; Mr. Cheng's certification previously submitted.

These facts refute all speculation that these individuals are day traders. *See Career Education Corporation*, 2004 U.S. Dist. LEXIS 4363, at *10-15 (court rejected argument that investor was a day trader where he purchased and sold stock in same day or shortly thereafter on several days during class period and had a full time job); *see also Securities and Exchange Commission Special Study: Report of Examination of Day-Trading Broker-Dealers*, February 25, 2000 at 9 ("Day traders ... are not investors, due to the short time they hold positions."); *Day Trading: Your Dollars at Risk,* at http://www.sec.gov/investor/pubs/daytips.htm ("[d]ay traders sit in front of computer screens and look for a stock that is either moving up or down in value. They want to ride the momentum of the stock and get out of the stock before it changes course.") (attached as Exhibit D).[/14]

---

[/14] Regardless, courts within this Circuit have repeatedly held that such slight factual differences in plaintiff's trading are insufficient to defeat typicality. *See, e.g., Tolan v. Computervision Corp.*, 696 F. Supp. 771, 778 (D. Mass 1988); *Schaffer, et al. v. The Timberland Co., et al.*, Civil No. 94-634-JD, 1996 U.S. Dist. LEXIS 5372, at *16 (D.N.H. 1996) ("[t]he fact that a named plaintiff employs an investment strategy different from those of the class does not render him atypical because it is of no consequence that the putative plaintiffs devised different investment strategies as a consequence of their reliance on the market.") (citations omitted).

## 2. The Choi Group Is Adequate

As the court in *Lernout*, stated:

> To meet the adequacy requirement plaintiffs must demonstrate that they have common interests and an absence of conflict with the class members and that the plaintiffs' attorneys are qualified, experienced and vigorously able to conduct the litigation.

*Lernout*, 138 F. Supp. 2d at 46. Competing movants have argued, rather ineffectively, that the Choi Group is not an adequate plaintiff only for the following reasons:

* Groups, like the Choi Group, are inappropriate to serve as lead plaintiff. (Brody Opposition at 3-6).

* The Choi Group's members have failed to provide the Court with some declaration in support of their appointment as lead plaintiff. (Brody Opposition at 4-5).

* Because Mr. Huback inadvertently transcribed one wrong post-class period date on his certification, he (and therefore the Choi Group) is inadequate. (Merturi Group Opposition at 6-8).

These arguments fall far short of "*proof*" required to rebut the statutory presumption favoring the Choi Group. First, as briefed previously, according to the PSLRA's plain language, the Securities and Exchange Commission ("SEC") and a vast majority of courts in this district and elsewhere, the PSLRA's statutory presumption applies to a "group that is small enough to be capable of effectively managing the litigation and the lawyers . . . [and] should be no more than three to five persons." *In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 216-17 (D.D.C. 1999) (quoting memorandum submitted by the SEC). *See also In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d Cir. 2001), *cert. denied, Mark v. Cal. Pub. Employees' Ret. Sys.*, 535 U.S. 929 (2002); Choi Group Opposition at 5-6. The Choi Group is precisely the size and type of group contemplated by the PSLRA and routinely appointed by courts in this District.

Second, the Choi Group is the only movant to provide the Court with supplemental information through their Joint Declaration. More specifically, the Joint Declaration offers background to the group's three members and emphasizes their understanding of the responsibilities and commitment with respect to serving as lead plaintiff. *See generally* Joint Declaration. Accordingly, Brody's argument is wrong or, at a minimum, moot.

Third, the fact that Mr. Huback erroneously transcribed one wrong date – for two sales trades which were made after the relevant class period – is hardly a basis to reject Mr. Huback (or the Choi Group) on adequacy grounds. *See Xcel Energy*, slip op. at 20-21 (attached as Exhibit E) (court permitted corrected certification and rejected argument that faulty certification was basis to disqualify lead plaintiff); *Chill*, 181 F.R.D. at 410-11 (court allowed lead plaintiff movant to correct "technical deficiencies" in initial certification with supplemental filing). *See also Vangsgard v. Ariba, Inc., et al.*, No. C-03-00277 JF, slip op. at 7-8 (N.D. Cal. July 11, 2003) (attached as Exhibit F) (court found no prejudice and accepted amended loss calculation); *In re Advance Tissue Sciences Litigation*, 184 F.R.D. 346, 351 n.12 (S.D. Cal. 1998) (court rejected argument that error in loss calculation should overcome statutory presumption favoring movant with largest financial losses). By way of comparison, the Merturi Group's citations to cases are either easily distinguishable – *e.g., In re Microstrategy Inc. Secs. Litig.*, 110 F. Supp 2d 427, 437 (E.D. Va. 2000) (court rejected plaintiff that filed "conclusory affidavit and a collection of indecipherable financial statements that purported to support the affidavit's conclusion"), *In re Eaton Vance Corp. Sec. Litig.*, 219 F.R.D. 38, 42 (D. Mass. 2003) (plaintiff failed to provide certification altogether), and *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998) (plaintiff failed to present any facts to support claim of having the largest financial

interest) – or actually *support* the appointment of the Choi Group – *e.g.*, *In re Williams Sec. Litig.*, 02-CV-72-H(m) slip op. at 7 (N.D. Okla. Jul 8, 2002) (court appointed movant with incorrect trading that was subsequently corrected) (attached as exhibit A to Merturi Group Memorandum of Law In Opposition).

Last, the suggestion by the Merturi Group that the Court should cherry-pick one plaintiff from among several groups and appoint its proposed lead counsel as co-lead counsel is neither consistent with the PSLRA's goal of appointing the "most adequate plaintiff" and permitting the lead plaintiff to select counsel, nor supported by relevant case precedent. *See* 15 U.S.C. § 78u-4 *et seq.*; *Jancovi v. DVI, Inc.,* 2003 U.S. Dist. LEXIS 22315, at *35-36 (E.D. Pa. Nov. 25, 2003). Simply put, no good reason or authority is provided to support this Court's concocting a lead plaintiff group and lead counsel, especially when the Choi Group has demonstrated that it has the greatest financial interest and otherwise satisfies the requirements of Fed. R. Civ. P. 23 and its chosen lead counsel is demonstrably adequate. *See In re American Bus. Fin. Servs. Sec. Litig.,* 2004 U.S. Dist. LEXIS 10200, at *14, n.1 (E.D. Pa. June 3, 2004) ("Schiffrin & Barroway...[has] been praised by the courts for [its] conduct in class action lawsuits."); Declaration of Darren J. Check In Support Of Motion the Choi Group To Be Appointed Lead Plaintiffs And For Approval of Lead Plaintiffs' Selection of Lead Counsel and Liaison Counsel at Exhibit D (firm biography of Schiffrin & Barroway, LLP)./15

---

/15    Moreover, by its terms, Rule 23(g) does not apply at this stage to the appointment of lead plaintiff and the approval of lead plaintiff's selection of lead counsel. *See* Comments to FED. R. CIV. P. 23(g) ("[The] provisions of the [PSLRA], contain directives that bear on selection of a lead plaintiff and the retention of counsel. [Rule 23(g)] does not purport to supersede or to affect the interpretation of those provisions, or any similar provisions of other legislation.") (emphasis added); *see also Cavanaugh*, 306 F.3d at 732-33 (movant's counsel is relevant only to the extent that it helps the court determine whether that movant's choice of counsel "is so irrational, or so

**C.     The Choi Group's Selection of Counsel Should Be Approved**

According to the PSLRA, lead plaintiff selects lead counsel subject to court approval. 15 U.S.C.§ 78u-4(a)(3)(B)(v). Here, the Choi Group has selected Schiffrin & Barroway, LLP to serve as lead counsel and Shapiro Haber & Urmy, LLP to serve as liaison counsel to represent it and the Class. These firms are both well-qualified to fulfill counsel's responsibilities on behalf of the Class.

**III.    CONCLUSION**

For the foregoing reasons, the Choi Group respectfully requests that the Court: (a) appoint the Choi Group as lead plaintiff; (b) approve Schiffrin & Barroway, LLP as lead counsel for the Class; and (c) approve Shapiro Haber & Urmy, LLP as liaison counsel for the Class.

Dated: July 9, 2004                             Respectfully submitted,

                                                **SHAPIRO HABER & URMY, LLP**


                                                By: _____
                                                    Thomas G. Shapiro (BBO# 454680)
                                                    Theodore M. Hess-Mahan (BBO# 557109)
                                                    75 State Street
                                                    Boston, MA 02109
                                                    Telephone:   (617) 439-3939
                                                    Facsimile:    (617) 439-0134

                                                **Proposed Liaison Counsel**

---

tainted by self-dealing or conflict of interest, as to cast genuine and serious doubt on that plaintiff's willingness or ability to perform the functions of lead plaintiff.").

**SCHIFFRIN & BARROWAY, LLP**
Stuart L. Berman *(pro hac vice)*
Darren J. Check *(pro hac vice)*
Sean M. Handler *(pro hac vice)*
Three Bala Plaza East, Suite 400
Bala Cynwyd, PA  19004
Telephone:     (610) 667-7706
Facsimile:      (610) 667-7056

**Proposed Lead Counsel**