UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re VASO ACTIVE PHARMACEUTICALS SECURITIES LITIGATION )<br>)<br>)<br>) | Master Docket No.04-0708(RCL) |
| This Document Relates To:<br><br>ALL ACTIONS )<br>)<br>)<br>)<br>) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

In connection with the Court's approval of the Settlement[1] in this Action, court-appointed Lead Counsel, Schiffrin & Barroway, LLP ("Plaintiffs' Lead Counsel"), and court-appointed Local Counsel, Shapiro Haber & Urmy LLP ("Local Counsel") respectfully move the Court for an award of attorneys' fees in the amount of or $468,750.00 or twenty-five percent (25%), of the Settlement Fund and reimbursement of $20,724.73 in expenses that were incurred in successfully prosecuting the claims in this Action.

**I.   SUMMARY OF THE ARGUMENT**

Plaintiffs' Lead Counsel has successfully obtained a $1,875,000 Settlement in this Action despite facing challenging obstacles. The Settlement consists of: i) the contribution by Defendant Vaso Active Pharmaceuticals, Inc. ("Vaso") of two-year 5%

---

[1] This Memorandum incorporates by reference the definitions in the Stipulation of Settlement (the "Stipulation") dated September 21, 2005. In support of this Memorandum, Plaintiffs' Lead Counsel also is submitting the Declaration of David Kessler in Support of Lead Plaintiffs' Motion for Final Approval of Class Action Settlement, Plan of Allocation and Attorneys' Fees and Expense Application ("Kessler Declaration or "Kessler Decl."). The Stipulation is attached to the Kessler Declaration as Exhibit 1.

1

subordinated callable notes convertible at $1.75 per share having a face value of $750,000 (the "Settlement Notes"); ii) the payment by Vaso's insurer of $1,100,000 in cash; and iii) the payment of $25,000 in cash by Defendant Kashner Davidson Securities Corp ("Kashner"), the underwriter for Vaso's December 9, 2003, initial public offering ("IPO").[2]  Kessler Decl. ¶¶3, 8.

The Settlement is directly attributable to Plaintiffs' Lead Counsel's skill and diligent litigation efforts.  Indeed, the Settlement was reached only after Plaintiffs' Lead Counsel conducted a through investigation into the vitality of Lead Plaintiffs' claims through: (a) a review and analysis of Vaso's SEC filings; (b) review and analysis of Vaso's publicly disseminated financial statements and all other publicly available information regarding Lead Plaintiffs' allegations, including press releases and transcripts of calls with analysts; (c) extensive conferences with two damage experts; (d) extensive research of the applicable law with respect to the claims asserted in the Complaint and Defendants' potential defenses; (e) conducting an interview of Joseph Frattaroli ("Frattaroli"),Vaso's Chief Financial Officer and Secretary; and (f) reviewing financial information produced by Defendant Kashner.  Kessler Decl. ¶ 22.

As explained below, Plaintiffs' Lead Counsel overcame substantial hurdles in this Action, including Vaso's deteriorated financial condition and the absence of meaningful insurance coverage for Vaso, as well as the absence of *any* insurance for Kashner and its poor financial condition.  Kessler Decl. ¶¶ 21, 23-27.  While avoiding long and costly

---

[2]  The payments by the insurer and Kashner were contributed to the Settlement Fund on October 7, 2005 and October 14, 2005, respectively, and have earned $2,322.00 in interest for the benefit of the Class. Kessler Decl. ¶ 4.  The Settlement Notes will be delivered directly to the Authorized Claimants after the Effective Date by Vaso within ten (10) business days of Vaso's receipt of written instructions from the Claims Administrator. Exh 3 at 6(e).

2

additional litigation, the Settlement provides a valuable benefit to the Class Members. Thus, for the reasons set forth below and in the Kessler Declaration, Plaintiffs' Lead Counsel respectfully requests an award of attorneys' fees representing 25% of the Gross Settlement Fund, or $468,750.00, plus interest on both amounts earned at the same rate as the Class, and requests $20,724.73 for reimbursement of reasonable and necessary expenses. These fees and expenses are well within the range of fees and expenses that are customarily sought by (and awarded to) experienced counsel in similar litigation.

## II.     ARGUMENT IN SUPPORT OF ATTORNEYS' FEE AWARD

Although the First Circuit has left it to the discretion of the district courts to decide the appropriate method to ascertain attorneys' fees in common fund cases such as this, the percentage method is the clear preference of district courts within this Circuit. Thus, Plaintiffs Lead Counsel believe that the Court should award a fee based upon a percentage of the recovery in this case.

### A.     A Reasonable Percentage of the Fund Recovered is An Appropriate Basis on which to Award Attorneys' Fees in this Action

An application for a fee award based on a percentage of the Settlement Fund is consistent with well-established precedent that a person who maintains a suit that results in a benefit for the common interest of others, may obtain fees from that benefit. *See Boeing Co. v. Van Gemert*, 100 S.Ct. 745, 749 (1980) ("[A] litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *see also In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d. 295, 305 n. 6 (1st Cir. 1995) ("The common fund doctrine is founded on the equitable principle that those who have profited from litigation should share its costs"). The "common fund

doctrine" is designed to prevent the unjust enrichment of class members who benefit from a lawsuit without paying for it. *Boeing*, 100 S.Ct. at 749.

### B.    The Factors Affecting Approval of Attorneys' Fees in the First Circuit

Courts within First Circuit have traditionally refrained from strictly applying a definitive set of factors to determine a reasonable percentage to be awarded as attorneys' fees.[3] Instead, courts within this Circuit liberally consider various of the following factors to determine whether a fee award is appropriate:

> (1) the size of the fund created and the number of persons benefited; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*See e.g. In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 84-85 (D. Mass. 2005) (internal citations omitted). An analysis of these factors favors approval of the fee request.

#### 1.    The Risk of Nonpayment

The risk of nonpayment is of paramount importance in this case and strongly counsels in favor of Plaintiffs' Lead Counsel's fee request. As this Court recently stated:

> [W]hen Class Counsel undertook representation . . . there were no assurances that any fees would be received. Class Counsel were aware that they would likely have to expend thousands of hours, and hundreds of thousands of dollars, in prosecuting this case over an extended period of time before having even a possibility of recovering a fee. Class Counsel alone bore the risk of the case

---

[3] The First Circuit and several district courts in this circuit have applied the percentage of fund method in common fund cases. *In re Thirteen Appeals*, 56 F.3d at 307 (the "use of the [percentage of fund] method in common fund cases is the prevailing praxis [with] . . . distinct advantages"); *Relafen,* 231 F.R.D. at 81; *Bussie v. Allmerica Fin. Corp*, 50 F. Supp.2d 59, 76 (D. Mass. 1999); *see In re Centennial Techs. Litig.*, 20 F. Supp. 2d 119 (D. Mass. 1998).

>   being dismissed at the pretrial stage, of not prevailing at trial, or
>   even losing on appeal.

*In re Relafen,* 221 F.R.D. at 87 (citing plaintiffs' counsel's brief).

Plaintiffs' Lead Counsel undertook the litigation and advanced the costs on a contingent basis, bearing the full risk of no recovery at all. It undertook this litigation knowing that it could easily expend thousands of attorney hours, and hundreds of thousands of dollars for expenses, and then lose at summary judgment or at trial. This risk was particularly acute in this case due to the financial conditions of Vaso and Kashner, in addition to the minimal availability of any insurance proceeds to obtain a larger settlement or satisfy a judgment. Therefore, this Court should conclude that an analysis of this factor supports Plaintiffs' Lead Counsel's request for attorneys' fees. Kessler Decl. ¶ 58.

### 2. The Size of the Settlement Fund and Number of Persons who Will Benefit Favors Court Approval of the Requested Fee

This Court has stated, "[I]n evaluating the class action settlement, the court cannot, and should not use as a benchmark the highest award that could be made to the plaintiff after full and successful litigation of the claim[s]"). *Duhaime v. John Hancock Mut. Life Ins. Co.,* 177 F.R.D. 54, 68 (D. Mass. 1997). Rather, court should

>   Consider the vagaries of litigation and compare the significance of
>   immediate recovery by way of the compromise to mere possibility
>   of relief in the future, after protracted and expensive litigation. In
>   this respect, '[i]t [is] proper to take the bird in the hand instead of
>   the prospective flock in the bush.'

*In re Employee Benefit Plans Sec. Litig.,* No. 3-93-708, 1993 U.S. Dist. LEXIS 21226, 15 (D. Minn. June 2, 1993).

There is no question that in this case the Class Members will benefit greatly from

the Settlement that Plaintiffs' Lead Counsel has negotiated. The Settlement represents a substantial recovery in a case where the primary defendant has been in imminent threat of financial ruin. In addition, the other Defendant from whom Lead Plaintiffs would have sought to recover had no insurance and only limited funds. Based on Defendants' financial conditions alone, the opportunity to obtain a greater recovery, if any recovery at all, was doubtful. Further, when considering Defendants' financial conditions and the absence of meaningful insurance proceeds in conjunction with the risks associated with surviving the motion for summary judgment that would certainly be filed at the close of discovery, and the risks of establishing liability and damages at trial, the Court should conclude that this recovery would most certainly not be matched at the conclusion of lengthy and costly litigation, and possibly trial and post-trial appeals. Thus, the results achieved are truly impressive under these circumstances. Kessler Decl. ¶ 59.

### 3. The Absence of Objections Supports the Fee Request

This Court should consider the Class' overwhelmingly positive reaction to the fee request. The Notice of this proposed Settlement, in the form approved by the Court, was mailed to approximately 6,089 potential Class Members and published in the *Investor's Business Daily* and over the *PR Newswire* on October 24, 2005. *See* Affidavit of Lakeeta King of A.B. Data, Ltd. ("A.B. Data"), the Claims Administrator in this Action (the "King Affidavit") attached as Exhibit 2 to the Kessler Decl. ¶¶12, 13. In addition to describing how to either exclude oneself or object to any aspect of the Settlement, the Notice further advised Class Members that Plaintiffs' Lead Counsel intended to apply for an award of attorneys' fees of twenty-five percent (25%) of the Settlement Cash and twenty-five percent (25%) of the Settlement Notes. Class Members had until November

30, 2005 to object and to request exclusion from the Class. As of this deadline, not a single recipient of the Notice has filed an objection to the attorneys' fees requested. Kessler Decl. ¶ 60. *See In re Rite Aid Sec. Litig,* 396 F.3d 294, 305 (3d Cir. 2005) ("[t]he District did not abuse its discretion in finding the absence of substantial objections by class members to the fee requests weighed in favor of approving the fee request"); *In re Relafen,* 221 F.R.D. at 86 (approving fee request despite four objections). Thus, this Court should find that the absence of any objections to the fee request supports the inference that the fee request is fair and reasonable.

### 4. The Complexity of the Litigation Supports the Fee Request

Courts have explicitly found that securities class actions are inherently complex. *See, In re Corel Corp. Sec. Litig.,* 293 F. Supp.2d. 484, 496 (E.D. Pa. 2003) (noting that securities litigation is a complex field); *Maley v. Del Global Techs. Corp.,* 186 F.Supp.2d 358, 364 (S.D.N.Y. 2002) ("[s]tockholder litigation is notably difficult and unpredictable").

The complexities of a securities class action, viewed in conjunction with the difficulties particular to this case, more than justify the requested fee sought. Plaintiffs' Lead Counsel has effectively and efficiently litigated this Action from its inception and has undertaken the following: (a) review and analysis of Vaso's SEC filings; (b) review and analysis of Vaso's publicly disseminated financial statements and other publicly available information related to Lead Plaintiffs' claims; extensive research of the applicable law with respect to the claims asserted in the Complaint and Defendants' potential defenses; and (d) extensive consultations with two damage experts. In addition, Lead Plaintiffs filed a detailed Complaint, engaged in protracted settlement discussions

and conducted confirmatory discovery. Plaintiffs' Lead Counsel litigated this Action to a juncture where they fully understood the strengths and weaknesses of the case, and that an early settlement would provide the best opportunity for a substantial recovery for the Class. Therefore, this Court should find that this factor militates in favor of the fee request. Kessler Decl. ¶¶ 61, 63.

### 5. The Skill and Efficiency of Counsel also Supports the Requested Fees

This Settlement could not have been achieved without the experience, skill, and dedication of Plaintiffs' Lead Counsel, a firm that has national and worldwide standing and is among the most experienced plaintiffs' securities law firms in the country. *See* the Affidavit of Andrew L. Barroway and exhibit 3 thereto ("Barroway Aff."), attached to the Kessler Declaration as Exhibit 4. The Settlement is a direct result of Plaintiffs' Lead Counsel's experience, reputation and ability in these types of cases. Kessler Decl. ¶ 62. *See Edmonds v. United States,* 658 F. Supp. 1126, 1137 (D.S.C. 1987) (the "prosecution and management of a complex national class action requires unique legal skills and abilities"). It is particularly important to reward skilful attorneys because "the stated goal in percentage fee-award cases is ensuring that competent counsel continue to be willing to undertake risky, complex and novel litigation." *Gunter v. Ridgewood Energy Corp.,* 223 F.3d 190, 198 (3d Cir. 2000). Bearing in mind Vaso's rapidly deteriorating financial condition, Plaintiffs' Lead Counsel engaged in a thorough analysis of the best possible recovery for the Class, while at the same time contemplating how Defendants could obtain financing to avoid filing for bankruptcy.

Courts also recognize the quality of opposing counsel in evaluating a plaintiff's counsel's performance. *See Lazy Oil, Co. v. Witco Corp.,* 95 F.Supp.2d 290, 322 (W.D.

8

Pa. 1997). Vaso and the Individual Defendants have been vigorously represented by counsel from Dilworth Paxson LLP; Wilmer Cutler Pickering Hale and Dorr LLP; and Greenberg Traurig LLP, and Kashner by Sichenzia Ross Friedman Ference LLP, who are nationally recognized and able defense counsel. The ability of Plaintiffs' Lead Counsel to negotiate a favorable Settlement for the Class in the face of such formidable legal opposition further evidences the superior quality of their work. Plaintiffs' Lead Counsel therefore submits that without their experience, this Settlement could not have been achieved. Kessler Decl. ¶ 63.

### 6. The Time Spent by Plaintiffs' Lead Counsel Points in Favor of the Fee Request

The requested fee in this case not only represents a reasonable percentage of the benefit obtained, but reasonably reflects the work accomplished by the attorneys. As set forth above, Plaintiffs' Lead Counsel conducted an extensive investigation and drafted an extensive and detailed Complaint. Plaintiffs' Lead Counsel also had extensive conferences with two damage experts and conducted extensive research of the applicable law with respect to the claims asserted in the Complaint and Defendants' potential defenses. Plaintiffs' Lead Counsel also engaged in protracted settlement discussions and conducted confirmatory discovery. Kessler Decl. ¶ 64. While Plaintiffs have not yet engaged in formal discovery, "formal discovery is not a prerequisite to settlement" and should not be when awarding attorneys' fees. *Schwartz v. TXU Corp.,* 3:02-CV-2243-K, 2005 U.S. Dist. LEXIS 27077, at *65-66 (N.D. Tex. Nov. 8, 2005) (citing *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1239 (9th Cir. 1998) (formal discovery is not necessary "where the parties have sufficient information to make an informed decision about settlement")).

### 7. The Fee Request Is Consistent with Fee Awards in Similar Cases

The twenty-five percent (25%) of the Gross Settlement Fund is clearly within the range of fees awarded in similar cases by courts within the First Circuit as well as by courts outside the jurisdiction. *See, e.g., Wells v. Dartmouth Bancorp, Inc.,* 813 F. Supp. 126, 130 (D. N.H. 1993) (awarding fees of more than 30% of net recovery for the class); *In re NX Networks Securities Litigation,* C.A. No. 00-11850-JLT (D. Mass. Nov. 22, 2004) (awarding 33⅓% of settlement fund); *In re Segue Software Sec. Litig.*, C.A. No. 99-10891-RGS (D. Mass. July 31, 2001) (awarding 33⅓% of Settlement Fund); *In re Summit Tech. Sec. Litig.*, C.A. No. 96-11589-JLT (D. Mass. Apr. 25, 2001) (awarding 33 ⅓% of settlement fund); *see also, Fasano v. Caminus Corp, et al.,* No. 03-1743 (S.D.N.Y. Oct. 7, 2005) (awarding 25% of settlement fund).[4] Therefore, Plaintiffs' Lead Counsel respectfully submit that the Court should find the twenty-five percent (25%) fee request fair and reasonable.

### C. The Fee Is Also Justified Under the Lodestar/Multiplier Approach

Although the First Circuit has expressed a preference for the percentage of the fund method to determine fee requests, Plaintiffs' Lead Counsel is also providing the information required for the Court to undertake a cross-check to confirm that the award is fair and reasonable.[5] *See e.g. In re Thirteen Appeals,* 56 F.3d at 307; *In re Relafen,* 221 F.R.D. at 93-94. If this Court examines the requested fee as determined by a percentage of the Gross Settlement Fund against the lodestar, it will find that the lodestar also fully

---

[4] Unpublished opinions are submitted herewith as Exhibit 6 to the Kessler Declaration.
[5] The lodestar is calculated by multiplying the reasonable number of hours worked on the Action by the current, reasonable hourly billing rate for counsel. *In re Thirteen Appeals,* 56 F.3d at 307.

supports Plaintiffs' Lead Counsel's requested fee award. The cumulative lodestar for the services performed by Plaintiffs' Lead Counsel and Local Counsel alone is $307,123.15. *See* Barroway Aff., Exhibit 4 and Declaration of Thomas Shapiro attached to the Kessler Declaration as Exhibit 5.[6] Kessler Decl. ¶ 64.

Plaintiffs' Lead Counsel's request of twenty-five percent (25%) of the Gross Settlement Fund equates with $468,750. As a result, the requested fee of twenty-five percent (25%) represents a multiplier of 1.53. Kessler Decl. ¶ 66. Such a multiplier is on the low side of those awarded in complex securities cases, especially those cases in which Plaintiffs' Lead Counsel has achieved the level of success when confronted with the significant financial hurdles faced in this case. *See, e.g., Florin v. Nationsbank of Ga., N.A.*, 60 F.3d 1245, 1249 (7th Cir. 1995) (multiplier of 1.53 equaling 34% of settlement fund); *Fasano v. Caminus Corp, et al.,* No. 03-1743 (S.D.N.Y. Oct. 7, 2005) (approving 25% settlement fee amounting to multiplier of 1.39); *In re Safety Components*, 166 F. Supp.2d 72, 103 (D.N.J. 2001) (lodestar multiplier of 2.81 is reasonable); *McLendon v. Continental Group, Inc.*, 872 F. Supp. 142 (D.N.J. 1994) (lodestar multiplier of 1.5); *Vaszlavik v. Storage Tech. Corp.,* No. 95-B-2572, 2000 U.S. Dist. LEXIS 21140, at *7 (D. Col. 2000) (awarding 30% fee equaling lodestar multiplier of 1.53); *Cullen v. Whitman Med. Corp.,* 197 F.R.D. 136, 150 (E.D. Pa. 2000) (lodestar multiplier of 2.04). Therefore, Plaintiffs' Lead Counsel submits that the attorneys' fee requested as a

---

[6] These exhibits reflect the names of the attorneys and paralegals who worked on the litigation, the hourly rates currently chargeable by each such attorney and paralegal, the lodestar value of the time expended by such attorneys and paralegals, the unreimbursed disbursements of Schiffrin & Barroway and Shapiro Haber & Umrey, and the background and experience of both firms. This time does not include any time by other firms which filed the remaining 12 complaints at the outset of the Action.

percentage of the Gross Settlement Fund is fair and reasonable even when cross-checked against the lodestar of Plaintiffs' Lead Counsel and Local Counsel in the case.

### D.    Plaintiffs' Lead Counsel and Local Counsel Should Be Reimbursed for Their Litigation Expenses.

Plaintiffs' Lead Counsel also requests reimbursement of out-of-pocket expenses incurred to date in connection with the prosecution of the Action. These expenses include expenses for damages experts, photocopying of documents, on-line research, messenger services, postage, express mail and next day delivery, long distance telephone and facsimile expenses, transportation, meals, travel and other incidental expenses directly related to the prosecution of this Action. Kessler Decl. ¶ 64. *See In re Thirteen Appeals,* 982 F.2d at 606 (common fund doctrine permits person recovering fund for the benefit of others to recover costs from the fund). The aggregate expense for which Plaintiffs' Lead Counsel and Local Counsel seeks reimbursement is $20,724.73. Kessler Decl. ¶ 68. This amount is well below the amount established in the Notice of $60,000, against which there were no objections, and should be reimbursed in full. *See* Exh. 2(A) Plaintiffs' Lead Counsel submits that the expenses incurred were necessary for the effective prosecution of this Action and are thus fair and reasonable.

### III.     CONCLUSION

For the reasons set forth herein, Plaintiffs' Lead Counsel respectfully requests that the Court approve and enter and Order for an award of attorneys' fees in the amount of $468,750.00 or twenty-five percent (25%) of the Gross Settlement Fund, plus reimbursement of expenses in the amount of $20,724.73, inclusive of interest on both amounts at the same rate earned by the Class.

DATED:  December 7, 2005           Respectfully submitted,


**/s/Theodore M. Hess-Mahan**
Thomas G. Shapiro BBO # 454680
Theodore M. Hess-Mahan BBO #557109
**SHAPIRO HABER & URMY LLP**
53 State Street
Boston, Massachusetts 02109
(617) 439-3939

*Local Counsel for Plaintiffs*

**SCHIFFRIN & BARROWAY, LLP**
David Kessler
Kay E. Sickles
Jodi C. Murland
280 King of Prussia Road
Radnor, PA 19087
Telephone:    (610) 667-7706
Facsimile:     (610) 667-7056

*Lead Counsel for Plaintiffs*