## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| In re VASO ACTIVE PHARMACEUTICALS SECURITIES LITIGATION | ) ) ) |
|  | ) Master Docket No.04-10708(RCL) |
| This Document Relates To: | ) ) |
| ALL ACTIONS | ) ) ) |

## DECLARATION OF DAVID KESSLER
## IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR
## FINAL APPROVAL OF CLASS ACTION SETTLEMENT,
## PLAN OF ALLOCATION, AND ATTORNEYS' FEES AND EXPENSE
## APPLICATION

I, DAVID KESSLER, respectfully submit this declaration (the "Declaration" or "Kessler Decl."), pursuant to Federal Rule of Civil Procedure 23(e), in support of: (a) the Court's final approval of the settlement of this class action and plan of allocation, which the Court preliminarily approved by Order dated October 4, 2005 (the "Preliminary Approval Order"); and (b) the application of Plaintiffs' Lead Counsel for attorneys' fees and reimbursement of expenses.

### INTRODUCTION

1.      I am a partner of the law firm of Schiffrin & Barroway, LLP ("Plaintiffs' Lead Counsel"), Plaintiffs' Lead Counsel for Lead Plaintiffs Edwin Choi, Richard Cheng and Joe Huback (collectively "Lead Plaintiffs") and the Class (as defined below) in the above-captioned action (the "Action"). I have been personally involved in all aspects of the litigation and settlement of the Action. I also have been kept informed of developments in the litigation by attorneys working under my direction. The information

set forth in this Declaration is based on the personal knowledge I gained during the course of the litigation and the settlement negotiations, as well as through the information communicated to me by attorneys working under my direction.

2.    This Declaration is submitted in support of the Court's consideration of: (a) the fairness, reasonableness and adequacy of the settlement of the Action (the "Settlement") and the proposed Plan of Allocation, on the terms and conditions reflected in the Stipulation and Agreement of Settlement, dated September 21, 2005 (the "Stipulation") (attached hereto as Exhibit 1); and (b) the application of Plaintiffs' Lead Counsel for an award of attorneys' fees and reimbursement of expenses.  Because this Declaration is submitted in support of a settlement, it is therefore privileged and inadmissible in any subsequent proceeding, other than in connection with the Settlement. This Declaration and the statements contained herein are without prejudice to Lead Plaintiffs' position on the merits in the event that the Settlement is not approved by the Court.

### Terms of the Settlement

3.    As more fully disclosed in the Stipulation and in the Joint Notice of Proposed Settlement of Class Action and Derivative Action, Application for Attorneys' Fees and Expenses and Settlement Fairness Hearing (the "Notice") (attached hereto as Exhibit 2(a)), which was mailed to 6,089 potential Class Members pursuant to the Court's Preliminary Approval Order.  See ¶11 of the Affidavit of Lakeeta King of A.B. Data, Ltd. ("A.B. Data"), the Claims Administrator in this Action (the "King Affidavit") (attached hereto as Exhibit 2).  The Settlement provides for: 1) the contribution by Vaso Active Pharmaceuticals, Inc. ("Vaso" or the "Company") of $750,000 face amount of

two-year 5% subordinated callable notes convertible at $1.75 per share (with full dilution protection) (the "Settlement Notes"); 2) the payment by Vaso's insurer of $1,100,000 in cash; and 3) the payment of $25,000 in cash by Kashner Davidson Securities Corp. ("Kashner"). In total, the Settlement provides for the payment of $1,875,000, exclusive of any interest.

4.      Pursuant to the Stipulation, on October 7, 2005, and October 14, 2005, the cash portion of the Settlement Fund was funded by Vaso's insurer and Kashner, respectively, and has earned $2,322.00 in interest for the benefit of the Class. After the Effective Date, Vaso is required to issue and deliver the Net Settlement Notes directly to the Authorized Claimants within ten (10) business days of receipt of written instructions from the Claims Administrator. The Claims Administrator, working under the direction of Plaintiffs' Lead Counsel, shall calculate the number of Settlement Notes to be distributed to Authorized Claimants. *See* Stipulation, ¶ 6(a).

5.      As noted below, the Stipulation provides that those who do not wish to participate in the Settlement may exclude themselves from the Class. Class Members who do not believe that all aspects of the Settlement, including the Plan of Allocation, and the request for an award of attorneys' fees and reimbursement of expenses, are fair, reasonable and adequate, have been notified of the right to object to any or all of the foregoing and not a single objection or request for exclusion was received. Upon approval of the Settlement, the Action shall be dismissed with prejudice, subject to the terms of the Stipulation and Final Judgment and Order. For the reasons set forth below, I believe that the terms of the Settlement and Plan of Allocation are fair, reasonable and adequate in all respects and, pursuant to Rule 23(e) of the Federal Rules of Civil

Procedure, should be approved by this Court.  Background Regarding the Parties and Claims Asserted.

## History of the Action

6.    Thirteen securities actions were filed against Vaso and certain of its present or former officers and directors, and Kashner.

7.    The following Defendants were officers and/or directors of the Company during the Class Period:  (a)  Defendant John J. Masiz ("Masiz") was Vaso's Chief Executive Officer since 2003 and President since February 2005.  Masiz also was Chairman of BioChemics, Vaso's parent Company and is a principal stockholder; (b) Defendant Stephen G. Carter, Ph.D. ("Carter") was, since June 2003, Vaso's Chief Scientific Officer ("CSO").  Since 1999, Carter also served as the CSO of BioChemics; (c)  Defendant Joseph Frattaroli ("Frattaroli") was Vaso's Chief Financial Officer and Secretary; and (d)   Defendants Bruce A. Shear ("Shear"), Gary Fromm, Ph.D. ("Fromm"), Brian  J. Strasnick ("Strasnick"), William P. Adams ("Adams"), and Robert E. Anderson ("Anderson") were outside directors of Vaso.

8.    Kashner was the underwriter for the IPO.

9.    The Class has been defined as: (i) All persons and entities who purchased or otherwise acquired Vaso Class A common stock on the open market during the period December 9, 2003 through March 31, 2004; and (ii) all persons and entities who purchased or otherwise acquired shares of Vaso Class A common stock in connection with the Company's initial public offering on or about December 9, 2003 (the "IPO"). Excluded from the Class are Defendants, the officers and directors of the Company, members of Defendants' immediate families and their legal representatives, heirs,

successors or assigns and any entity in which Defendants have or had a controlling interest. Also excluded from the Class are any Class Members who timely and validly request exclusion from the Class pursuant to the Notice.

10.    By Order dated May 11, 2004, the Court consolidated all of the above-captioned actions into *In re Vaso Active Pharmaceuticals Sec. Litig.*, No. 04-10708 (RCL).

11.    By Order dated November 4, 2004, the Court appointed Edwin Choi, Richard Cheng, and Joe H. Huback as the Lead Plaintiffs, Schiffrin & Barroway, LLP ("Schiffrin & Barroway") as Lead Counsel, and Shapiro, Haber & Urmy LLP ("Shapiro Haber") as Local Counsel for the Class.

12.    On December 3, 2004, Lead Plaintiffs filed a Consolidated Amended Class Action Complaint (the "Complaint"). The Complaint alleges, among other things, that Defendants violated Sections 10(b), Rule 10-b(5) promulgated thereunder, and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act") by making material misstatements in conference calls, registration statements, and annual reports filed with the Securities and Exchange Commission ("SEC"). The Complaint alleges generally that the Defendants, by virtue of their positions within the Company, had access to adverse information about the Company's business, operations, product approvals, operational trends, financial statements, markets and present and future business prospects that they failed to disclose, causing Vaso's stock to be traded at artificially inflated prices.

13.    More specifically, the Complaint alleges that Defendants represented in the Registration Statement filed in connection with the IPO that Vaso had begun

marketing and was preparing for the commercial launch of three products that had received FDA approval.    The Complaint further alleges that based on these misrepresentations, Defendants conducted the IPO which permitted the Company to raise millions of dollars in capital and that these misrepresentations continued throughout the Class Period, artificially inflating the value of Vaso's Class A common stock when in fact, Vaso had not received any approval from the FDA for the marketing or sale of any of the three products.    With respect to Kashner, the underwriter for the IPO, the Complaint alleges that Kashner had a duty to promptly disseminate truthful and accurate information with respect to Vaso and its affairs, failed to fulfill that duty, and allowed the materially false and misleading Registration Statements to be delivered to potential and actual purchasers of Vaso common stock in connection with offers and sales thereof.    The Complaint alleges that Defendants made these misrepresentations in violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated under Section 10(b), and Sections 11 and 15 of the Securities Act of 1933.

14.    On January 20, 2005, Defendants filed Answers to the Complaint denying the substance of these allegations.

15.    On February 17, 2005, at Vaso' request, Lead Plaintiffs served Vaso with a settlement demand.

16.    Vaso responded to Lead Plaintiffs' demand on February 22, 2005, advising counsel that the Company's financial status was in peril and providing Lead Plaintiffs with a description of the limited assets of Vaso.    The letter also represented that the Individual Defendants could not make a meaningful contribution to any settlement.

6

17.     Beginning in April 2005, the Lead Plaintiffs, Vaso, and the Individual Defendants entered into protracted settlement negotiations for a possible resolution of the Action.    Soon thereafter, Lead Plaintiffs and Kashner also entered into settlement negotiations.

18.     Settlement discussions continued in earnest and, after arms-length negotiations, the parties reached a verbal settlement agreement in May 2005.

19.     Following the verbal agreement to settle the Action, Lead Plaintiffs engaged in confirmatory discovery.    As part of that effort, Lead Plaintiffs obtained further information regarding the financial condition of Vaso by conducting an interview of Frattaroli, the President and Chief Financial Officer of Vaso, on May 25, 2005. During this interview, Frattaroli provided information concerning, among other things, the financial status of the Company.

20.     Lead Plaintiffs, Vaso, and the Individual Defendants executed a Memorandum of Understanding on June 1, 2005.

21.     Thereafter, Lead Plaintiffs and Kashner continued negotiations and reached a verbal agreement that Kashner would join in the Settlement for an additional cash contribution.    Kashner's participation in the Settlement was contingent upon its production of financial information demonstrating limited means to contribute to a settlement.    Kashner produced its "focus report," a report required to be generated by all broker/dealers and filed with the SEC quarterly, that contained information concerning its limited financial condition and ability to satisfy any judgment.    Kashner also advised that it did not have any insurance coverage.

**Discovery and Settlement**

22.     Plaintiffs' Lead Counsel conducted a thorough investigation and analysis of the claims of the Class and the defenses raised by the Defendants including: (a) review and analysis of Vaso's SEC filings; (b) review and analysis of Vaso's publicly disseminated financial statements and all other publicly available information regarding Lead Plaintiffs' allegations, including press releases and transcripts of calls with analysts; (c) an interview with Defendant Frattaroli; (d) consultations with damage experts; (e) review of information concerning Kashner's financial status; and (f) extensive research of the applicable law with respect to the claims asserted in the Complaint and Defendants' potential defenses thereto.

23.     Plaintiffs' Lead Counsel recognized early in this Action that Vaso was in financial distress and thus, that it was entirely possible that Lead Plaintiffs could litigate the case through a trial on the merits and still fail to achieve a recovery greater than the instant Settlement.  Indeed, during Frattaroli's interview, he stated that the Company had $750,000 of working capital that could theoretically sustain the Company through August 2005.  He expected, however, that legal fees generated by this Action, the Derivative Actions, and the SEC investigation would burn "through it faster."  The resolution of this Action removed a substantial impediment to the Company's ability to obtain additional financing, and indeed, following the public disclosure of this Settlement in August 2005, the Company obtained financing that has enabled it to maintain its operations to date.

24.     The financial information upon which Plaintiffs' Lead Counsel relied in making its determinations concerning Vaso's financial fortitude also is contained in its 10-Q for the quarter ended March 31, 2005.  (See the relevant portions of Vaso's March

31, 2005 10-Q, attached hereto as Exh. 3). The 10-Q provides, "At March 31, 2005, we had working capital of approximately $750,000, which based on our current plans and assumptions relating to our operations, will be sufficient to satisfy our cash requirements through August 31, 2005." *Id.* at 11. The document also states that Vaso's "efforts to attract and obtain additional financing are significantly hampered by the shareholder and derivative actions involving [the] Company." *Id.* The 10-Q further states that the Company had "used the cash [it] raised in [its] December 2003 initial public offering to pay for . . .costs" associated with the defense in the various legal actions filed against it. *Id.* at 12.

25.    Notwithstanding the Company's current financial position, Plaintiffs' Lead Counsel was still able to secure consideration directly from the Company in the form of $750,000 two-year 5% subordinated callable notes convertible at $1.75 per share. While recognizing that the possibility still exists that these notes may not have significant value if the Company were to file for bankruptcy, it allows the Class to share in a larger recovery if the Company survives.

26.    Frattaroli also stated during his interview that the Company's directors and officer's liability insurance carrier initially rejected coverage on its two policies consisting of $1 million and $4 million. According to Frattaroli, Vaso's insurance carrier had reserved the right to seek rescission on the basis that the Company's application included false or incomplete statements. Notwithstanding its right to refuse coverage, the insurance company agreed to contribute $1,100,000 to Vaso's efforts to resolve all of the litigation against it. Vaso agreed to use all of the insurance proceeds towards the

Settlement of this Action, and is paying all of its own defense costs, for this Action and the Derivative Actions.

27.    The financial status of Kashner also counsels in favor of the Settlement. During confirmatory discovery, Lead Plaintiffs conducted a thorough analysis of Kashner's financial status.  The focus report produced by Kashner evidences that Kashner has only $59,000 in excess net capital and has agreed to pay $25,000 – more than 40% of its excess net capital – to settle this dispute.  Kashner also does not have insurance coverage.

28.    As a result of the discovery and investigation completed, the research Plaintiffs' Lead Counsel conducted on the applicable law with respect to the Lead Plaintiffs' claims against the Defendants and the potential defenses thereto, the financial condition of the Defendants, including the limited insurance proceeds available to Vaso and the absence of insurance for Kashner, and the consultation with damages experts, Lead Plaintiffs and Plaintiffs' Lead Counsel had sufficient information concerning the strengths and weaknesses of the case to fully consider and evaluate the fairness of this Settlement prior to recommending it to Lead Plaintiffs and to the Class.

29.    On September 21, 2005, the parties filed the Stipulation with the Court, and on October 4, 2005, this Court signed the Preliminary Approval Order.

30.    Pursuant to the Court's Preliminary Approval Order, Plaintiffs' Lead Counsel, through A.B. Data, implemented a comprehensive notice program whereby notice was given to the members of the Class by mail and by publication.  As of this date, A.B. Data has mailed 6,089 Notice Packets to Class Members in this Action.  *See* King

Aff. ¶11.  In addition, on October 24, 2005, a summary notice was published in the Investor's Business Daily and over the PR Newswire.

31.    The deadline for Class Members to serve objections to the Settlement, the Plan of Allocation or the requested attorneys' fee and expense award expired on November 30, 2005.  Not a single Class Member has filed an objection to any aspect of the Settlement, fee request or Plan of Allocation.

### Class Certification

32.    Before assessing the fairness, reasonableness and adequacy of the Settlement, the Court must certify the Class under Rule 23 of the Federal Rules of Civil Procedure.

33.    Under Rule 23(a) a class can be certified only if: (1) the class is so numerous that joinder is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

34.    Applying the first factor, the Class is so numerous that joinder is impracticable.  Vaso Class A common stock was actively traded on the NASDAQ.  During the Class Period, more than 5,000,000 shares of Vaso Class A common stock were outstanding and the trading volume was 44,500,000.  Indeed, numerosity is also confirmed by the fact that 6,089 Notices were mailed to potential Class Members.

35.    Applying the second factor, there are questions of law and fact common to each Class Member.  Indeed, the claims of Lead Plaintiffs and other Class Members all arise from material misrepresentations made by Defendants in statements disseminated to

the investing public. Among the questions of law and fact common to all Class Members are: (1) whether Defendants' acts violated federal securities laws; (2) whether statements contained in SEC filed documents, press releases, conference calls that were disseminated to the investing public and the Company's shareholders during the Class Period were materially false and misleading; (3) whether the market price of Vaso Class A common stock was artificially inflated due to Defendants' materially false and misleading statements; and (4) the extent to which Lead Plaintiffs and the Class suffered damages and the proper measure of damages. Accordingly, the requirements of Rule 23(a)(2) are easily satisfied.

36.    With respect to the third factor, Lead Plaintiffs' claims are typical of the claims of other Class Members because they arise from the same course of conduct by Defendants, the same misrepresentations, and are based on the same legal theories as those of other Class Members who purchased or otherwise acquired Vaso Class A common stock during the Class Period or pursuant to the IPO at prices which were artificially inflated as a result of Defendants' conduct. The conduct at issue is the same throughout the Class Period.

37.    Similarly, Lead Plaintiffs meet the fourth factor because they will fairly and adequately protect the interests of the Class. Lead Plaintiffs in this Action have retained counsel with extensive experience litigating complex securities class actions. See the Biography of Schiffrin & Barroway attached as Exhibit 3 to the Affidavit of Andrew L. Barroway ("Barroway Aff."), which is attached hereto as Exhibit 4. Lead Plaintiffs and their counsel have demonstrated their willingness to represent the interests

of all Class Members by the extensive efforts devoted to the prosecution of this Action since its inception.

38.    Under Rule 23(b)(3) a class can be maintained only if: (1) there are questions of law or fact common to members of the class predominate over any questions affecting only individual members and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

39.    During the Class Period, common questions of law and fact predominate over any individual questions.  In the discussion of Rule 23(a)(2) commonality above, Lead Plaintiffs set forth some of the many common issues of fact and law during the Class Period.  These common issues certainly "predominate" over any individual or non-common issues that may arise.  The common questions are demonstrated by the central claims that the misrepresentations of Defendants during the Class Period fulfilled all of the requirements of Section 10(b) of the Exchange Act and Rule 10b-5, and Section 11 of the Securities Act.

40.    In addition, a class action is superior to other methods of adjudication.  In this case, in light of the fact the other elements of Rule 23 are satisfied, a class action is clearly the favored means to resolve Lead Plaintiffs' claims.  Indeed, the Settlement comports with the policies behind Rule 23 by allowing a number of individuals with relatively little losses, to bring suit with others who share the same sentiment without the sacrifice of procedural fairness.

## The Factors Affecting Settlement

41.    The Settlement is the result of extensive negotiations between experienced counsel who have concluded that the Settlement is fair, reasonable and adequate and

should be approved by the Court. The Settlement at this time avoids long and costly additional litigation and provides a valuable benefit to the Class Members. The Settlement also avoids the costs of and the dangers of summary judgment, trial, any post-trial appeals, Vaso's potential bankruptcy, as well as the ability to recover any damages whatsoever on behalf of the Class. The significant risks involved in taking this Action further into litigation, and possibly onto trial, when measured against the immediate benefit of the Settlement Fund, militate in favor of the Settlement.

42.     The First Circuit employs a fair, adequate, and reasonable standard when reviewing a class action settlement. Although the First Circuit has not identified a particular set of factors to consider when deciding whether to approve a proposed class action settlement, district courts in this jurisdiction have recently applied the following criteria:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*See e.g. In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 58 (D. Mass. 2005) (internal citations omitted).

43.     The Defendants' ability to withstand a greater judgment (inquiry 7) is of paramount importance to the analysis. The Company was in deep financial trouble and demonstrated that it would run out of working capital in the immediate future without a resolution of the Action. As Defendant Frattaroli stated, if this Action did not settle, the

Company would have been unable to obtain additional financing. In the event the Company filed for bankruptcy, it could not be named as a defendant and would not be contributing any funds or notes to the Settlement. The Company is also under investigation by the SEC for its statements and therefore has and will continue to incur large legal fees associated with defending that action. In addition, should this case not settle, the Company will continue to incur substantial legal fees for not only this Action, but the Derivative Actions as well. Kashner also could not withstand a greater judgment as it already has agreed to pay more than 40% of its excess net capital and does not have any insurance. Thus, it is unlikely that Defendants could withstand a greater judgment and the Court should find that this factor weighs heavily in favor of the Settlement.

44.     The range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks in litigation (inquiries 8 and 9), both support approval of the Settlement. The Settlement Fund represents a significant recovery for the Class where Defendants have already contributed all of the cash and insurance proceeds available to them. In addition, it is also a significant recovery in light of the likelihood that Defendants could not pay any greater judgment, if even the amount of the current Settlement, if this case proceeded through full-blown litigation to trial. When viewed against the uncertainties of the Company's deteriorating financial condition, Kashner's financial condition, the costs of discovery, summary judgment and trial, this recovery is substantial and averts many risks and all of the expense that would be involved with moving forward in the litigation. By settling at this point, Lead Plaintiffs have maximized the recovery for the Class, while minimizing costs and the risks stated above. Considering the time value of money, the certainty of many additional years of litigation

and inevitable appeals in the absence of the Settlement, the risk of no recovery if the Company runs out of money or declares bankruptcy, and the limited insurance proceeds available to fund a settlement, this Settlement is well within the range of reasonableness against which settlements are measured.

45.    The, complexity, expense, and likely duration of the litigation (inquiry 1), also supports of the Settlement.    Further prosecution of this case would impose tremendous costs on all parties.  As a preliminary matter, Defendants chose not to contest the legal adequacy of Lead Plaintiffs' Complaint and instead chose to challenge Lead Plaintiffs' factual assertions by answering the Complaint.  As a result, Defendants were no longer protected by the stay of discovery imposed by the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and thus, Lead Plaintiffs were fully prepared to engage in discovery of their claims.  Lead Plaintiffs' claims involve numerous complex legal, financial and factual issues that would have required Lead Plaintiffs to conduct voluminous paper discovery, depositions and extensive expert discovery to determine whether Defendants accurately portrayed their products as approved by the FDA. Engaging in discovery would have undoubtedly added considerable expenses and duration to the litigation.    Of course, expert discovery, summary judgment, and preparation for trial, let alone a trial itself, would also incur tremendous additional expenses and require many hours of the Court's time and resources.  In addition, if Lead Plaintiffs had proceeded with the litigation, Vaso would have exhausted its working capital and most likely would have been precluded from obtaining the necessary financing.  Thus, Lead Plaintiffs may have been precluded from obtaining any relief at all.

46.     The risks of proving liability and damages (inquiries 4 and 5), also support the Court's approval of the Settlement.  While Lead Plaintiffs believe they would have uncovered documents and admissions from Defendants during discovery that would establish liability, they also acknowledge the significant hurdles to proving liability and particularly damages in a securities class action case.  The Complaint alleged violations of Sections 10(b), Rule 10b-5 promulgated thereunder, and 20(a) of the Exchange Act and Sections 11 and 15 of the Securities Act.  To prevail under the Exchange Act, the Class must show that Defendants made a misstatement or omission of a material fact with scienter in connection with the sale or purchase of securities.  Although Defendants elected to answer the Complaint and did not contest Lead Plaintiffs' pleading of scienter, Lead Plaintiffs still would have been required to prove scienter and make the requisite showings of reliance and causation.  To prevail on their  Securities Act claims, Lead Plaintiffs would be required to prove that Defendants made false and misleading statements in the Registration Statement in connection with the IPO and that Kashner was not only responsible for the contents and dissemination of the Registration Statement, but that it could not assert a successful due diligence defense.  As set forth in the Notice, Defendants continue to deny any wrongdoing, fault or liability.  These issues are all questions of fact, the resolution of which is uncertain and unobtainable for at least several years - and not without great cost to all parties.

47.     In addition to liability, Lead Plaintiffs also would incur significant risks in proving damages.  While Lead Plaintiffs believe they could prove damages at trial, the jury would have to accept Lead Plaintiffs' damages theories.  As a result, Plaintiffs' Lead Counsel already knows that the Class would ultimately face a "battle of experts" on

damages. Lead Plaintiffs would need an expert to prove loss causation, i.e. that the cause of the end of Class Period stock drop was due exclusively to a belated disclosure that Vaso was under investigation from the SEC for improperly disclosing that some of its products had procured FDA approval when in fact they did not. While Plaintiffs' Lead Counsel believes that reliable and convincing expert testimony can be provided on the damages question, and that a judgment could ultimately be obtained for the full amount of damages available under the law, the Class is by no means assured that the Court will permit its damage experts to testify, that a jury will find Lead Plaintiffs' expert more persuasive than Defendants' expert and, most importantly, that Lead Plaintiffs will be able to recover nearly the amount provided for under the Settlement, or any amount at all, due to the bleak financial condition of the Company. As a result of these considerations, the likely recovery by the Class, even assuming Lead Plaintiffs prevailed on the liability issue, is speculative.

48.     The reaction of the Class to settlement (inquiry 2), also counsels in favor of the Settlement. The reaction of the Class to the Settlement has been overwhelmingly supportive. Members of the Class had until November 30, 2005, to file objections and to request exclusion. Not a single Class Member has submitted any opposition to any aspect of the Settlement. In addition, not a single Class Member has requested exclusion. King Aff. ¶ 19.

49.     With respect to the stage of the proceedings and the amount of discovery completed (inquiry 3), Plaintiffs' Lead Counsel has achieved a balance between gaining knowledge necessary to assess Lead Plaintiffs' case and Defendants' defenses, and settling at a point in the process which maximizes the recovery for the Class due to the

financial condition of the Company. Lead Plaintiffs filed both initial and amended complaints, engaged in an extensive investigation of the Class' claims, consulted with two damage experts, engaged in protracted settlement discussions and conducted confirmatory discovery. On the one hand, by the time the parties entered into an agreement to settle this Action, Plaintiffs' Lead Counsel had sufficient information in its possession, which allowed it to understand the issues and to evaluate the strengths and weaknesses of the claims of the Class, particularly in the area of damages and the potential for recovery of those damages due to Vaso's financial condition. On the other hand, at the time the parties reached an agreement in principle, the parties had not yet undertaken the most expensive aspects of litigation - the bulk of discovery, including depositions, expert discovery, summary judgment and trial.

50. Finally, the risks of maintaining the Class through trial (inquiry 6), also supports the Settlement. The Class has not yet been certified. But for the Settlement, it is likely Defendants would have vigorously contested class certification in the first instance, and subsequently taken any opportunity to argue for decertification as the litigation progressed.

## The Plan of Allocation

51. The proposed Plan of Allocation, as set forth in the Notice, provides the manner in which the Gross Settlement Fund, less any Settlement Cash and Settlement Notes used to pay fees and costs, as may be awarded by the Court (collectively, the "Net Settlement Fund"), shall be distributed to Authorized Claimants. Plaintiffs' Lead Counsel prepared the Plan of Allocation after careful, prolonged consideration, which involved detailed analysis by Lead Plaintiffs' damage experts.

52.    The Plan of Allocation is based on the proposition that the price of Vaso Class A common stock was artificially inflated from the beginning of the Class Period on December 9, 2003, until the end of the Class Period on March 31, 2004. Lead Plaintiffs and their experts have used Vaso's closing stock price on April 16, 2004 to measure the Recognized Loss because the SEC suspended trading of Vaso common stock once the truth was disclosed, on March 31, 2004, through and including April 15, 2004. As a result, the April 16 reflects the market's reaction to the end of Class Period disclosures.

53.    The Plan calculates the Recognized Loss on shares purchased during the Class Period which were either: (1) sold at a loss between April 16, 2004 and July 13, 2004; or (3) still held as of July 13, 2004. For shares both bought and sold during the Class Period, the Plan calculates the Recognized Loss to be zero based on the calculation that Class Members who both bought and sold their shares during the Class Period benefited from the artificial inflation still present in the stock price at the time of the sale.

54.    Differences in treatment of Class Members are made only with respect to the timing of Class Members' purchases, acquisitions, and sales. Overall, if the total recognized losses for all Authorized Claimants exceeds the Net Settlement Fund, each Authorized Claimants' share of the Net Settlement Fund will be determined based upon the percentage that his, her or its recognized loss bears to the total recognized losses for all Authorized Claimants. The Plan was fully disclosed in the Notice of Proposed Settlement sent to approximately 6,089 potential Class Members and, as of the filing of the instant motion, there have been no objections to the Plan.

**Attorneys' Fees and Costs**

55.    Plaintiffs' Lead Counsel respectfully requests an award of twenty-five percent (25%) of the Settlement Cash and twenty-five percent (25%) of the Settlement Notes for their attorneys' fees and reimbursement of their expenses incurred in litigating the Action.  In this manner, Plaintiffs' Lead Counsel shares the risk with the Class that the Notes may not have value in the future, as it is requesting a percentage fee in the same form of consideration as the Class would receive if the Settlement were to be approved.  Plaintiffs' Lead Counsel believe that this request is consistent with established precedent in this District and throughout the First Circuit, as well as in federal courts throughout the country, as fees in the range of twenty-five (25%) have been consistently awarded in securities class actions to Plaintiffs' Counsel working on a contingent fee basis and obtaining a common fund for the benefit of the Class.  (*See* Plaintiffs' Memorandum of Law in Support of Motion for an Award of Attorneys' Fees and Reimbursement of Expenses (the "Fee Memorandum"), submitted herewith).

56.    Plaintiffs' Lead Counsel respectfully request the Court to award a fee based on a percentage of the recovery in this case.  The total recovery is $1,875,000.00.  *See* ¶3 above. Although the First Circuit has left it to the discretion of the district courts to decide the appropriate method to ascertain attorneys' fees in common fund cases such as this, the percentage method is the clear preference of district courts within this Circuit.  The requested fee award is fair and reasonable in light of the criteria followed in the First Circuit, as set forth below and in the accompanying Fee Memorandum and is consistent with awards in comparable cases.

57.    Courts within this Circuit have traditionally refrained from strictly applying a definitive set of factors to determine a reasonable percentage to be awarded as attorneys' fees.  Instead, courts within the First Circuit have liberally considered various of the following factors to determine an appropriate fee award:

> 1) the size of the fund created and the number of persons benefited; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 84-85 (D. Mass. 2005) (internal citations omitted).

58.    The risk of nonpayment (inquiry 5) is of significant importance in this case and counsels in favor of Plaintiffs' Lead Counsel's fee request.  Plaintiffs' Lead Counsel undertook the litigation and advanced the costs on a contingent basis, bearing the full risk of no recovery at all.  It undertook this litigation knowing that it could easily expend thousands of attorney hours, and hundreds of thousands of dollars for expenses, and then lose at summary judgment or at trial.  This risk was particularly acute in this case due to the dire financial condition of Vaso and the limited means available to Kashner.

59.    The size of the Settlement Fund and number of persons who benefited (inquiry 1), weighs in favor of the fee request.  There is no question that in this case the Class Members will benefit greatly from the Settlement that Plaintiffs' Lead Counsel negotiated.  As stated above, the Settlement represents a substantial recovery in a case where the main defendant was in imminent threat of financial ruin and only limited funds were available to either fund a settlement or satisfy a verdict.

60.    The presence or absence of substantial objections by members of the Class to the settlement terms and/or fees requested by counsel (inquiry 3) also supports this Court's approval of Lead Counsel's request for attorneys' fees.  The Notice of this proposed Settlement, in the form approved by the Court, was mailed to approximately 6,089 potential Class Members and published in the Investor's Business Daily and over the PR Newswire on October 24, 2005. *See* King Aff. ¶¶12, 13.  In addition to describing how to either exclude oneself or object to any aspect of the Settlement, the Notice further advised Class Members that Plaintiffs' Lead Counsel intended to apply for an award of attorneys' fees of twenty-five percent (25%) of the Settlement Cash and twenty-five percent (25%) of the Settlement Notes.  Class Members had until November 30, 2005, to object and to request exclusion from the Class.  As of this deadline, *not a single recipient of the Notice has filed an objection to the attorneys' fees requested.*

61.    The complexity and duration of the litigation (inquiry 4), also weighs in favor of the fee requested.  Plaintiffs' Lead Counsel has effectively and efficiently litigated this Action from its inception.  At this point, Lead Plaintiffs have filed an initial complaint, engaged in a battle over the appointment of lead plaintiff, undertaken an extensive investigation of the claims asserted, filed a detailed amended Complaint, engaged in confirmatory discovery, and consulted with damages experts.  Plaintiffs' Lead Counsel litigated this Action to a juncture where it fully understood the strengths and weaknesses of the case, and that an early settlement would provide the best opportunity for a substantial recovery for the Class.  Therefore, this Court should find that this factor militates in favor of the fee request.

62.    The skill and efficiency of the attorneys involved (inquiry 3) also supports the requested fees. Plaintiffs' Lead Counsel, Schiffrin & Barroway, has national standing and is among the most experienced securities law firms in the country. *See* Exhibit 4(3). The Settlement is a direct result of Plaintiffs' Lead Counsel's experience, reputation and ability in these types of cases. More importantly, bearing in mind Vaso's deteriorated financial condition, Plaintiffs' Lead Counsel engaged in a thorough analysis of the best possible recovery for the Class, while at the same time contemplating how Vaso could obtain financing to avoid filing for bankruptcy. In addition, Vaso and the Individual Defendants have been vigorously represented by counsel from Dilworth Paxson LLP; Wilmer Cutler Pickering Hale and Dorr LLP; and Greenberg Traurig LLP, and Kashner by Sichenzia Ross Friedman Ference LLP, who are nationally recognized and able defense counsel. The ability of Plaintiffs' Lead Counsel to negotiate a favorable Settlement for the Class in the face of such formidable legal opposition further evidences the superior quality of their work.

63.    The amount of time devoted to the case by plaintiffs' counsel (inquiry 6), also militates in favor of the fees requested. The requested fee in this case not only represents a reasonable percentage of the benefit obtained, but reasonably reflects the work accomplished by the attorneys. As detailed above, Plaintiffs' Lead Counsel undertook the following: (a) review and analysis of Vaso's SEC filings; (b) review and analysis of Vaso's publicly disseminated financial statements and all other publicly available information related to Lead Plaintiffs' claims, including press releases and transcripts of calls with analysts; (c) extensive research of the applicable law with respect to the claims asserted in the Complaint and Defendants' potential defenses; and (d)

extensive consultations with two damage experts. In addition, Lead Plaintiffs filed a detailed Complaint, engaged in protracted settlement discussions and conducted confirmatory discovery.

64.    This Court will also find that the lodestar fully supports Lead Counsel's requested fee award. Plaintiffs' Lead Counsel and Local Counsel dedicated over 690 hours to pursuing a recovery for the Class. The cumulative lodestar for the services performed by these two law firms is $307,123.15. *See* Barroway Decl., Exhibit 4, and Declaration of Thomas Shapiro, Exhibit 5. These exhibits reflect the names of the attorneys and paralegals who worked on the litigation, the hourly rates currently chargeable by each such attorney and paralegal, the lodestar value of the time expended by such attorneys and paralegals, the unreimbursed disbursements of Schiffrin & Barroway and Shapiro Haber, and the background and experience of both firms. This time does not include any time by other firms which filed the remaining 12 complaints at the outset of the Action.

65.    Plaintiffs' Lead Counsel's request of twenty-five percent (25%) of the Gross Settlement Fund equates with $468,750.00. As a result, the requested fee of twenty-five percent (25 %) represents a multiplier of 1.53. Such a multiplier is on the low side of those awarded in complex securities cases, especially those cases in which Plaintiffs' Lead Counsel has achieved the level of success achieved here in the face of significant financial obstacles to recovery. *See* Fee Memorandum, § II(C). Therefore, Plaintiffs' Lead Counsel submits that the attorneys' fee requested as a percentage of the Gross Settlement Fund and remains entirely fair and reasonable even when cross-checked against the lodestar of Plaintiffs' Lead Counsel and Local Counsel in the case.

66.     Finally, awards in similar cases (inquiry 7), also support Plaintiffs' Lead Counsel's request for attorneys' fees. The request for twenty-five percent (25%) of the Settlement Cash and twenty-five percent (25%) of the Settlement Notes is commensurate with the range of fees awarded in similar cases by courts within the First Circuit and elsewhere. *See* Fee Memorandum, §II(B)(7) for a full analysis of awards in similar cases.

67.     Plaintiffs' Lead Counsel also requests reimbursement of out-of-pocket expenses incurred to date in connection with the prosecution of the Action. These expenses include paying two damages experts, photocopying of documents, on-line research, messenger services, postage, express mail and next day delivery, long distance telephone and facsimile expenses, transportation, meals, travel and other incidental expenses directly related to the prosecution of this Action. The aggregate expense for which Plaintiffs' Lead Counsel and Local Counsel seeks reimbursement is $20,724.73. This amount is well beneath the amount established in the Notice of $60,000, against which there were no objections, and should be reimbursed in full. Plaintiffs' Lead Counsel submits that the expenses incurred were necessary for the effective prosecution of this Action and are thus fair and reasonable.

I hereby declare that the foregoing is true and correct.


Dated: December 7, 2005

_____
David Kessler