UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re VASO ACTIVE PHARMACEUTICALS SECURITIES LITIGATION | ) ) ) ) ) Master Docket No.04-10708(RCL) |
| This Document Relates To: ALL ACTIONS | ) ) ) ) ) ) ) |

DECLARATION OF KAY E. SICKLES IN SUPPORT OF
THE MOTION FOR DISTRIBUTION OF CLASS SETTLEMENT FUND

1.      I, Kay E. Sickles, am a partner of the law firm of Schiffrin Barroway Topaz & Kessler, LLP,

which served as Lead Counsel in this litigation.

PROCEDURAL HISTORY

2.      Lead Plaintiffs (on behalf of the Class) and Defendants (defined below) (collectively, the

"Parties") entered into a Stipulation and Agreement of Settlement dated September 21, 2005 (the

"Stipulation"), wherein the Parties agreed, in substance, that in exchange for the payment of

$1,875,000 (the "Settlement Fund"), plus interest, if any, there would be a full and complete

Settlement of all class claims against Defendants, defined below.  The Settlement was comprised of

One Million One Hundred and Twenty-Five Thousand Dollars ($1,125,000) (the "Settlement Cash"),

plus any interest earned thereon, and $750,000 face amount of two year 5% subordinated callable

notes convertible at $1.75 per share (with full dilution protection) (the "Settlement Notes").  The

Settlement Fund, net of any taxes on the income thereof, and net of any funds or notes used to pay (i)

1

the notice and administrative costs, and (ii) the attorneys' fees and expense award, is the Net Settlement Fund.

3.     The Defendants were: Vaso Active Pharmaceuticals, Inc ("Vaso" or the "Company"), Kashner Davidson Securities Corp., John J. Masiz, Stephen G. Carter, Ph.D., Joseph Frattaroli, Bruce A. Shear, Gary Fromm, Ph.D., Brian J. Strasnick, William P. Adams, and Robert E. Anderson (the "Defendants").

4.     By Order dated October 4, 2005 (the "Preliminary Approval Order"), the Court directed that the Joint Notice of Proposed Settlement of Class Action and Derivative Action, Application for Attorneys' Fees and Expenses and Settlement Fairness Hearing (the "Notice") be mailed to all members of the Class. The mailing of the Notice was conducted in accordance with the Preliminary Approval Order.

5.     Also in the Preliminary Approval Order, the Court certified the following class for the purpose of settlement:

> (i) All persons and entities who purchased or otherwise acquired Vaso Class A common stock on the open market during the period December 9, 2003 through March 31, 2004; and (ii) all persons and entities who purchased or otherwise acquired shares of Vaso Class A common stock in connection with the Company's initial public offering on or about December 9, 2003 (the "IPO").

6.     Thereafter, the Court held a Final Hearing on December 14, 2005, during which the proposed Settlement and Plan of Allocation were approved as fair, reasonable and adequate and in the best interests of the Class. In addition, the notice procedures were declared to be proper, and the Action was dismissed with prejudice.

7.     Pursuant to the Stipulation, Lead Counsel retained A.B. Data, Ltd. ("A.B. Data" or the

"Claims Administrator") to administer the Settlement, to perform all analyses and accounting procedures in connection with the claims filed, and to effectuate distribution of the Settlement Fund. A.B. Data has consented to the jurisdiction of this Court.

7.    In accordance with the Notice, all Class Members wishing to participate in the Settlement Fund were required to complete a Court-approved Proof of Claim and Release Form ("Proof of Claim") and to mail the Proof of Claim to the post office box identified in the Notice, which was maintained by A.B. Data.

## CLAIMS PROCESSING AND DETERMINATIONS

8.    Employees of A.B. Data regularly emptied the post office box, and sorted and reviewed all claims filed. See Exhibit 1, the Affidavit of Anya Verkhovskaya, the Senior Vice President for A.B. Data, Ltd.'s Class Action Administration Division (the "Verkhovskaya Affidavit" or "Verkhovskaya Aff."), ¶7, attached hereto.   The report of A.B. Data, which analyzes each claim filed and administratively determines which claims are filed properly and timely, which claims are untimely, but otherwise valid, and which claims are not valid, is attached to the Verkhovskaya Affidavit as Exhibit L.  Of the 503 total claims received, 376 claims were filed timely, 234 of which were considered valid; and 127 claims were postmarked after the November 30, 2005 deadline, 62 of which were considered valid. See Verkhovskaya Aff. ¶21; see also Exhibit L (attaching computer printout listing all claim forms filed in this Action).  No claim was rejected because it was postmarked after the November 30, 2005 deadline. Id.  According to its analysis, A.B. Data has found a total of 296 of the claims received to be proper and considered valid.  Id.   In the accompanying Motion for Distribution of Class Settlement Fund, Lead Counsel is requesting Court

approval of these claims. The total claim amount of the 296 claims A.B. Data has accepted and the value for which approval is sought, calculated pursuant to the terms of the Plan of Allocation for the Action, is $6,543,751.44. See Verkhovskaya Aff. ¶23; see also Exhibit L. This total recognized claim amount includes $5,851,161.98 from valid and timely submitted claims and $692,589.46 from valid claims submitted after the November 30, 2005 deadline. Id.

9.     A.B. Data has also rejected 207 claims. See Verkhovskaya Aff. ¶26; see also Exhibit K (attaching computer printout listing all rejected claims and the reasons for rejection). Paragraph 26 of the Verkhovskaya Affidavit sets forth the specific reasons for the rejection of these claims. 104 claims were rejected because the claim amount was equal to zero, 96 claims were rejected because the deficiency of the claim was never cured, and 7 claims were rejected because they were duplicate claims. See Verkhovskaya Aff. ¶26.

10.    For all submitted claims that (i) lacked the required information or documentation to support the information stated on the claim forms; (ii) lacked the claimants signature; (iii) lacked the required documentation to substantiate a claim filed on behalf of a deceased Class Member; or (iv) did not included the full name of the individual listed on the account and/or the supporting documentation did not include the full name of the account, A.B. Data sent a Deficiency Letter to the claimant advising him, her or it of the deficiency and requesting submission of the required filing information or documentation by August 21, 2006. After carefully reviewing responses to Deficiency Letters, A.B. Data, as detailed in ¶9 above, sent Rejection Letters via first class mail to those claimants who failed to adequately cure deficiencies with their claim forms by the specified date. See Verkhovskaya Aff. ¶¶8-12.; see also Exhibits A through D to the Verkhovskaya Aff. (attaching

copies of Deficiency Letters Nos. 1-4).

11      For claimants (i) who did not meet the requirements for participation in the distribution of the Net Settlement Fund; (ii) who submitted duplicate claim forms; (iii) who failed to adequately cure deficiencies with their claims; or (iv) who did not provide sufficient documentation to support their claims and whose claims would be rejected if all transactions listed on their claim form were correctly stated, A.B. Data sent a Rejection Letter to the claimant advising him, her or it of the rejection as well as the claimant's right to have this Court review A.B. Data's administrative determination by memorializing their objections, if any, in writing by the date set forth in the letter. See Verkhovskaya Aff. ¶¶13-16.; see also Exhibits E through H to the Verkhovskaya Aff. (attaching copies of Rejection Letters Nos. 1-4).

12.     A.B. Data received a total of 4 objections from claimants contesting their rejected status, and A.B. Data contacted these claimants by telephone and resolved all of the objections. Follow-up Letters were mailed via first class mail to these 4 claimants to confirm resolution of their objections. See Verkhovskaya Aff. ¶17; see also Exhibit I (attaching copies of Follow-up Letters Nos. 1 and 2).

13.     In addition, claimants who submitted claim forms that demonstrated a claim amount equal to zero when calculated pursuant to the Plan of Allocation were mailed a letter advising them that they were not entitled to a distribution according to the terms of the Plan of Allocation. See Verkhovskaya Aff. ¶24; see also Exhibit J (attaching a list of claims demonstrating a claim amount equal to zero).

14.     As stated above 234 claims were filed properly, timely and were considered valid.

15.     As stated above, 62 otherwise valid, but late-postmarked claims were received and processed.

Lead Counsel believes that it would be fair, reasonable and in the interest of justice to allow the 62 otherwise valid, but late-postmarked claims to share in the Net Settlement Fund. Lead Counsel requests that these claimants who filed otherwise valid, but late postmarked claims be allowed to participate in the Net Settlement Fund as if their claims had been timely filed. See Verkhovskaya Aff. ¶21.

16.     Lead Plaintiffs respectfully request that this Court approve the administrative determination of Lead Counsel and A.B. Data to approve all valid claims listed, with a total recognized claim amount of $6,543,751.44. See Verkhovskaya Aff. ¶23.

17.     Lead Plaintiffs respectfully request this Court to approve the administrative determination of Lead Counsel and A.B. Data to reject the claims identified in ¶9 above, which did not result in a Recognized Claim, were deficient and never cured, or were duplicate claims.

## TAXES AND EXPENSES

18.     Pursuant to the Settlement, the cash portion of the Settlement Fund was invested principally in short-term instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government. Thus, the interest earned on the Settlement Fund through March 31, 2007 is approximately $39,126.72. Under the provisions of §1.468B of the Internal Revenue Code, taxes must be paid on the Settlement Fund. During escrow, such taxes have been paid. Additional monies payable to the Internal Revenue Service at the time of distribution, if any, on the interest earned in the Settlement Fund will be withheld from payment to the Class and immediately paid to the Internal Revenue Service.

19.     Lead Plaintiffs respectfully request the Court to direct A.B. Data to pay to the Internal

Revenue Service the entire remaining tax due (which cannot be calculated exactly until the day of distribution of the Settlement Fund).

## DISTRIBUTION PROCESS

20.     The Net Settlement Cash is ready to be distributed at this time.  The Notes, however, do not become due until December 15, 2007.  As the claims process is complete, and the cost associated with sending two checks to each claimant is minimal, we are presently seeking to proceed in the following manner: (i) for the Court to approve the administrative determinations of A.B. Data and enter an order for distribution of the Net Settlement Fund (the "Order for Distribution"); (ii) to distribute the Net Settlement Cash upon the Court's entry of an Order for Distribution; and (iii) to then distribute the proceeds from the Notes when the Notes come due in December 2007.  We are seeking to proceed in this manner because we do not believe that given the minimal expense of making two distributions, the Class should be required to wait until the end of 2007 to receive any of its recovery.

21.     Lead Plaintiffs therefore respectfully request the Court direct A.B. Data to distribute the Net Settlement Fund to the claimants whose claims Lead Counsel and A.B. Data administratively determined to be valid, as listed on Exhibit L.  Pursuant to the Notice sent to the Class, if these administrative determinations are approved, each of these claimants will receive a pro rata share of the Net Settlement Fund based on his, her, or its Recognized Claim compared to the total Recognized Claims of all accepted claimants, in two separate payments.

22.     It may be expected that not all of the checks sent to the 296 Authorized Claimants (including late filing claimants) will be cashed promptly, and that not all of the Authorized Claimants will be

located.

23.      Lead Plaintiffs respectfully request that the Claims Administrator be directed, for a period of

one year from the date of the initial distribution of the Net Settlement Fund, to make appropriate

efforts to locate and/or contact any Authorized Claimant who has not cashed his, her or its check(s).

After one year, Lead Plaintiffs respectfully request that Lead Counsel, as provided in the Settlement,

re-distribute any funds remaining in the Net Settlement Fund, to Authorized Claimants who have

cashed their checks, provided that they would receive at least $10.00 on such re-distribution based on

their Recognized Claims, after payment of any unpaid costs or fees incurred in administering the Net

Settlement Fund for such re-distribution, if such a re-distribution is economically feasible.  Six

months after any such re-distribution, Lead Plaintiffs request that the Claims Administrator be

directed to donate any remaining unclaimed or uncashed monies to Greater Boston Legal Services –

197 Friend Street, Boston, MA  02114 (phone no. (617) 371-1234).

24.      Lead Plaintiffs respectfully recommend that one year after the distribution of the Net

Settlement Fund, the Claims Administrator be authorized to follow its internal document retention

policy, permitting the Claims Administrator to discard documents relating to the above-captioned

Action in accordance with that policy.  The proposed Order has been drafted to permit the Claims

Administrator to discard documents related to the above-captioned Action in accordance with its

policy.

25.      In order to effectuate the final distribution of the Net Settlement Fund, Lead Plaintiffs

respectfully request that this Court release and discharge all persons who are involved in the review,

verification, calculation, tabulation, or any other aspect of the processing of the claims filed in this

case, or who are otherwise involved in the administration or taxation of the Settlement Fund, or the

Net Settlement Fund from any and all claims arising out of such involvement, and, pursuant to the

Release Terms of the Settlement, bar all Class Members, whether or not they are to receive payment

from the Net Settlement Fund, from making any further claim against the Net Settlement Fund or the

Released Parties beyond the amount allocated to them by the Settlement as approved by the Court.


Dated: March 22, 2007                          s/ Kay E. Sickles
                                               Kay E. Sickles